004090

IMSTRUMENT No.

Prepared by:
Mark K. Williams, Esq.
McCampbell & Young, A Professional Corporation
Suite 2021 Plaza Tower, P. O. Box 550
Knoxville, TN 37901-0550

## DECLARATION OF COVENANTS AND RESTRICTIONS

### BRIXWORTH SUBDIVISION

KNOW ALL MEN BY THESE PRESENTS, that this Declaration of Covenants
and Restrictions made and entered into this 21st day of September, 1989 by PHILLIPS AND
JORDAN, INCORPORATED, a North Carolina corporation (hereinafter referred to as the
"Developer").

* * * W I T N E S S E T H * * *

WHEREAS, Developer is the owner of the real property described in Article II
of this Declaration and desires to create thereon a residential community with open spaces and
other common facilities for the benefit of the said community; and

WHEREAS, Developer desires to provide for the preservation of the values and
amenities in said community and for the maintenance of said common facilities; and, to this
end, desires to subject the real property described in Article II together with such additions
as may hereinafter be made thereto (as provided in Article II) to the covenants, restrictions,
easements, charges and liens, hereinafter set forth, each and all of which is and are for the
benefit of said property and each owner thereof; and

WHEREAS, Developer has deemed it desirable, for the efficient preservation of
the values and amenities in said community, to create an agency to which should be delegated
and assigned the powers of maintaining and administering the community properties and
facilities and administering and enforcing the covenants and restrictions and collecting and
disbursing the assessments and charges hereinafter created; and

BOOK 1991 PAGE 0722

Instr:198919250820074
Pages:1 of 25
Cross Ref:WB 1891/722
Back File Automation

## EXHIBIT K

WHEREAS, Developer has incorporated under the laws of the State of Tennessee as a nonprofit corporation Brixworth Homeowners Association, Inc. for the purpose of exercising the aforesaid function;

NOW, THEREFORE, the Developer declares that the real property described in Article II, and such additions thereto as may hereafter be made pursuant to Article II hereof, is and shall be held, transferred, sold, conveyed and occupied subject to the covenants, restrictions, easements, charges and liens (sometimes hereinafter referred to as the "covenants and restrictions") hereinafter set forth.

## ARTICLE I

### DEFINITIONS

Section 1. The following words when used in this Declaration or any Supplemental Declaration (unless the context shall prohibit) shall have the following meanings:

(a) "Association" shall mean and refer to Brixworth Homeowners Association, Inc.

(b) "The Properties" shall mean and refer to all such existing properties, and additions thereto, as are subject to this Declaration or any Supplemental Declaration under the provisions of Article II hereof.

(c) "Common Properties" shall mean and refer to those areas of land which Developer proposes to convey and transfer, or hereinafter conveys and transfers, to the Association for the common use and enjoyment of the owners of The Properties.

(d) "Lot" shall mean and refer to any plot of land shown upon any recorded subdivision map of The Properties with the exception of Common Properties as heretofore defined.

Instr:199910252026374
Pages:2 of 25
Book File Automation

2

(e) "Living Unit" shall mean and refer to any portion of a building situated upon The Properties designed and intended for use and occupancy as a residence by a single family.

(f) "Owner" shall mean and refer to the owner, whether one or more persons or entities, of the fee simple title to any Lot situated upon The Properties, but notwithstanding any applicable theory of the mortgage, shall not mean or refer to the mortgagee unless and until such mortgagee has acquired title pursuant to foreclosure or any proceeding in lieu of foreclosure.

(g) "Member" shall mean and refer to all those Owners who are members of the Association as provided in Article III, Section 1, hereof.

(h) "Traditional Architecture" shall be defined as residential architecture categorized as Williamsburg, Cape Cod, American Colonial, Georgian, French Provincial, English Tudor, and all other Traditional Single Family Residential Architecture common in the United States and not typically referred to as Contemporary.

(i) "Director" shall mean and refer to a Director of or a Member of the Board of Directors of Brixworth Homeowners Association, Inc.

(j) "Board of Directors" shall mean and refer to the Board of Directors of Brixworth Homeowners Association, Inc.

## ARTICLE II

### PROPERTY SUBJECT TO THIS DECLARATION; ADDITIONS THERETO

Section 1. Existing Property. The real property which is, and shall be, held, transferred, sold, conveyed and occupied subject to this Declaration is located in Knox County, Tennessee, and is more particularly described as follows:

Instr:199310260026374
Pages:3 of 26
Back File Automation

SITUATED in the Sixth (6th) Civil District of Knox County, Tennessee, and being more particularly bounded and described in two tracts as follows:

**TRACT 1:**

BEGINNING at a point in the North right-of-way of Turkey Creek Road said point being 112 feet more or less West of the intersection of the North right-of-way of Turkey Creek Road and the Western right-of-way of Sailview Road; thence with the Northern right-of-way of Turkey Creek Road with a 2443.48 foot radius curve to the right 723.85 feet said curve having a chord bearing of South 59 deg. 06 min. 32 sec. West and a chord distance of 721.21 feet; thence South 69 deg. 30 min. 40 sec. West, 1804.22 feet; thence North 20 deg. 26 min. 18 sec. West, 10.00 feet; thence with a 537.96 foot radius curve to the right 720.73 feet, said curve having a chord bearing of North 72 deg. 03 min. 26 sec. West and a chord distance of 668.02 feet; thence North 33 deg. 40 min. 34 sec. West, 366.73 feet; thence with a 321.48 foot radius curve to the left 278.88 feet, said curve having a chord bearing of North 58 deg. 31 min. 39 sec. West and a chord distance of 270.71 feet; thence North 06 deg. 37 min. 16 sec. East, 10.00 feet; thence North 83 deg. 22 min. 44 sec. West, 200.84 feet; thence leaving the Northern right-of-way of Turkey Creek Road North 26 deg. 37 min. 49 sec. West, 251.79 feet; thence North 26 deg. 37 min. 49 sec. West, 486.04 feet; thence North 38 deg. 07 min. 20 sec. East, 80.49 feet; thence North 78 deg. 57 min. 40 sec. East, 2212.00 feet to a point in the Southwest corner of Turkey Creek Woods; thence with the South line of Turkey Creek Woods on the following calls: North 79 deg. 41 min. 22 sec. East, 100.49 feet; North 79 deg. 43 min. 43 sec. East, 109.04 feet; North 79 deg. 41 min. 12 sec. East, 220 feet; North 79 deg. 45 min. 13 sec. East, 110.16 feet; North 79 deg. 31 min. 19 sec. East, 109.27 feet; North 79 deg. 52 min. 27 sec. East, 242.07 feet; North 79 deg. 33 min. 15 sec. East, 52.06 feet; North 79 deg. 39 min. 54 sec. East, 210.03 feet to a point in the Western line of Sailview Subdivision; thence with the Western line of Sailview Subdivision of the following calls: South 28 deg. 18 min. 54 sec. East, 29.11 feet; South 27 deg. 51 min. 52 sec. East, 131.04 feet; South 27 deg. 53 min. 33 sec. East, 127.90 feet; South 27 deg. 54 min. 08 sec. East, 285.15 feet; South 27 deg. 50 min. 05 sec. East, 134.91 feet; South 27 deg. 54 min. 09 sec. East, 274.03 feet; South 28 deg. 27 min. 05 sec. East, 201.45 feet to the point of BEGINNING, as shown by survey of Robert G. Campbell & Associates, Inc. dated December 1, 1988, bearing File No. 88050.

**TRACT 2:**

BEGINNING at a point in the Southern right-of-way of Turkey Creek Road said point also being in the Northern right-of-way of the Southern Railway and 2798 feet West of the intersection of the Northern right-of-way of Turkey Creek Road and the Western right-of-way of Sailview Road. Thence with the Northern right-of-way of Southern Railway South 69 deg. 35 min. 02 sec. West, 253.04 feet to a point at the 820 elevation on the following chords: North 15 deg. 58 min. 22 sec. West, 54.03 feet; North 15 deg. 58 min. 22 sec. West, 64.33 feet; North 69 deg. 03 min. 35 sec. West, 151.99 feet; North 79 deg. 59 min. 10 sec. West, 71.59 feet; North 71 deg. 57 min. 33 sec. West, 107.30 feet; North 63 deg. 49 min. 18 sec. West, 87.51 feet; North 63 deg. 21 min. 24 sec. West, 98.58 feet; North 28 deg. 24 min. 16 sec. West, 95.15 feet; North 07 deg. 43 min. 21 sec. East, 102.27 feet; North 09 deg. 53 min. 49 sec. East, 97.32 feet; North 26 deg. 47 min. 46 sec. West, 39.72 feet; North 41 deg. 08 min. 42 sec. West, 158.93 feet; South 89 deg. 36 min. 26 sec. West, 127.65 feet, thence

Instr:199812260028374
Pages:4 of 26

Back File Automation

4 BOOK 1991 PAGE 0725

leaving the 820 elevation North 52 deg. 35 min. 39 sec. West, 71.06 feet to a point in the Southern right-of-way of Turkey Creek Road; thence with the southern right-of-way of Turkey Creek Road South 83 deg. 22 min. 44 sec. East, 145.11 feet, thence with a 246.48 radius curve to the right 213.82 feet said curve having a chord bearing of South 58 deg. 31 min. 39 sec. East and a chord distance of 207.17 feet; thence North 56 deg. 19 min. 26 sec. East, 15.00 feet; thence South 33 deg. 40 min. 34 sec. East, 366.73 feet; thence with a 597.96 radius curve to the left 625.78 feet, said curve having a chord bearing of South 63 deg. 40 min. 44 sec. East and a chord distance of 597.48 feet to the point of BEGINNING as shown by survey of Robert G. Campbell & Associates, Inc., dated December 1, 1988, bearing File No. 88050.

BEING a part of the same property conveyed to W. T. Phillips, Sr., Trustee, of Knox County, Tennessee by Warranty Deed dated December 20, 1988 from Robert Jackson Bevins and wife, Priscilla L. Bevins, of Boone County, Missouri, Lillian Bevins Swan and husband, Bill J. Swan of Cabarrus County, North Carolina, Devisees of Elizabeth Jackson Bevins, deceased, of record in Deed Book 1965, page 1025, in the Register's Office for Knox County, Tennessee.

Section 2. Additional Property. Additional property may be made subject to this Declaration by recordation of additional declarations at the sole discretion of the Developer, its successors or assigns; whereupon the Developer may in its sole discretion interlock all rights and members to the Association so that all rights resulting to members of the Homeowners Association shall be uniform as between all units of Brixworth.

### ARTICLE III

### MEMBERSHIP, BOARD OF DIRECTORS, AND VOTING RIGHTS IN THE ASSOCIATION

Section 1. Membership. Every person or entity who is the owner of a fee or undivided fee interest in any Lot shall be a member of the Association, provided that any such person or entity who holds such interest merely as a security for the performance of an obligation shall not be a member. Membership shall commence on the date such person or entity becomes the owner of a fee or undivided fee interest in a lot and expires upon the transfer or release of said ownership interest.

Section 2. Voting Rights. The Association shall have two classes of voting membership:

5

BOOK 1991 PAGE 0726

Instr:198910250028874
Pages:5 of 26

Book File Automation

(a)   Class A.  Class A members shall be all those owners as defined in Section 1 with the exception of the Developer.  Class A members shall be entitled to one vote for each Lot in which they hold the interests required for membership by Section 1. When more than one person holds such interest or interests in any Lot, all such persons shall be members, and the vote for such Lot shall be exercised as they among themselves determine, but in no event shall more than one vote be cast with respect to any such Lot.

(b)   Class B.  Class B members shall be the Developer.  The Class B member shall be entitled to one vote for each Lot in which it holds the interest required for membership by Section 1.  Said Class B membership shall be non-transferable and shall remain in the Developer, its successors or assigns, until such time as the Developer, its successors or assigns, has relinquished ownership in all lots within the subdivision.  Once the Developer, its successors or assigns, has relinquished ownership in all lots in the subdivision, Class B membership shall cease to exist and from and after such time there shall only be Class A membership.

Section 3.  Board of Directors.  The Association shall be governed by a Board of Directors to be elected annually by the membership.  Class A members shall elect two Directors.  Class B members shall elect three Directors.

## ARTICLE IV

## PROPERTY RIGHTS IN THE COMMON PROPERTIES

Section 1.  Members' Easements of Enjoyment.  Subject to the provisions of Section 3, every Member shall have a right and easement of enjoyment in and to the Common Properties and such easement shall be appurtenant to and shall pass with the title to every Lot.

Section 2.  Title to Common Properties.  The Developer may retain the legal title to the Common Properties until such time as in the opinion of the Developer the

Instr:19891025032B374
Pages:6 of 28
Back File Automation

6    BOOK 1991 PAGE 0727

Association is financially able to maintain the same. At such time the Developer shall convey and transfer the Common Properties to the Association.

Section 3. Extent of Members' Easements. The rights and easements of enjoyment created hereby shall be subject to the following:

(a) the right of the Association to take reasonable action to protect and preserve the rights of the Association and the Individual Members in and to the Common Properties, including but not limited to rights to prevent the sale or confiscation of said Common Properties from creditors or lien holders of the Association or Membership;

(b) the right of the Association, as provided in its Articles and By-laws, to suspend the enjoyment rights of any Member for any period during which any assessment remains unpaid, and for any period not to exceed thirty (30) days for any infraction of its published rules and regulations;

(c) the right of the Association to charge reasonable admission and other fees for the use of the Common Properties; and

(d) the right of the Association to dedicate or transfer all or any part of the Common Properties or areas to any public agency, authority, or utility for such purposes and subject to such conditions as may be agreed upon by the Board of Directors of said Association; provided, however, that no such dedication or transfer, and the conditions and provisions incident thereto, shall be effective unless approved by at least three members of the Board of Directors at a duly constituted board meeting.

The rights of Members of the Association shall not be altered or restricted because of the location of the Common Property in a unit of Brixworth, in which such Member is not a resident. Common Property belonging to the Association shall result in

BOOK 1991 PAGE 0728

Instr:198912250020374
Pages:7 of 26
Back File Automation

membership entitlement, notwithstanding the unit in which the Lot is acquired, which results in membership rights as herein provided.

Section 4. Parking Rights. The Developer shall have the absolute authority to determine the type and number of parking spaces, if any, in The Common Areas and to regulate and develop said parking until such time as the Association obtains authority over the same. Once the Association obtains authority over the Common Area wherein any parking is situated, it shall have the absolute authority to regulate the maintenance and use of the same.

## ARTICLE V

## COVENANT FOR MAINTENANCE ASSESSMENTS

Section 1. Creation of the Lien and Personal Obligation of Assessments. The Developer for each Lot owned by him within The Properties hereby covenants and agrees with each Owner of any Lot by acceptance of a deed therefor, whether or not it shall be so expressed in any such deed or other conveyance, shall be deemed to covenant and agree to pay to the Association: (1) annual assessments or charges; and (2) special assessments for capital improvements, such assessments to be fixed, established, and collected from time to time as hereinafter provided. The annual and special assessments together with such interest thereon and costs of collection thereof as hereinafter provided shall be a charge on the land and shall be a continuing lien upon the property against which each assessment is made. Each such assessment, together with such interest thereon and cost of collection thereof as hereinafter provided, shall also be the personal obligation of the person who was the Owner of such property at the time when the assessment fell due.

Section 2. Purpose of Assessment. The assessments levied by the Association shall be used exclusively for the purpose of promoting the recreation, health, safety, welfare

Instr:1999192500026374
Pages:8 of 26
Back File Automation

8  BOOK 1891 PAGE 0729

and beautification of the residences in The Properties including, but not limited to, the payment of taxes and insurance thereon and repair, replacement, and addition thereto, and for the cost of utilities, labor, equipment, materials, management and supervision thereof. The assessments shall not be specifically limited to the Common Areas, but shall extend to and include the right to maintain and repair the streets and accessways and the lighting, traffic signals and signs pertaining to the subdivision. The cost of the operation and maintenance of street lights and lighting regardless of the location within the subdivision and the proximity to the individual lots shall be borne equally and prorated as to each lot without regard to the ownership; it being the intent of this requirement to insure the safety, enjoyment and security of the entire subdivision.

Section 3. _Amount of Assessment_. The Developer shall have the right to determine and set the annual assessment for the first year from and after the establishment of the Homeowners Association. The assessment shall be a sum reasonably necessary as deemed by the Developer to defray the expenses of the Association for the first year. From and after the expiration of the first year, the assessment may be adjusted upward or downward as herein provided.

Section 4. _Special Assessments for Capital Improvements_. In addition to the annual assessments authorized by Section 3 hereof, the Association may levy in any assessment year a special assessment applicable to that year only for the purpose of defraying in whole or in part the cost of any construction or reconstruction, unexpected repair or replacement of a described capital improvement upon the Common Properties including the necessary fixtures and personal property related thereto, provided that any such assessment shall have the assent of at least three members of the Board of Directors.

Instr:198910250029374
Pages:9 of 25
Back File Automation

Section 5. Change in Basis and Maximum of Annual Assessments. The Association may change the maximum and basis of the assessment fixed by Section 3 hereof prospectively for any period provided that any such change shall have the assent of at least three Members of the Board of Directors.

Section 6. Quorum for Any Action Authorized Under Sections 4 and 5. The quorum required for any action authorized by Sections 4 and 5 hereof shall be as follows:

At the first meeting called as provided in Sections 4 and 5 hereof, the presence at the meeting of Members or of proxies entitled to cast Fifty-one (51%) percent of all the votes of the membership shall constitute a quorum. If the required quorum is not forthcoming at any meeting, another meeting may be called subject to the notice requirement set forth in Sections 4 and 5 and the required quorum at any such subsequent meeting shall be one-half of the required quorum at the preceding meeting provided that no such subsequent meeting shall be held more than sixty (60) days following the preceding meeting.

Section 7. Date of Commencement of Annual Assessments. The first annual assessment shall become due and payable on the first day of the month following the lapse of thirty (30) days from the date of the sale of the first lot in Brixworth. Thereafter as each person or entity becomes a member such new members' assessment for the current year shall be a pro-rata part of the annual assessment and shall be due on the first day of the month following the date such person or entity becomes a member of the Association. Upon a person or entity's ceasing to be a Member of the Association, such Member shall not be entitled to any refund of his annual assessment.

It shall be the duty of the Board of Directors to notify each owner of any change in the annual assessment or any special assessment and the due date of such

Instr:198910250028374
Pages:10 of 26

Back File Automation

10    BOOK 1991 PAGE 0731

assessment. The requirement of notice shall be satisfied if such notice is given by regular deposit in the United States Mail to the last known address of each such owner.

The due date of any special assessment under Section 4 hereof shall be fixed in the resolution authorizing such assessment.

Section 8. Effect of Non-Payment of Assessment. The Personal Obligation of the Owner; the Lien; Remedies of Association. If the assessments are not paid on the date when due (being the dates specified in Section 7 hereof), then such assessment shall become delinquent and shall, together with such interest thereof and cost of collection thereof as hereinafter provided, thereupon become a continuing lien on the property which shall bind such property in the hands of the then Owner, his heirs, devisees, personal representatives and assigns. The personal obligation of the then Owner to pay such assessment, however, shall remain his personal obligation for the statutory period and shall not pass to his successors in title unless expressly assumed by them.

If the Assessment is not paid within thirty (30) days after the delinquency date, the assessment shall bear interest from the date of delinquency at the rate of Ten Percent (10%) per annum, and the Association may bring an action at law against the Owner personally obligated to pay the same or to foreclose the lien against the property, and there shall be added to the amount of such assessment the cost of preparing and filing the complaint in such action, and if a judgment is obtained, such judgment shall include interest on the assessment as above provided and a reasonable attorney fee to be fixed by the Court together with the costs of the action.

Section 9. Subordination of the Lien to Mortgages. The lien of the assessments provided for herein shall be subordinate to the lien of any mortgage or mortgages now or hereafter placed upon the properties subject to assessment; provided, however, that such

Instr:1999102502097974
Pages:11 of 25
Back File Automation

subordination shall apply only to the assessments which have become due and payable prior to a sale or transfer of such property pursuant to a decree of foreclosure or any other proceeding in lieu of foreclosure. Such sale or transfer shall not relieve such property from liability for any assessments thereafter becoming due nor from the lien of any such subsequent assessment. An assessment shall not be subordinate to a mortgage held by a prior owner who was the Owner at the time such assessment accrued.

Section 10. Exempt Property. The following property subject to this Declaration shall be exempted from the assessments, charge and lien created herein: (a) all properties to the extent of any easement or other interest therein dedicated and accepted by the local authority and devoted to public use; (b) all Common Properties as defined in Article I, Section 1 hereof; (c) all properties exempted from taxation by the laws of the State of Tennessee or United States Government upon the terms and to the extent of such legal exemption.

Notwithstanding any provisions herein, no land or improvements devoted to dwelling use shall be exempt from said assessments, charges or liens.

Section 11. Management of Common Areas. The Homeowners Association acting by and through its Board of Directors shall have the right to engage and employ such individuals, corporations or professional managers for the purpose of managing and maintaining the common areas and performing such other duties as the Board of Directors shall from time to time deem advisable in the management of the Homeowners Association.

## ARTICLE VI

## TERM

These covenants are to take effect immediately and shall be binding on all parties and all persons claiming under them until January 1, 2010 at which time said covenants

Inst#:199910250028374
Pages:12 of 29

Back File Automation

BOOK 1891 PAGE 0733

Case 3:23-cv-00402-TRM-JEM   Document 6-1   Filed 11/11/23   Page 12 of 54   PageID #: 234

shall be automatically extended for successive periods of ten years unless by vote of the majority of the then owners of lots it is agreed to change said covenants in whole or in part.

## ARTICLE VII

### ENFORCEMENT

If the parties hereto or any of their heirs and assigns shall violate or attempt to violate any of the covenants or restrictions herein, it shall be lawful for the Association or any owner as defined herein to prosecute any proceeding at law or in equity against the person or persons violating or attempting to violate any such covenants or restrictions and either to prevent him or them from so doing or to recover damages or other dues for such violation.

## ARTICLE VIII

### SEVERABILITY

Invalidation of any one of these covenants by judgment or court order shall not in any way affect any of the other provisions which shall remain in full force and effect.

## ARTICLE IX

### LAND USE AND BUILDING TYPE

All lots in the Subdivision and subject to these restrictions shall be known and designated as residential lots unless otherwise noted. Provided, however, that Lots 130, 131, 132, 133, 134, 135, 136 and 137 of Block C of said subdivision are expressly excluded from these restrictions and shall not be subject to development until such time as the Developer in its sole discretion shall make such a determination, at which time the Developer or its assigns shall have the absolute discretion in the development of the same, being subject only to the regulations and requirements of the City of Farragut or such other municipal authority having jurisdiction over said subdivision.



Instr:199910260020374
Pages:13 of 25
Back File Automation

13    BOOK 1991 PAGE 0731

No structures shall be erected, altered, placed or permitted to remain on any of the said lots other than one detached single-family dwelling no less than one and one-half stories in height nor more than two stores in height and a private attached garage except by approval and sanction of the Brixworth Advisory Committee.

## ARTICLE X

### BUILDING LOCATION

No building shall be located on any lot nearer to the front boundary than 30 feet unless special permission coupled with a wavier is granted in hardship cases by the Developer for so long as said Developer shall have authority over such matters, and hereafter the Homeowners Association which shall have exclusive jurisdiction and authority to permit or deny variances in hardship cases, and to all other rear and side set back requirements. The regulations of the Zoning Authority shall be controlling and said Zoning Authority shall have the exclusive authority to permit or deny variances in hardship cases as to rear and side set back requirements.

## ARTICLE XI

### DIVISION OF LOTS

Instr:1998102682874
Pages:14 of 25
Back File Automation

Not more than one single family dwelling may be erected on any one lot as shown on the recorded map and no lot shown on said map may be subdivided or reduced in size by any method such as voluntary alienation, partition, judicial sale, or other process of any kind except for the explicit purpose of increasing the size of another lot.

## ARTICLE XII

### BRIXWORTH ADVISORY COMMITTEE

No building shall be erected, placed, altered, or permitted to remain on any building lot in the Subdivision until the building plans and specifications and a plan showing

14     BOOK 1991 PAGE 0735

the location of a dwelling have been approved in writing by the Brixworth Advisory Committee as to the quality of workmanship and materials, harmony of exterior design with existing structures and as to location with respect to topography and finish grade level elevation. The Brixworth Advisory Committee shall be composed of three members appointed by the Developer. A majority of the Committee may designate a representative to act for the Committee. In the event of the death or resignation of any member of the Committee, the Developer shall have the exclusive authority to designate a successor. Neither the members of the Committee nor its designated representative shall be entitled to any compensation for services performed pursuant to this covenant. If the said Committee fails to approve or disapprove a building design and location within twenty (20) days after said plans and specifications have been submitted to it, said plan shall be deemed approved. If the Advisory Committee rejects plans submitted for approval under this paragraph and seventy-five percent (75%) of the parties owning lots within a 200 foot radius of the lot in question at the time said approval is requested submits a written request stating that the owners of said property within the 200 foot radius desire the approval to be given, the same shall be deemed approved by the Advisory Committee. A complete set of plans and specifications of the house to be built shall be left with the Advisory Committee during the time of construction.

For the purpose of insuring the development of the subdivision as a residential area of highest quality and standards, and in order that all improvements on each building lot shall present and attractive and pleasing appearance from all sides and from all points of view, the Advisory Committee has the exclusive power and discretion to control and approve all of the buildings, structures, and other improvements on each building lot in the manner and to the extent set forth herein. No residence or other building, and no fence, wall, utility yard, driveway, swimming pool or other structure improvement, regardless of size or purpose,

15

BOOK 1991 PAGE 0736

Instr:199910250028374
Pages:15 of 26

Book File Automation

whether attached to or detached from the main residence, shall be commenced, placed, erected or allowed to remain on any building lot, nor shall any addition to, or exterior change or alteration thereto, be made unless and until building plans and specifications covering the same showing the nature, kind, shape, height, size, materials, floor plans, exterior color scheme with paint samples, location and orientation on the building lot and exact square footage, approximate finishing date, on site sewage and water facilities, and such other information as the Advisory Committee shall require, including, if so required, plans for the grading and landscaping of the building lot showing any changes proposed to be made in the elevation or surface contours of the land, have been submitted to and approved in writing by the Advisory Committee, and have been lodged permanently with the Advisory Committee. The Advisory Committee shall have the absolute and exclusive right to refuse to approve any such building plans and specifications and lot grading and landscaping plans which are not suitable or desirable in its opinion for any reason, including purely aesthetic reasons and reasons connected with future development plans for the owners of said land or contiguous lands with the exception of the provisions related to requests from contiguous owners of property as set forth herein. In passing upon such building plans and specifications and lot grading and landscaping plans, the Advisory Committee may take into consideration the suitability and desirability of the proposed construction and of the materials of which the same are proposed to be built to the building lot upon which it is proposed to erect the same, the quality of the proposed workmanship and materials, and the harmony of external design with the surrounding neighborhood and existing structures therein, and the effect and appearance of such construction as viewed from neighboring properties.

The Advisory Committee shall have the sole right to amend these covenants and restrictions, but all such amendments shall conform to the general purposes and standards of



Instr:19891025020374
Pages:16 of 25
Back File Automation

16    BOOK 1991 PAGE 0737

the covenants and restrictions herein contained, to amend those covenants and restrictions for the purpose of curing any ambiguity and any inconsistency between the provisions contained herein, to include in any contract or deed or other instrument hereinafter made any additional covenants and restrictions applicable to the said land which do not lower the standards of the covenants and restrictions herein contained, and to release any building lot from any part of the covenants and restrictions (including, without limiting the foregoing building restriction lines and provisions hereof related thereto) if the Advisory Committee, in its sole judgment, determines that such release is reasonable and does not substantially affect any other building lot in any adverse manner.

The Advisory Committee shall have the sole and exclusive right at any time and from time to time to transfer and assign to, and withdraw from, such person, firm or corporation as it shall select, any or all rights, powers, privileges, authorities and reservations given to or reserved by it by any part or paragraph of these covenants and restrictions.

## ARTICLE XIII

## DWELLING RESTRICTIONS

Section 1. Design Requirements. No dwelling shall be erected, placed, altered or permitted to remain on any lot unless it conforms to the following requirements:

(a) The dwelling and related improvements must be of Traditional Architecture and design as defined herein.

(b) The minimum living area square footage requirements shall be 2,800 square feet of heated and air conditioned space unless the Brixworth Advisory Committee waives this requirement which decision shall be in the sole discretion of the Committee.

(c) All windows and related trim must be of wood construction.

Instr:1999182580028374
Pages:17 of 25
Back File Automation

17          BOOK 1991 PAGE 0738

(d)    All dwellings shall have a minimum roof pitch of 8/12 and the roof shall be covered with dimensional asphalt shingles or better.

(e)    All dwellings shall be of brick or a combination of brick and stucco or a combination of brick and natural wood siding, with no masonite or other type of artificial or synthetic siding.

(f)    All above ground exterior foundation walls shall be veneered with brick, stone or such other material approved by the Advisory Committee.

(g)    All fireplaces and chimneys shall be of masonry construction unless otherwise specifically approved on an individual basis by the Advisory Committee.

(h)    All dwellings shall have not less than a two car attached garage, side or rear entry only, capable of accommodating two automobiles.

(i)    Heating and air conditioning systems shall be concealed from view by appropriate screening, subject to the approval of the Advisory Committee.

(j)    There shall be no occupancy permitted of any dwelling until such time as the dwelling, yard and landscaping are complete except by approval of the Advisory Committee.

(k)    Once the retention basins as set forth on the recorded plat have been dedicated by the recordation of said plat, neither the Developer nor the Homeowners shall be responsible or liable for the maintenance of the same.

(l)    The finished grading for all lots shall be completed in conformity with the recorded plat for the subdivision and in such manner as to retain all surface water drainage on said lot or lots in "property line swales" designated to direct the flow of all surface waters into the drainage easements as created by the overall drainage plan for the development, as approved by the municipal authority having jurisdiction over said subdivision.

Instr:1369102502028374
Pages:18 of 25
Back File Automation

Case 3:23-cv-00402-TRM-JEM    Document 6-1    Filed 11/11/23    Page 18 of 54    PageID #: 240

(m)   Tennis courts and inground swimming pools are permissible. Pools and tennis courts must have attractive shrubbery and screening around them and both must be approved by the Advisory Committee.

Section 2.  Miscellaneous Restrictions.  (a)  Mail boxes shall be of a traditional type and design consistent with the overall character and appearance of the neighborhood and as selected by the Developer.

(b)   No outside radio transmission towers, receiving antennas, television antennas, satellite antennas or dishes or solar panels may be installed or used, except as designated by the Advisory Committee.

(c)   No one shall be permitted to store or park house trailers, campers, pleasure or fishing boats, trailers or other similar type vehicle on or about said residences unless the same are stored or parked inside a garage so as not to be readily visible from the street or adjoining properties.  No automobiles which are inoperable or being stored shall be repeatedly parked, kept, repaired or maintained on the street, driveway or lawn of any lot.

(d)   Builders will be responsible for providing silt control devices on each lot during construction activities.

(e)   Clotheslines and other devices or structures designed and customarily used for the drying or airing of clothes, blankets, bed linen, towels, rugs or any other type of household ware shall not be permitted and it shall be strictly prohibited for articles or items of any description or kind to be displayed or placed on the yard or exterior of any dwelling for the purpose of drying, airing or curing of said items.

(f)   All outside light poles, etc. must be approved by the Advisory Committee.

Instr:1998102502820374
Pages:19 of 25

Back File Automation

19

## ARTICLE XIV

### NUISANCES

No noxious or offensive trade or activity shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood.

## ARTICLE XV

### TEMPORARY STRUCTURES

No trailer, basement, tent, shack, garage, barn or other outbuildings erected on the tract shall at any time be used as a residence temporarily or permanently nor shall any structure of a temporary character be used as a residence.

## ARTICLE XVI

### EASEMENTS

Easements and other restrictions in conformity with the recorded plat of Brixworth are expressly reserved for the overall development of the subdivision and no easements, rights of way or rights of access shall be deemed granted or given to any person or entity over, across, upon or through any lot in this subdivision unless prior written permission is granted by the Developer of the Subdivision.

## ARTICLE XVII

### COMMISSION OF WASTE AND UNSIGHTLINESS

At no time shall any lot or parcel be stripped of its top soil, trees, or allowed to go to waste or waste away by being neglected, excavated, or having refuse or trash thrown or dropped or dumped upon it. No lumber, brick, stone, cinder block, concrete block or other materials used for building purposes shall be stored upon any lot more than a reasonable time for the completion of the construction in which they are to be used. No person shall place

Instr:198510250320374
Pages:28 of 28

Back File Automation

on any lot in the Subdivision refuse, stumps, rock, concrete blocks, dirt or building materials or other undesirable materials. Any person doing so shall be subject to notification by the Developer or the Association to correct said condition within five (5) days of notification and, if said condition is not corrected within said time period, the Developer or the Association shall have the right to injunctive relief against the Owner of the affected lot and the Contractor or Agent of the Owner and to make all necessary corrections and the expense of same shall be lien upon the real property affected.

## ARTICLE XVIII

### SIGNS

No sign of any kind shall be displayed to the public view on any lot except one professional sign of not more than one square foot, one sign of not more than five square feet advertising the property for sale or rent, or signs of no larger size used by the builder to advertise the property during the construction and sales period.

## ARTICLE XIX

### LIVESTOCK AND POULTRY

No animals, livestock, poultry or fowl of any kind shall be raised, bred or kept on any lot except pets such as dogs or cats which are permitted provided they are not kept, bred or maintained for any commercial purpose and do not create a nuisance. However, in no event shall any household have more than two animals of any species. The Homeowners Association shall have the exclusive authority to further regulate the maintenance and care of said animals as it deems advisable.

Case 3:23-cv-00402-TRM-JEM   Document 6-1   Filed 11/11/23   Page 21 of 54   PageID #: 243

## ARTICLE XX

## GARBAGE AND REFUSE DISPOSAL

No lot shall be used or maintained as a dumping ground for trash or rubbish. Trash, garbage or other waste shall not be kept except on a temporary basis and in sanitary covered containers. All incinerators or other equipment for the storage of such material shall be kept in a clean and sanitary condition, subject to the approval of the Developer. All garbage cans shall be concealed from view by appropriate screening which must be approved by the Advisory Committee.

## ARTICLE XXI

## FENCES AND WALLS

No fences or walls or hedge rows shall be erected, placed or altered on any lot or parcel unless approved by the Developer or the Advisory Committee as the case may be.

## ARTICLE XXII

## FIRST REFUSAL FOR RE-PURCHASE

In the event any owner of any residential lot not improved by a dwelling but otherwise improved or unimproved, desires to sell the same, the property shall be offered for sale to the Developer at the same price at which the property is about to be sold; and the Developer shall have fifteen (15) days within which to exercise its option to purchase the property. Should the Developer fail or refuse within said fifteen (15) days after receipt of registered notice to exercise this option to purchase said property at the price and on the terms on which it is about to be sold, then the owner of said property shall have the right to sell the same, subject to each and every restriction, limitation, condition and agreement herein contained. This clause shall have no application to any person, firm or corporation acquiring any right, title or interest in any property or improvements in Brixworth Subdivision through

Instr:199910250028574
Pages:22 of 26
Back File Automation

BOOK 1991 PAGE 0743

22

mortgage or deed of trust nor shall it apply to any purchaser at a judicial or non-judicial sale of any such property or improvements.

## ARTICLE XXIII

### WAIVER AND MODIFICATION

Developer hereby reserves the right in its absolute discretion at any time to annul, waive, change or modify any of the restrictions, conditions or covenants contained herein as to any part of the Brixworth Subdivision, subject to its declaration, then owned by Developer and with the consent of the owner as to any other land in said subdivision, and shall have the further right before a sale to change the size of or locate or relocate any of the lots, parcels, streets, or roads shown on any of the plats of Brixworth.

## ARTICLE XXIV

### ASSIGNMENT OR TRANSFER

Any or all of the rights and powers, titles, easements and estates reserved or given to the Developer in this Declaration may be assigned to any one or more corporations or assigns which will agree to assume said rights, powers, duties and obligations and carry out and perform the same. Any such assignment or transfer shall be made by appropriate instrument in writing in which the assignee or transferee shall join for the purpose of evidencing its acceptance of such rights and powers, and such assignee or transferee shall thereupon have the same rights and powers and be subject to the same obligations and duties as are herein given to and assumed by the Developer and Developer shall thereupon be released therefrom.

Instr:199919250028374
Pages:23 of 25

Book File Automation

## ARTICLE XXV

### DISCLAIMER

Nothing contained in this Declaration of Covenants and Restrictions and the Charter or Bylaws of the Association, or any oral or written representations of any builder, real estate agent or broker shall be construed to constitute a representation that the Developer will construct certain facilities on the Properties or Common Properties convey or transfer any property to the Association for the common use and enjoyment of the owners of the Properties. The Developer shall have no obligation to construct any facilities on the Properties or Common Properties other than those set forth on the plat of the Properties as recorded in the Register's Office for Knox County, Tennessee.

IN WITNESS WHEREOF, Phillips and Jordan, Incorporated has caused this instrument to be executed and its name to be signed by its President and attested by its Secretary pursuant to the authority of its Board of Directors this _29th_ day of September, 1989.

PHILLIPS AND JORDAN, INCORPORATED.

By: _W.T. Phillips Sr._
W. T. Phillips, Sr., President

ATTEST:

_signature_
Secretary

MKW084/90502.440
9/11/89 1:59 pm

Instr:198919250020374
Pages:26 of 25

Back File Automation

25

STATE OF TENNESSEE )
                   )
COUNTY OF KNOX     )

Before me, the undersigned, authority, a Notary Public in and for said County and State, personally appeared W. T. Phillips, Sr., with whom I am personally acquainted, or proved to me on the basis of satisfactory evidence, and who, upon oath, acknowledged himself to be the President of Phillips and Jordan, Incorporated, the within named bargainor, a corporation, and that he as such President being authorized to do so, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as President.

Witness my hand and seal at office, this *29th* day of September, 19___

_____
Notary Public

My Commission expires:

_16-22-90_

RECEIVED FOR
RECORDING
Oct 25  4 19 PM '89
SMOKY BOOK
STEVE E. HALL

Instr:199810268026374
Pages:25 of 26
Back File Automation

Prepared by:
Mark K. Williams, Esq.
McCampbell & Young, A Professional Corporation
Suite 2021 Plaza Tower, P. O. Box 550
Knoxville, TN 37901-0550

026437

INSTRUMENT NO.

SEE WB 2081 - PG 198 FOURTH AMENDMENT
SEE WB 2013-PG 458 THIRD AMENDMENT
SEE WB 2057-PG 82 SECOND AMENDMENT

## FIRST AMENDMENT TO THE
## DECLARATION OF COVENANTS AND RESTRICTIONS
## BRIXWORTH SUBDIVISION

KNOW ALL MEN BY THESE PRESENTS, that this First Amendment to the

Declaration of Covenants and Restrictions ("Amendment to Declaration") is made and entered

into this 20th day of _March_, 1991, by PHILLIPS AND JORDAN, INCORPORATED,

a North Carolina corporation (hereinafter referred to as the "Developer").

### * * * W I T N E S S E T H * * *

WHEREAS, Developer is the owner of the real property described in Paragraph 1

of this Amendment to Declaration and has created thereon a residential community with open

spaces and other common facilities for the benefit of the said community; and

WHEREAS, to provide for the preservation of the values and amenities in said

community and for the maintenance of said common facilities, Developer has executed and

recorded a Declaration of Covenants and Restrictions (the "Declaration") dated September 29,

1989 and recorded in the Knox County Register's Office in Book 1991, Pages 722-746 providing

that the real property described in Paragraph 1 of this Amendment to Declaration shall be held,

transferred, sold, conveyed and occupied subject to the covenants, restrictions, easements, charges

and liens set forth in the Declaration; and

*2000
*2000
*2000
*2000B
*600

9400-

04-08-91
7177

McCampbell & Young
441029
MKW115/A:Brixworth.Amd
3/15/91 12:59pm

Page 1

BOOK 2035 PAGE 0816

Instr:199103090024131
Pages:1 of 6
Cross Ref:WB 2035/816
Back File Automation



Instr:199104286024131
Pages:2 of 5

Back File Automation

WHEREAS, Developer now wishes to modify the Declaration in certain respects in accordance with Article XXIII of the Declaration;

NOW, THEREFORE, the Developer hereby amends the Declaration as follows:

1. The real property which is held, transferred, sold, conveyed and occupied subject to the Declaration amended hereby is located in Knox County, Tennessee, and is more particularly described as follows:

TRACT 1:

BEGINNING at a point in the North right-of-way of Turkey Creek Road said point being 112 feet more or less West of the intersection of the North right-of-way of Turkey Creek Road and the Western right-of-way of Sailview Road; thence with the Northern right-of-way of Turkey Creek Road with a 2443.48 foot radius curve to the right 723.85 feet said curve having a chord bearing of South 59 deg. 06 min. 32 sec. West and a chord distance of 721.21 feet; thence South 69 deg. 30 min. 40 sec. West, 1804.22 feet; thence North 20 deg. 26 min. 18 sec. West, 10.00 feet; thence with a 537.96 foot radius curve to the right 720.73 feet, said curve having a chord bearing of North 72 deg. 03 min. 26 sec. West and a chord distance of 668.02 feet; thence North 33 deg. 40 min. 34 sec. West, 366.73 feet; thence with a 321.48 foot radius curve to the left 278.88 feet, said curve having a chord bearing of North 58 deg. 31 min. 39 sec. West and a chord distance of 270.71 feet; thence North 06 deg. 37 min. 16 sec. East, 10.00 feet; thence North 83 deg. 22 min. 44 sec. West, 200.84 feet; thence leaving the Northern right-of-way of Turkey Creek Road North 26 deg. 37 min. 49 sec. West, 251.79 feet; thence North 26 deg. 37 min. 49 sec. West, 486.04 feet; thence North 38 deg. 07 min. 20 sec. East, 80.49 feet; thence North 78 deg. 57 min. 40 sec. East, 2212.00 feet to a point in the Southwest corner of Turkey Creek Woods; thence with the South line of Turkey Creek Woods on the following calls: North 79 deg. 41 min. 22 sec. East, 100.49 feet; North 79 deg. 43 min. 43 sec. East, 109.04 feet; North 79 deg. 41 min. 12 sec. East, 220 feet; North 79 deg. 45 min. 13 sec. East, 110.16 feet; North 79 deg. 31 min. 19 sec. East, 109.27 feet; North 79 deg. 52 min. 27 sec. East, 242.07 feet; North 79 deg. 33 min. 15 sec. East, 52.06 feet; North 79 deg. 39 min. 54 sec. East, 210.03 feet to a point in the Western line of Sailview Subdivision; thence with the Western line of Sailview Subdivision of the following calls: South 28 deg. 18 min. 54 sec. East, 29.11 feet; South 27 deg. 51 min. 52 sec. East, 131.04 feet; South 27 deg. 53 min. 33 sec. East, 127.90 feet; South 27 deg. 54 min. 08 sec. East, 285.15 feet; South 27 deg. 50 min. 05 sec. East, 134.91 feet; South 27 deg. 54 min. 09 sec. East, 274.03 feet; South 28 deg. 27 min. 05 sec. East, 201.45 feet to the point of BEGINNING, as shown by survey of Robert G. Campbell & Associates, Inc. dated December 1, 1988, bearing File No. 88050.

McCampbell & Young
441029
MKW115/A\Brinworth.Amd
3/15/91 12:55pm

Page 2

Case 3:23-cv-00402-TRM-JEM   Document 6-1   Filed 11/11/23   Page 27 of 54   PageID #: 249

TRACT 2:

BEGINNING at a point in the Southern right-of-way of Turkey Creek Road said point also being in the Northern right-of-way of the Southern Railway and 2798 feet West of the intersection of the Northern right-of-way of Turkey Creek Road and the Western right-of-way of Sailview Road. Thence with the Northern right-of-way of Southern Railway South 69 deg. 35 min. 02 sec. West, 253.04 feet to a point at the 820 elevation on the following chords: North 15 deg. 58 min. 22 sec. West, 54.03 feet; North 15 deg. 58 min. 22 sec. West, 64.33 feet; North 69 deg. 03 min. 35 sec. West, 151.99 feet; North 79 deg. 59 min. 10 sec. West, 71.59 feet; North 71 deg. 57 min. 33 sec. West, 107.30 feet; North 63 deg. 49 min. 18 sec. West; 87.51 feet; North 63 deg. 21 min. 24 sec. West, 98.58 feet; North 28 deg. 24 min. 16 sec. West, 95.15 feet; North 07 deg. 43 min. 21 sec. East, 102.27 feet; North 09 deg. 53 min. 49 sec. East, 97.32 feet; North 26 deg. 47 min. 46 sec. West, 39.72 feet; North 41 deg. 08 min. 42 sec. West, 158.93 feet; South 89 deg. 36 min. 26 sec. West, 127.65 feet, thence leaving the 820 elevation North 52 deg. 35 min. 39 sec. West, 71.06 feet to a point in the Southern right-of-way of Turkey Creek Road; thence with the southern right-of-way of Turkey Creek Road South 83 deg. 22 min. 44 sec. East, 145.11 feet, thence with a 246.48 radius curve to the right 213.82 feet said curve having a chord bearing of South 58 deg. 31 min. 39 sec. East and a chord distance of 207.17 feet; thence North 56 deg. 19 min. 26 sec. East, 15.00 feet; thence South 33 deg. 40 min. 34 sec. East, 366.73 feet; thence with a 597.96 radius curve to the left 625.78 feet, said curve having a chord bearing of South 63 deg. 40 min. 44 sec. East and a chord distance of 597.48 feet to the point of BEGINNING as shown by survey of Robert G. Campbell & Associates, Inc., dated December 1, 1988, bearing File No. 88050.

BEING a part of the same property conveyed to W. T. Phillips, Sr., Trustee, of Knox County, Tennessee by Warranty Deed dated December 20, 1988 from Robert Jackson Bevins and wife, Priscilla L. Bevins, of Boone County, Missouri, Lillian Bevins Swan and husband, Bill J. Swan of Cabarrus County, North Carolina, Devisees of Elizabeth Jackson Bevins, deceased, of record in Deed Book 1965, page 1025, in the Register's Office for Knox County, Tennessee.

2. Article XIII, Section 1 is hereby amended by adding the following as a Subparagraph (n):

>  All yards and landscaping must contain an underground sprinkler system subject to the approval of the Advisory Committee.

3. Article XIII, Section 2(a) is hereby amended by adding the following sentence:

>  All mailboxes shall be enclosed in a masonry structure subject to the approval of the Advisory Committee.

McCampbell & Young
441029
MKW115/A.Brtrworth.Amd
4/3/91 10:26am

BOOK 2035 PAGE 0818

Page 3

Instr:19810400024131
Pages:3 of 8
Back File Automation

4. All words used herein shall have the same meanings as those words are defined in the Declaration.

5. Except to the extent expressly modified herein, all provisions of the Declaration are hereby reaffirmed.

IN WITNESS WHEREOF, Phillips and Jordan, Incorporated has caused this instrument to be executed and its name to be signed by its President and attested to by its Secretary pursuant to the authority of its Board of Directors this 20-th day of _March_ 1991.

PHILLIPS AND JORDAN, INCORPORATED.

By: _W. T. Phillips, Sr._
W. T. Phillips, Sr., President

ATTEST:

_Charles P. Fuller_
Secretary

[CORPORATE SEAL]

Instr:199104090024131
Pages:4 of 5

Back File Automation

McCampbell & Young
441029
MKW115/A:Brixworth.Amd
3/15/91 12:58pm

Page 4

STATE OF TENNESSEE )
)
COUNTY OF KNOX )

      Before me, the undersigned, authority, a Notary Public in and for said County and State, personally appeared W. T. Phillips, Sr., with whom I am personally acquainted, or proved to me on the basis of satisfactory evidence, and who, upon oath, acknowledged himself to be the President of Phillips and Jordan, Incorporated, the within named bargainor, a corporation, and that he as such President being authorized to do so, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as President.

      Witness my hand and seal at office, this _26th_ day of _March_ 1991.



_Andrea M. Ninith_
Notary Public

My Commission expires:

_10-17-94_

McCampbell & Young
441029
MKW115/A.Brixworth.Amd
3/15/91 12:58pm

Page 5

BOOK 2035 PAGE 0820



Instr:199104080024131
Pages:5 of 5
Back File Automation

Prepared by:
Mark K. Williams, Esq.
McCampbell & Young, A Professional Corporation
Suite 2021 Plaza Tower, P. O. Box 550
Knoxville, TN 37901-0550

## SECOND AMENDMENT TO THE DECLARATION OF COVENANTS AND RESTRICTIONS BRIXWORTH SUBDIVISION

KNOW ALL MEN BY THESE PRESENTS, that this Second Amendment to the Declaration of Covenants and Restrictions ("Second Amendment to Declaration") is made and entered into this *18th* day of *November*, 1991, by PHILLIPS AND JORDAN, INCORPORATED, a North Carolina corporation (hereinafter referred to as the "Developer").

### * * * W I T N E S S E T H * * *

WHEREAS, Developer is the owner of the real property described in Paragraph 1 of this Second Amendment to Declaration and has created thereon a residential community with open spaces and other common facilities for the benefit of the said community; and

WHEREAS, to provide for the preservation of the values and amenities in said community and for the maintenance of said common facilities, Developer has executed and recorded a Declaration of Covenants and Restrictions (the "Declaration") dated September 29, 1989 and recorded in the Knox County Register's Office in Book 1991, Pages 722-746 providing that the real property described in Paragraph 1 of this Second Amendment to Declaration shall be held, transferred, sold, conveyed and occupied subject to the covenants, restrictions, easements, charges and liens set forth in the Declaration; and

SEE WB 2081 - PG 198 FOURTH AMENDMENT
SEE WB 2073 - PG 458 THIRD AMENDMENT

INST: 9394   WB 2057 PG: 82   11/22/1991 14:59:03   Page 1

McCampbell & Young
441029
MXW125/A:Brixworth.Amd
11/15/91 10:41am

STEVE HALL
REGISTER OF DEEDS
KNOX COUNTY

Instr:199111220035611
Pages: 1 of 5
Cross Ref:WB 2057/82
Back File Automation

WHEREAS, by an amendment titled First Amendment to the Declaration of Covenants and Restrictions Brixworth Subdivision dated March 20, 1991, and recorded in the Knox County Register's Office in Book 2035, Page 816, Developer modified the Declaration in certain respects; and

WHEREAS, Developer now wishes to modify the Declaration in certain additional respects in accordance with Article XXIII of the Declaration;

NOW, THEREFORE, the Developer hereby amends the Declaration as follows:

1. The real property which is held, transferred, sold, conveyed and occupied subject to the Declaration amended hereby is located in Knox County, Tennessee, and is more particularly described as follows:

TRACT 1:

BEGINNING at a point in the North right-of-way of Turkey Creek Road said point being 112 feet more or less West of the intersection of the North right-of-way of Turkey Creek Road and the Western right-of-way of Sailview Road; thence with the Northern right-of-way of Turkey Creek Road with a 2443.48 foot radius curve to the right 723.85 feet said curve having a chord bearing of South 59 deg. 06 min. 32 sec. West and a chord distance of 721.21 feet; thence South 69 deg. 30 min. 40 sec. West, 1804.22 feet; thence North 20 deg. 26 min. 18 sec. West, 10.00 feet; thence with a 537.96 foot radius curve to the right 720.73 feet, said curve having a chord bearing of North 72 deg. 03 min. 26 sec. West and a chord distance of 668.02 feet; thence North 33 deg. 40 min. 34 sec. West, 366.73 feet; thence with a 321.48 foot radius curve to the left 278.88 feet, said curve having a chord bearing of North 58 deg. 31 min. 39 sec. West and a chord distance of 270.71 feet; thence North 06 deg. 37 min. 16 sec. East, 10.00 feet; thence North 83 deg. 22 min. 44 sec. West, 200.84 feet; thence leaving the Northern right-of-way of Turkey Creek Road North 26 deg. 37 min. 49 sec. West, 251.79 feet; thence North 26 deg. 37 min. 49 sec. West, 486.04 feet; thence North 38 deg. 07 min. 20 sec. East, 80.49 feet; thence North 78 deg. 57 min. 40 sec. East, 2212.00 feet to a point in the Southwest corner of Turkey Creek Woods; thence with the South line of Turkey Creek Woods on the following calls: North 79 deg. 41 min. 22 sec. East, 100.49 feet; North 79 deg. 43 min. 43 sec. East, 109.04 feet; North 79 deg. 41 min. 12 sec. East, 220 feet; North 79 deg. 45 min. 13 sec. East, 110.16 feet; North 79 deg. 31 min. 19 sec. East, 109.27 feet; North 79 deg. 52 min. 27 sec. East, 242.07 feet; North 79 deg. 33 min. 15 sec. East, 52.06 feet; North 79 deg. 39 min. 54 sec. East, 210.03 feet to a point in the Western line of Sailview Subdivision; thence with the Western line of Sailview Subdivision of the following calls: South 28 deg. 18 min. 54 sec. East, 29.11 feet; South 27 deg.

McCampbell & Young
441029
MKW125/A:Brixworth.Amd
11/15/91 10:42am


Instr.:199111223035611
Pages:2 of 8

Back File Automation

Page 2

Case 3:23-cv-00402-TRM-JEM   Document 6-1   Filed 11/11/23   Page 32 of 54   PageID #: 254

51 min. 52 sec. East, 131.04 feet; South 27 deg. 53 min. 33 sec. East, 127.90 feet; South 27 deg. 54 min. 08 sec. East, 285.15 feet; South 27 deg. 50 min. 05 sec. East, 134.91 feet; South 27 deg. 54 min. 09 sec. East, 274.03 feet; South 28 deg. 27 min. 05 sec. East, 201.45 feet to the point of BEGINNING, as shown by survey of Robert G. Campbell & Associates, Inc. dated December 1, 1988, bearing File No. 88050.

## TRACT 2:

BEGINNING at a point in the Southern right-of-way of Turkey Creek Road said point also being in the Northern right-of-way of the Southern Railway and 2798 feet West of the intersection of the Northern right-of-way of Turkey Creek Road and the Western right-of-way of Sailview Road. Thence with the Northern right-of-way of Southern Railway South 69 deg. 35 min. 02 sec. West, 253.04 feet to a point at the 820 elevation on the following chords: North 15 deg. 58 min. 22 sec. West, 54.03 feet; North 15 deg. 58 min. 22 sec. West, 64.33 feet; North 69 deg. 03 min. 35 sec. West, 151.99 feet; North 79 deg. 59 min. 10 sec. West, 71.59 feet; North 71 deg. 57 min. 33 sec. West, 107.30 feet; North 63 deg. 49 min. 18 sec. West, 87.51 feet; North 63 deg. 21 min. 24 sec. West, 98.58 feet; North 28 deg. 24 min. 16 sec. West, 95.15 feet; North 07 deg. 43 min. 21 sec. East, 102.27 feet; North 09 deg. 53 min. 49 sec. East, 97.32 feet; North 26 deg. 47 min. 46 sec. West, 39.72 feet; North 41 deg. 08 min. 42 sec. West, 158.93 feet; South 89 deg. 36 min. 26 sec. West, 127.65 feet, thence leaving the 820 elevation North 52 deg. 35 min. 39 sec. West, 71.06 feet to a point in the Southern right-of-way of Turkey Creek Road; thence with the southern right-of-way of Turkey Creek Road South 83 deg. 22 min. 44 sec. East, 145.11 feet, thence with a 246.48 radius curve to the right 213.82 feet said curve having a chord bearing of South 58 deg. 31 min. 39 sec. East and a chord distance of 207.17 feet; thence North 56 deg. 19 min. 26 sec. East, 15.00 feet; thence South 33 deg. 40 min. 34 sec. East, 366.73 feet; thence with a 597.96 radius curve to the left 625.78 feet, said curve having a chord bearing of South 63 deg. 40 min. 44 sec. East and a chord distance of 597.48 feet to the point of BEGINNING as shown by survey of Robert G. Campbell & Associates, Inc., dated December 1, 1988, bearing File No. 88050.

BEING a part of the same property conveyed to W. T. Phillips, Sr., Trustee, of Knox County, Tennessee by Warranty Deed dated December 20, 1988 from Robert Jackson Bevins and wife, Priscilla L. Bevins, of Boone County, Missouri, Lillian Bevins Swan and husband, Bill J. Swan of Cabarrus County, North Carolina, Devisees of Elizabeth Jackson Bevins, deceased, of record in Deed Book 1965, page 1025, in the Register's Office for Knox County, Tennessee.

2. Article XIII, Section 1 is hereby amended by adding the following as a

Subparagraph (o):

No dwelling shall be constructed on any lot unless the lot is landscaped subject to the following minimum standards: There shall be planted on each lot six trees of a minimum height of ten

McCampbell & Young
441029
MCW125/A/Brisworth.Amd
11/15/91 10:43am

INST: 9394   VB   2057   PG: 84   11/22/1991 14:59:03


Instr: 199111220035611
Pages: 3 of 6

Back File Automation

(10) feet each. In the event the dwelling contains more than 2,800 square feet, the number of required trees shall be determined according to the following schedule:

| Square Feet | No. of Trees |
|---|---|
| 2,801-4,000 | 7 |
| 4,001-5,000 | 8 |
| 5,001-6,000 | 9 |
| 6,001-7,000 | 10 |
| 7,001-8,000 | 11 |
| 8,001-9,000 | 12 |
| 9,001-10,000 | 13 |
| Greater than 10,000 | 14 |

All lots must be attractively landscaped pursuant to a landscaping plan wich is submitted to the Brixworth Advisory Committee for approval. No landscaping shall be performed on any lot unless approved in advance by the Brixworth Advisory Committee.

3. All words used herein shall have the same meanings as those words are defined in the Declaration.

4. Except to the extent expressly modified herein, all provisions of the Declaration as previously amended are hereby reaffirmed.

IN WITNESS WHEREOF, Phillips and Jordan, Incorporated has caused this instrument to be executed and its name to be signed by its President and attested to by its Secretary pursuant to the authority of its Board of Directors this 18th day of November 1991.

PHILLIPS AND JORDAN, INCORPORATED

By: _W. T. Phillips Sr._

W. T. Phillips, Sr., President

Instr:1991112200035611
Pages:4 of 5
Back File Automation

McCampbell & Young
441029
MKW/12SA/Brixworth.Amd.
11/15/91 10:43am

Page 4

Case 3:23-cv-00492-TRM-JEM   Document 6-1   Filed 11/11/23   Page 34 of 54   PageID #: 256

ATTEST:

_Chas. L. Fullin_
Secretary

STATE OF TENNESSEE )
                   )
COUNTY OF KNOX     )

Before me, the undersigned, authority, a Notary Public in and for said County and State, personally appeared W. T. Phillips, Sr., with whom I am personally acquainted, or proved to me on the basis of satisfactory evidence, and who, upon oath, acknowledged himself to be the President of Phillips and Jordan, Incorporated, the within named bargainor, a corporation, and that he as such President being authorized to do so, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as President.

Witness my hand and seal at office, this _18th_ day of _November_, 1991.

_Andrea M. Nemeth_
Notary Public

My Commission expires:

_10/17/94_

INST: 9394    WB   2057   PG: 86    11/22/1991 14:59:03

McCampbell & Young
441829
MKW125/A:Betzworth.Amd
11/15/91 10:43am

Page 5



Instr:199111220035611
Pages:5 of 5

Back File Automation

STEVE HALL
REGISTER OF DEEDS
KNOX COUNTY

Prepared by:
Mark K. Williams, Esq.
McCampbell & Young, A Professional Corporation
Suite 2021 Plaza Tower, P. O. Box 550
Knoxville, TN 37901-0550

## THIRD AMENDMENT TO THE
## DECLARATION OF COVENANTS AND RESTRICTIONS
## BRIXWORTH SUBDIVISION

KNOW ALL MEN BY THESE PRESENTS, that this Third Amendment to the

Declaration of Covenants and Restrictions ("Third Amendment to Declaration") is made and

entered into this 26th day of ___May___, 1992, by PHILLIPS AND JORDAN,

INCORPORATED, a North Carolina corporation (hereinafter referred to as the "Developer").

### ***WITNESSETH***

WHEREAS, Developer is the owner of the real property described in Paragraph 1

of this Third Amendment to Declaration and has created thereon a residential community with

open spaces and other common facilities for the benefit of the said community; and

WHEREAS, to provide for the preservation of the values and amenities in said

community and for the maintenance of said common facilities, Developer has executed and

recorded a Declaration of Covenants and Restrictions (the "Declaration") dated September 29,

1989 and recorded in the Knox County Register's Office in Book 1991, Pages 722-746 providing

that the real property described in Paragraph 1 of this Second Amendment to Declaration shall

be held, transferred, sold, conveyed and occupied subject to the covenants, restrictions,

easements, charges and liens set forth in the Declaration; and

INST: 46564   WB   2073   PG: 458   05/29/1992 10:02:52

Instr:199205290035092
Pages:1 of 8
Cross Ref:WB 2073/458
Book File Automation

WHEREAS, by an amendment titled First Amendment to the Declaration of Covenants and Restrictions Brixworth Subdivision dated March 20, 1991, and recorded in the Knox County Register's Office in Book 2035, Page 816, Developer modified the Declaration in certain respects; and

WHEREAS, by an amendment entitled Second Amendment for the Declaration of Covenant and Restrictions Brixworth Subdivision, dated November 18, 1991, and recorded in the Knox County Register's Office in Book 2057, Page 82, Developer modified the Declaration in certain additional respects; and

WHEREAS, Developer now wishes to further modify the Declaration in accordance with Article XXIII of the Declaration;

NOW, THEREFORE, the Developer hereby amends the Declaration as follows:

1. The real property which is held, transferred, sold, conveyed and occupied subject to the Declaration amended hereby is located in Knox County, Tennessee, and is more particularly described as follows:

TRACT 1:

BEGINNING at a point in the North right-of-way of Turkey Creek Road said point being 112 feet more or less West of the intersection of the North right-of-way of Turkey Creek Road and the Western right-of-way of Sailview Road; thence with the Northern right-of-way of Turkey Creek Road with a 2443.48 foot radius curve to the right 723.85 feet said curve having a chord bearing of South 59 deg. 06 min. 32 sec. West and a chord distance of 721.21 feet; thence South 69 deg. 30 min. 40 sec. West, 1804.22 feet; thence North 20 deg. 26 min. 18 sec. West, 10.00 feet; thence with a 537.96 foot radius curve to the right 720.73 feet, said curve having a chord bearing of North 72 deg. 03 min. 26 sec. West and a chord distance of 668.02 feet; thence North 33 deg. 40 min. 34 sec. West, 366.73 feet; thence with a 321.48 foot radius curve to the left 278.88 feet, said curve having a chord bearing of North 58 deg. 31 min. 39 sec. West and a chord distance of 270.71 feet; thence North 06 deg. 37 min. 16 sec. East, 10.00 feet; thence North 83 deg. 22 min. 44 sec. West, 200.84 feet; thence leaving the Northern right-of-way of Turkey Creek Road North 26 deg. 37 min. 49 sec. West, 251.79 feet; thence North 26 deg. 37 min. 49 sec. West, 486.04 feet; thence North 38 deg. 07 min. 20 sec. East, 80.49 feet; thence

McCampbell & Young
441029
MKW131JA:3Brix.Amd
4/14/92 4:14pm

Page 2

INST: 46564   VB   2073   PG: 159   05/29/1992 10:02:52


Instr:199205290035992
Book File Information

North 78 deg. 57 min. 40 sec. East, 2212.00 feet to a point in the Southwest corner of Turkey Creek Woods; thence with the South line of Turkey Creek Woods on the following calls: North 79 deg. 41 min. 22 sec. East, 100.49 feet; North 79 deg. 43 min. 43 sec. East, 109.04 feet; North 79 deg. 41 min. 12 sec. East, 220 feet; North 79 deg. 45 min. 13 sec. East, 110.16 feet; North 79 deg. 31 min. 19 sec. East, 109.27 feet; North 79 deg. 52 min. 2 sec. East, 242.07 feet; North 79 deg. 33 min. 15 sec. East, 52.06 feet; North 79 deg. 39 min. 54 sec. East, 210.03 feet to a point in the Western line of Sailview Subdivision; thence with the Western line of Sailview Subdivision of the following calls: South 28 deg. 18 min. 54 sec. East, 29.11 feet; South 27 deg. 51 min. 52 sec. East, 131.04 feet; South 27 deg. 53 min. 33 sec. East, 127.90 feet; South 27 deg. 54 min. 08 sec. East, 285.15 feet; South 27 deg. 50 min. 05 sec. East, 134.91 feet; South 27 deg. 54 min. 09 sec. East, 274.03 feet; South 28 deg. 27 min. 05 sec. East, 201.45 feet to the point of BEGINNING, as shown by survey of Robert G. Campbell & Associates, Inc. dated December 1, 1988, bearing File No. 88050.

TRACT 2:

BEGINNING at a point in the Southern right-of-way of Turkey Creek Road said point also being in the Northern right-of-way of the Southern Railway and 2798 feet West of the intersection of the Northern right-of-way of Turkey Creek Road and the Western right-of-way of Sailview Road. Thence with the Northern right-of-way of Southern Railway South 69 deg. 35 min. 02 sec. West, 253.04 feet to a point at the 820 elevation on the following chords: North 15 deg. 58 min. 22 sec. West, 54.03 feet; North 15 deg. 58 min. 22 sec. West, 64.33 feet; North 69 deg. 03 min. 35 sec. West, 151.99 feet; North 79 deg. 59 min. 10 sec. West, 71.59 feet; North 71 deg. 57 min. 33 sec. West, 107.30 feet; North 63 deg. 49 min. 18 sec. West, 87.51 feet; North 63 deg. 21 min. 24 sec. West, 98.58 feet; North 28 deg. 24 min. 16 sec. West, 95.15 feet; North 07 deg. 43 min. 21 sec. East, 102.27 feet; North 09 deg. 53 min. 49 sec. East, 97.32 feet; North 26 deg. 47 min. 46 sec. West, 39.72 feet; North 41 deg. 08 min. 42 sec. West, 158.93 feet; South 89 deg. 36 min. 26 sec. West, 127.65 feet, thence leaving the 820 elevation North 52 deg. 35 min. 39 sec. West, 71.06 feet to a point in the Southern right-of-way of Turkey Creek Road; thence with the southern right-of-way of Turkey Creek Road South 83 deg. 22 min. 44 sec. East, 145.11 feet, thence with a 246.48 radius curve to the right 213.82 feet said curve having a chord bearing of South 58 deg. 31 min. 39 sec. East and a chord distance of 207.17 feet; thence North 56 deg. 19 min. 26 sec. East, 15.00 feet; thence South 33 deg. 40 min. 34 sec. East, 366.73 feet; thence with a 597.96 radius curve to the left 625.78 feet, said curve having a chord bearing of South 63 deg. 40 min. 44 sec. East and a chord distance of 597.48 feet to the point of BEGINNING as shown by survey of Robert G. Campbell & Associates, Inc., dated December 1, 1988, bearing File No. 88050.

BEING a part of the same property conveyed to W. T. Phillips, Sr., Trustee, of Knox County, Tennessee by Warranty Deed dated December 20, 1988 from Robert Jackson Bevins and wife, Priscilla L. Bevins, of Boone County, Missouri, Lillian Bevins Swan and husband, Bill J. Swan of Cabarrus County, North Carolina, Devisees of Elizabeth Jackson Bevins, deceased, of record in Deed Book 1965, page 1025, in the Register's Office for Knox County, Tennessee.

McCampbell & Young
441029
MKW1131/A2Brits.Amd
4/14/92 4.34pm

Page 3


Instr:199205290035692
Pages:3 of 5

Back File Automation

2. Article XIII, Section 2 is hereby amended by adding the following as a Subparagraph (g):

No outside basketball goals may be installed or used.

3. All words used herein shall have the same meanings as those words are defined in the Declaration.

4. Except to the extent expressly modified herein, all provisions of the Declaration as previously amended are hereby reaffirmed.

IN WITNESS WHEREOF, Phillips and Jordan, Incorporated has caused this instrument to be executed and its name to be signed by its President and attested to by its Secretary pursuant to the authority of its Board of Directors this 26th day of ___May___, 1992.

PHILLIPS AND JORDAN, INCORPORATED

By: _____
W. T. Phillips, Sr., President

ATTEST:

_____
Secretary

Instr:1992052900035982
Pages:4 of 5
Back File Automation

McCampbell & Young
441029
MXW131/A:13Brds.Amd
4/14/92 4:14pm

Page 4

INST: 46564   WB   2073   PG: 461   05/29/1992 10:02:52

STATE OF TENNESSEE )
                   )
COUNTY OF KNOX     )

Before me, the undersigned, authority, a Notary Public in and for said County and State, personally appeared W. T. Phillips, Sr., with whom I am personally acquainted, or proved to me on the basis of satisfactory evidence, and who, upon oath, acknowledged himself to be the President of Phillips and Jordan, Incorporated, the within named bargainor, a corporation, and that he as such President being authorized to do so, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as President.

Witness my hand and seal at office, this 26th day of May, 1992.

_____
Notary Public

My Commission expires:
10/17/94

McCampbell & Young
441059
MKW151IA\5BdcAmd
4/14/92 4:34pm

Page 5

INST: #6564   WB   2073   PG: 462   05/29/1992 10:02:52



Instr:199208250036892
Pages:5 of 6
Back File Automation

Prepared by:
Mark K. Williams, Esq.
McCampbell & Young, A Professional Corporation
Suite 2021 Plaza Tower, P. O. Box 550
Knoxville, TN 37901-0550

## FOURTH AMENDMENT TO THE
## DECLARATION OF COVENANTS AND RESTRICTIONS
## BRIXWORTH SUBDIVISION

KNOW ALL MEN BY THESE PRESENTS, that this Fourth Amendment to the

Declaration of Covenants and Restrictions ("Fourth Amendment to Declaration") is made and

entered into this _11th_ day of _August_, 1992, by PHILLIPS AND JORDAN,

INCORPORATED, a North Carolina corporation (hereinafter referred to as the "Developer").

### * * * W I T N E S S E T H * * *

WHEREAS, Developer is the owner of the real property described in Paragraph 1

of this Fourth Amendment to Declaration and has created thereon a residential community with

open spaces and other common facilities for the benefit of the said community; and

WHEREAS, to provide for the preservation of the values and amenities in said

community and for the maintenance of said common facilities, Developer has executed and

recorded a Declaration of Covenants and Restrictions (the "Declaration") dated September 29,

1989 and recorded in the Knox County Register's Office in Book 1991, Pages 722-746 providing

that the real property described in Paragraph 1 of this Fourth Amendment to Declaration shall

be held, transferred, sold, conveyed and occupied subject to the covenants, restrictions,

easements, charges and liens set forth in the Declaration; and

STEVE HALL
REGISTER OF DEEDS
KNOX COUNTY

McCampbell & Young
441029
MKW/131/A/4Brix.Amd
7/31/92 9:23am

Page 1

INST: 63392    VB    2081 PG: 198    08/18/1992 11:35:47

Instr:1992081800039895
Pages:1 of 5
Cross Ref:MB 2081/198
Back File Automation

WHEREAS, by an amendment titled First Amendment to the Declaration of Covenants and Restrictions Brixworth Subdivision dated March 20, 1991, and recorded in the Knox County Register's Office in Book 2035, Page 816, Developer modified the Declaration in certain respects; and

WHEREAS, by amendments entitled Second Amendment to the Declaration of Covenants and Restrictions Brixworth Subdivision, dated November 18, 1991, and recorded in the Knox County Register's Office in Book 2057, Page 82, and Third Amendment to the Declaration of Covenants and Restrictions Brixworth Subdivision, dated May 26, 1992, and recorded in the Knox County Register's Office in book 2073, Page 459, Developer modified the Declaration in certain additional respects; and

WHEREAS, Developer now wishes to further modify the Declaration in accordance with Article XXIII of the Declaration;

NOW, THEREFORE, the Developer hereby amends the Declaration as follows:

1. The real property which is held, transferred, sold, conveyed and occupied subject to the Declaration amended hereby is located in Knox County, Tennessee, and is more particularly described as follows:

TRACT 1:

BEGINNING at a point in the North right-of-way of Turkey Creek Road said point being 112 feet more or less West of the intersection of the North right-of-way of Turkey Creek Road and the Western right-of-way of Sailview Road; thence with the Northern right-of-way of Turkey Creek Road with a 2443.48 foot radius curve to the right 723.85 feet said curve having a chord bearing of South 59 deg. 06 min. 32 sec. West and a chord distance of 721.21 feet; thence South 69 deg. 30 min. 40 sec. West, 1804.22 feet; thence North 20 deg. 26 min. 18 sec. West, 10.00 feet; thence with a 537.96 foot radius curve to the right 720.73 feet, said curve having a chord bearing of North 72 deg. 03 min. 26 sec. West and a chord distance of 668.02 feet; thence North 33 deg. 40 min. 34 sec. West, 366.73 feet; thence with a 321.48 foot radius curve to the left 278.88 feet, said curve having a chord bearing of North 58 deg. 31 min. 39 sec. West and a

McCampbell & Young
443029
M2CW131/A:/Bris.Amd
7/ 31/92 9:23am

Page 2

INST: 63392   VB   2081  PG: 199   08/18/1992 11:35:47



Instr:1992081800039996
Pages:2 of 5

Back File Automation

chord distance of 270.71 feet; thence North 06 deg. 37 min. 16 sec. East, 10.00 feet; thence North 83 deg. 22 min. 44 sec. West, 200.84 feet; thence leaving the Northern right-of-way of Turkey Creek Road North 26 deg. 37 min. 49 sec. West, 251.79 feet; thence North 26 deg. 37 min. 49 sec. West, 486.04 feet; thence North 38 deg. 07 min. 20 sec. East, 80.49 feet; thence North 78 deg. 57 min. 40 sec. East, 2212.00 feet to a point in the Southwest corner of Turkey Creek Woods; thence with the South line of Turkey Creek Woods on the following calls: North 79 deg. 41 min. 22 sec. East, 100.49 feet; North 79 deg. 43 min. 43 sec. East, 109.04 feet; North 79 deg. 41 min. 12 sec. East, 220 feet; North 79 deg. 45 min. 13 sec. East, 110.16 feet; North 79 deg. 31 min. 19 sec. East, 109.27 feet; North 79 deg. 52 min. 27 sec. East, 242.07 feet; North 79 deg. 33 min. 15 sec. East, 52.06 feet; North 79 deg. 39 min. 54 sec. East, 210.03 feet to a point in the Western line of Sailview Subdivision; thence with the Western line of Sailview Subdivision of the following calls: South 28 deg. 18 min. 54 sec. East, 29.11 feet; South 27 deg. 51 min. 52 sec. East, 131.04 feet; South 27 deg. 53 min. 33 sec. East, 127.90 feet; South 27 deg. 54 min. 08 sec. East, 285.15 feet; South 27 deg. 50 min. 05 sec. East, 134.91 feet; South 27 deg. 54 min. 09 sec. East, 274.03 feet; South 28 deg. 27 min. 05 sec. East, 201.45 feet to the point of BEGINNING, as shown by survey of Robert G. Campbell & Associates, Inc. dated December 1, 1988, bearing File No. 88050.

TRACT 2:

BEGINNING at a point in the Southern right-of-way of Turkey Creek Road said point also being in the Northern right-of-way of the Southern Railway and 2798 feet West of the intersection of the Northern right-of-way of Turkey Creek Road and the Western right-of-way of Sailview Road. Thence with the Northern right-of-way of Southern Railway South 69 deg. 35 min. 02 sec. West, 253.04 feet to a point at the 820 elevation on the following chords: North 15 deg. 58 min. 22 sec. West, 54.03 feet; North 15 deg. 58 min. 22 sec. West, 64.33 feet; North 69 deg. 03 min. 35 sec. West, 151.99 feet; North 79 deg. 59 min. 10 sec. West, 71.59 feet; North 71 deg. 57 min. 33 sec. West, 107.30 feet; North 63 deg. 49 min. 18 sec. West, 87.51 feet; North 63 deg. 21 min. 24 sec. West, 98.58 feet; North 28 deg. 24 min. 16 sec. West, 95.15 feet; North 07 deg. 43 min. 21 sec. East, 102.27 feet; North 09 deg. 53 min. 49 sec. East, 97.32 feet; North 26 deg. 47 min. 46 sec. West, 39.72 feet; North 41 deg. 08 min. 42 sec. West, 158.93 feet; South 89 deg. 36 min. 26 sec. West, 127.65 feet; thence leaving the 820 elevation North 52 deg. 35 min. 39 sec. West, 71.06 feet to a point in the Southern right-of-way of Turkey Creek Road; thence with the southern right-of-way of Turkey Creek Road South 83 deg. 22 min. 44 sec. East, 145.11 feet, thence with a 246.48 radius curve to the right 213.82 feet said curve having a chord bearing of South 58 deg. 31 min. 39 sec. East and a chord distance of 207.17 feet; thence North 56 deg. 19 min. 26 sec. East, 15.00 feet; thence South 33 deg. 40 min. 34 sec. East, 366.73 feet; thence with a 597.96 radius curve to the left 625.78 feet, said curve having a chord bearing of South 63 deg. 40 min. 44 sec. East and a chord distance of 597.48 feet to the point of BEGINNING as shown by survey of Robert G. Campbell & Associates, Inc., dated December 1, 1988, bearing File No. 88050.

BEING a part of the same property conveyed to W. T. Phillips, Sr., Trustee, of Knox County, Tennessee by Warranty Deed dated December 20, 1988 from Robert Jackson

INST: 63392   WB   2081   PG: 200   08/18/1992 11:35:47


Instr:199208190038996
Pages:8 of 8

Back File Automation

Bevins and wife, Priscilla L. Bevins, of Boone County, Missouri, Lillian Bevins Swan and husband, Bill J. Swan of Cabarrus County, North Carolina, Devisees of Elizabeth Jackson Bevins, deceased, of record in Deed Book 1965, page 1025, in the Register's Office for Knox County, Tennessee.

2. Article XIII, Section 2 (g) regarding the prohibition of outdoor basketball goals is hereby deleted.

3. Article XIII, Section 1 is hereby amended by adding the following as a Subparagraph (p):

Outdoor basketball goals are permissible provided that they have attractive shrubbery and screening around them. The location and manner of installation of outdoor basketball goals are subject to the approval of the Advisory Committee.

4. All words used herein shall have the same meanings as those words are defined in the Declaration.

5. Except to the extent expressly modified herein, all provisions of the Declaration as previously amended are hereby reaffirmed.

IN WITNESS WHEREOF, Phillips and Jordan, Incorporated has caused this instrument to be executed and its name to be signed by its President and attested to by its Secretary pursuant to the authority of its Board of Directors this _11th_ day of _August_, 1992.

PHILLIPS AND JORDAN, INCORPORATED

By _____
W. T. Phillips, Sr., President

McCampbell & Young
441029
MKW1311/A:ABriz.Amd
7/ 31/92 9:33am

Instr:199208160039896
Pages:4 of 6
Back File Automation

Page 4

INST: 63392   WB   2081   PG: 201   08/18/1992 11:35:47



ATTEST:

_Charles R. Fuller_
Secretary

STATE OF TENNESSEE          )
                            )
COUNTY OF KNOX              )

   Before me, the undersigned, authority, a Notary Public in and for said County and State, personally appeared W. T. Phillips, Sr., with whom I am personally acquainted, or proved to me on the basis of satisfactory evidence, and who, upon oath, acknowledged himself to be the President of Phillips and Jordan, Incorporated, the within named bargainor, a corporation, and that he as such President being authorized to do so, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as President.

   Witness my hand and seal at office, this _11th_ day of _August_, 1992.

_Andrea M. Nemeth_
Notary Public

My Commission expires:

_10-17-94_

INST: 63392  WB  2081  PG: 202  08/18/1992 11:35:47

McCampbell & Young
441029
MKW111JA4Briz.Amd
7/31/92 9:23 am

Page 5

Instr:199208180039896
Pages:5 of 5

Back File Automation

Prepared by:
Mark K. Williams, Esq.
McCampbell & Young, A Professional Corporation
Suite 2021 Plaza Tower, P. O. Box 550
Knoxville, TN 37901-0550



Inst:199306200045226
Pages:1 of 5
Cross Ref:WB 2118/357
Back File Automation

## FIFTH AMENDMENT TO THE
## DECLARATION OF COVENANTS AND RESTRICTIONS
## BRIXWORTH SUBDIVISION

KNOW ALL MEN BY THESE PRESENTS, that this Fifth Amendment to the

Declaration of Covenants and Restrictions ("Fifth Amendment to Declaration") is made and

entered into this 15ᵗʰ day of September, 1993, by PHILLIPS AND JORDAN,

INCORPORATED, a North Carolina corporation (hereinafter referred to as the "Developer").

### * * * W I T N E S S E T H * * *

WHEREAS, Developer is the owner of the real property described in Paragraph 1

of this Fifth Amendment to Declaration and has created thereon a residential community with

open spaces and other common facilities for the benefit of the said community; and

WHEREAS, to provide for the preservation of the values and amenities in said

community and for the maintenance of said common facilities, Developer has executed and

recorded a Declaration of Covenants and Restrictions (the "Declaration") dated September 29,

1989 and recorded in the Knox County Register's Office in Book 1991, Pages 722-746 providing

that the real property described in Paragraph 1 of this Fifth Amendment to Declaration shall be

held, transferred, sold, conveyed and occupied subject to the covenants, restrictions, easements,

charges and liens set forth in the Declaration; and

WHEREAS, by amendments entitled First Amendment to the Declaration of

Covenants and Restrictions Brixworth Subdivision dated March 20, 1991, and recorded in the

McCampbell & Young
H:\wpuser\mfw\41029\BRIX.AMD
9/ 2/93 4:40pm

INST: 20126  WB  2118  PG: 357  09/20/1993 10:09:22

Page 1

STEVE HALL
REGISTER OF DEEDS
KNOX COUNTY

Knox County Register's Office in Book 2035, Page 816; Second Amendment to the Declaration of Covenants and Restrictions Brixworth Subdivision, dated November 18, 1991, and recorded in the Knox County Register's Office in Book 2057, Page 82; Third Amendment to the Declaration of Covenants and Restrictions Brixworth Subdivision, dated May 26, 1992, and recorded in the Knox County Register's Office in Book 2073, Page 459; and Fourth Amendment to the Declaration of Covenants and Restrictions Brixworth Subdivision, dated August 11, 1992, and recorded in the Knox County Register's Office in Book 2081, Page 199, Developer modified the Declaration in certain respects; and

WHEREAS, Developer now wishes to further modify the Declaration in accordance with Article XXIII of the Declaration;

NOW, THEREFORE, the Developer hereby amends the Declaration as follows:

1. The real property which is held, transferred, sold, conveyed and occupied subject to the Declaration amended hereby is located in Knox County, Tennessee, and is more particularly described as follows:

<u>TRACT 1:</u>

BEGINNING at a point in the North right-of-way of Turkey Creek Road said point being 112 feet more or less West of the intersection of the North right-of-way of Turkey Creek Road and the Western right-of-way of Sailview Road; thence with the Northern right-of-way of Turkey Creek Road with a 2443.48 foot radius curve to the right 723.85 feet said curve having a chord bearing of South 59 deg. 06 min. 32 sec. West and a chord distance of 721.21 feet; thence South 69 deg. 30 min. 40 sec. West, 1804.22 feet; thence North 20 deg. 26 min. 18 sec. West, 10.00 feet; thence with a 537.96 foot radius curve to the right 720.73 feet, said curve having a chord bearing of North 72 deg. 03 min. 26 sec. West and a chord distance of 668.02 feet; thence North 33 deg. 40 min. 34 sec. West, 366.73 feet; thence with a 321.48 foot radius curve to the left 278.88 feet, said curve having a chord bearing of North 58 deg. 31 min. 39 sec. West and a chord distance of 270.71 feet; thence North 06 deg. 37 min. 16 sec. East, 10.00 feet; thence North 83 deg. 22 min. 44 sec. West, 200.84 feet; thence leaving the Northern right-of-way of Turkey Creek Road North 26 deg. 37 min. 49 sec. West, 251.79 feet; thence North 26 deg. 37 min. 49 sec. West, 486.04 feet; thence North 38 deg. 07 min. 20 sec. East, 80.49 feet; thence North 78 deg. 57 min. 40 sec. East, 2212.00 feet to a point in the Southwest corner of Turkey

PREC AMENDMENT & T BAILEY
31.1:wp.scr/wr441029JSBRDX.AMD
6/ 2/93 4:40pm

INST: 20126   WB   2118   PG: 358   09/20/1993 10:09:22

Page 2


Instr:199309200045229
Pages:2 of 5

Book File Automation

Creek Woods; thence with the South line of Turkey Creek Woods on the following calls: North 79 deg. 41 min. 22 sec. East, 100.49 feet; North 79 deg. 43 min. 43 sec. East, 109.04 feet; North 79 deg. 41 min. 12 sec. East, 220 feet; North 79 deg. 45 min. 13 sec. East, 110.16 feet; North 79 deg. 31 min. 19 sec. East, 109.27 feet; North 79 deg. 52 min. 27 sec. East, 242.07 feet; North 79 deg. 33 min. 15 sec. East, 52.06 feet; North 79 deg. 39 min. 54 sec. East, 210.03 feet to a point in the Western line of Sailview Subdivision; thence with the Western line of Sailview Subdivision of the following calls: South 28 deg. 18 min. 54 sec. East, 29.11 feet; South 27 deg. 51 min. 52 sec. East, 131.04 feet; South 27 deg. 53 min. 33 sec. East, 127.90 feet; South 27 deg. 54 min. 08 sec. East, 285.15 feet; South 27 deg. 50 min. 05 sec. East, 134.91 feet; South 27 deg. 54 min. 09 sec. East, 274.03 sec; South 28 deg. 27 min. 05 sec. East, 201.45 feet to the point of BEGINNING, as shown by survey of Robert G. Campbell & Associates, Inc. dated December 1, 1988, bearing File No. 88050.

TRACT 2:

BEGINNING at a point in the Southern right-of-way of Turkey Creek Road said point also being in the Northern right-of-way of the Southern Railway and 2798 feet West of the intersection of the Northern right-of-way of Turkey Creek Road and the Western right-of-way of Sailview Road. Thence with the Northern right-of-way of Southern Railway South 69 deg. 35 min. 02 sec. West, 253.04 feet to a point at the 820 elevation on the following chords: North 15 deg. 58 min. 22 sec. West, 54.03 feet; North 15 deg. 58 min. 22 sec. West, 64.33 feet; North 69 deg. 03 min. 35 sec. West, 151.99 feet; North 79 deg. 59 min. 10 sec. West, 71.59 feet; North 71 deg. 57 min. 33 sec. West, 107.30 feet; North 63 deg. 49 min. 18 sec. West, 87.51 feet; North 63 deg. 21 min. 24 sec. West, 98.58 feet; North 28 deg. 24 min. 16 sec. West, 95.15 feet; North 07 deg. 43 min. 21 sec. East, 102.27 feet; North 09 deg. 53 min. 49 sec. East, 97.32 feet; North 26 deg. 47 min. 46 sec. West, 39.72 feet; North 41 deg. 08 min. 42 sec. West, 158.93 feet; South 89 deg. 36 min. 26 sec. West, 127.65 feet, thence leaving the 820 elevation North 52 deg. 35 min. 39 sec. West, 71.06 feet to a point in the Southern right-of-way of Turkey Creek Road; thence with the southern right-of-way of Turkey Creek Road South 83 deg. 22 min. 44 sec. East, 145.11 feet, thence with a 246.48 radius curve to the right 213.82 feet said curve having a chord bearing of South 58 deg. 31 min. 39 sec. East and a chord distance of 207.17 feet; thence North 56 deg. 19 min. 26 sec. East, 15.00 feet; thence South 33 deg. 40 min. 34 sec. East, 366.73 feet; thence with a 597.96 radius curve to the left 625.78 feet, said curve having a chord bearing of South 63 deg. 40 min. 44 sec. East and a chord distance of 597.48 feet to the point of BEGINNING as shown by survey of Robert G. Campbell & Associates, Inc., dated December 1, 1988, bearing File No. 88050.

BEING a part of the same property conveyed to W. T. Phillips, Sr., Trustee, of Knox County, Tennessee by Warranty Deed dated December 20, 1988 from Robert Jackson Bevins and wife, Priscilla L. Bevins, of Boone County, Missouri, Lillian Bevins Swan and husband, Bill J. Swan of Cabarrus County, North Carolina, Devisees of Elizabeth Jackson Bevins, deceased, of record in Deed Book 1965, page 1025, in the Register's Office for Knox County, Tennessee.

INST: 20126   VB   2118   PG: 359   09/20/1993 10:09:22

WM CAMPBELL & YOUNG
H:\wpsasstw\44102395BRIX.AMD
9/ 2/93 4:40pm



Instr:19930920004522S
Pages:3 of 5

Book File Automation

2. Article XIII, Section 1 is hereby amended by deleting Subparagraph (b) and replacing it with the following as a new Subparagraph (b):

The minimum living area square footage requirement shall be 2500 square feet of heating and air conditioned space for one-story dwellings and 2800 square feet of heating and air conditioned space for all other dwellings unless the Brixworth Advisory Committee waives these requirements, which decision shall be in the sole discretion of the Committee.

3. All words used herein shall have the same meanings as those words are defined in the Declaration.

4. Except to the extent expressly modified herein, all provisions of the Declaration as previously amended are hereby reaffirmed.

IN WITNESS WHEREOF, Phillips and Jordan, Incorporated has caused this instrument to be executed and its name to be signed by its President and attested to by its Secretary pursuant to the authority of its Board of Directors this _15th_ day of _September_, 1993.

PHILLIPS AND JORDAN, INCORPORATED

By: _W T Phillips_
Its: Vice President

INST: 20126    WB    2118    PG: 360    09/20/1993 10:09:22

McCampbell & Young
H:\wpusers\tw\441030\3BRIX.AMD
9/ 2/93 4:40pm

Page 4

Instr:129389520004d5226
Pages:4 of 5

Back File Automation

STATE OF TENNESSEE )
                    )
COUNTY OF KNOX      )

Before me, the undersigned, authority, a Notary Public in and for said County and State, personally appeared _W.T. Phillips, Jr._, with whom I am personally acquainted, or proved to me, on the basis of satisfactory evidence, and who, upon oath, acknowledged himself to be the President of Phillips and Jordan, Incorporated, the within named bargainor, a corporation, and that he as such President being authorized to do so, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as President.

Witness my hand and seal at office, this _15th_ day of _September_, 1993.

Andrea M. Nemeth
Notary Public



My Commission expires:
_____



Instr:199306200046225
Pages:5 of 5
Back File Automation

INST: 20126   WB   2118   PG: 361   09/20/1993 10:09:22

PHILLIPS & JORDAN
H:\wpuser\tw\41029\SBMIX.AMD
9/2/93 4:40pm

STEVE HALL
REGISTER OF DEEDS
KNOX COUNTY

Prepared by :
Phillips and Jordan, Incorporated
6621 Wilbanks Road
Knoxville, TN 37912

## SIXTH AMENDMENT TO THE
## DECLARATION OF COVENANTS AND RESTRICTIONS
## BRIXWORTH SUBDIVISION

KNOW ALL MEN BY THESE PRESENTS, that this Sixth Amendment to the
Declaration of Covenants and Restrictions ("Sixth Amendment to Declaration") is made and
entered into this 30th day of March 2000, by PHILLIPS AND JORDAN,
INCORPORATED, a North Carolina corporation (hereinafter referred to as the "Developer").

### * * * W I T N E S S E T H * * *

WHEREAS, Developer is the owner of the real property described in Paragraph 1 of this
Sixth Amendment to Declaration and has created theron a residential community with open
spaces and other common facilities for the benefit of the said community; and

WHEREAS, to provide for the preservation of the values and amenities in said
community and for the maintenance of said common facilities, Developer has executed and
recorded a Declaration of Covenants and Restrictions (the "Declaration") dated September 29,
1989 and recorded in the Knox County Register's Office in Book 1991, Pages 722-746 providing
that the real property described in Paragraph 1 of this Sixth Amendment to Declaration shall be
held, transferred, sold, conveyed and occupied subject to the covenants, restrictions, easements,
charges and liens set forth in the Declaration; and

WHEREAS, by amendments entitled First Amendment to the Declaration of Covenants
and Restrictions Brixworth Subdivision dated March 20, 1991, and recorded in the Knox County

Instr:200003318221074 Pages: 1 OF 4
REC'D FOR REC 03/31/2000 10:14:11AM
RECORD FEE: $10.00
M. TAX: $0.00 T. TAX: $0.00

1

Register's Office in Book 2035, page 816; Second Amendment to the Declaration of Covenants and Restrictions Brixworth Subdivision, dated November 18, 1991, and recorded in the Knox County Register's Office in Book 2057, page 82; Third Amendment to the Declaration of Covenants and Restrictions Brixworth Subdivision, dated May 26, 1992, and recorded in the Knox County Register's Office in Book 2073, Page 458; Fourth Amendment to the Declaration of Covenants and Restrictions Brixworth Subdivision, dated August 11, 1992, and recorded in the Knox County Register's Office in Book 2081, Page 198; and Fifth Amendment to the Declaration of Covenants and Restrictions Brixworth Subdivision, dated September 15, 1993, and recorded in the Knox County Register's Office in Book 2118, Page 357, Developer modified the Declaration in certain respects; and

WHEREAS, Developer now wishes to further modify the Declaration in accordance with Article XXIII of the Declaration;

NOW, THEREFORE, the Developer hereby amends the Declaration as follows:

1. The real property which is held, transferred, sold, conveyed and occupied subject to the Declaration amended hereby is located in Knox County, Tennessee, and is more particularly described as follows:

TRACT 1:

BEGINNING at a point in the North right-of-way of Turkey Creek Road said point being 112 feet more or less West of the intersection of the North right-of-way of Turkey Creek Road and the Western right-of-way of Sailview Road; thence with the Northern right-of-way of Turkey Creek Road with a 2443.48 foot radius curve to the right 723.85 feet said curve having a chord bearing of South 59 deg. 06 min. 32 sec. West and a chord distance of 721.21 feet; thence South 69 deg. 30 min. 40 sec. West, 1804.22 feet; thence North 20 deg. 26 min. 18 sec. West, 10.00 feet; thence with a 537.96 foot radius curve to the right 720.73 feet, said curve having a chord bearing of North 72 deg. 03 min. 26 sec. West and a chord distance of 668.02 feet; thence North 33 deg. 40 min. 34 sec. West, 366.73 feet; thence with a 321.48 foot radius curve to the left 278.88 feet, said curve having a chord bearing of North 58 deg. 31 min. 39 sec. West and a chord distance of 270.71 feet; thence North 06 deg. 37 min. 16 sec. East, 10.00 feet; thence North 83 deg. 22 min. 44 sec. West, 200.84 feet; thence leaving the Northern right-of-way of Turkey Creek Road North 26 deg. 37 min. 49 sec. West, 251.79 feet; thence North 26 deg. 37 min. 49 sec. West, 486.04 feet; thence North 38 deg. 07 min. 20 sec. East, 80.49 feet; thence North 78

2

deg. 57 min. 40 sec. East, 2212.00 feet to a point in the Southwest corner of Turkey Creek Woods; thence with the South line of Turkey Creek Woods on the following calls: North 79 deg 41 min. 22 sec. East, 100.49 feet; North 79 deg. 43 min. 43 sec. East, 109.04 feet; North 79 deg. 41 min. 12 sec. East, 220 feet; North 79 deg. 45 min. 13 sec. East, 110.16 feet; North 79 deg. 31 min. 19 sec. East 109.27 feet; North 79 deg. 52 min. 27 sec. East 242.07 feet; North 79 deg. 33 min. 15 sec. East, 52.06 feet; North 79 deg. 39 min. 54 sec. East, 210.03 feet to a point in the Western line of Sailview Subdivision; thence with the Western line of Sailview Subdivision of the following calls: South 28 deg. 18 min. 54 sec. East, 29.11 feet; South 27 deg. 51 min. 52 sec. East, 131.04 feet; South 27 deg. 53 min. 33. sec. East, 127.90 feet; South 27 deg. 54 min. 08 sec. East, 285.15 feet; South 27 deg. 50 min. 05 sec. East, 134.91 feet; south 27 deg. 54 min. 09 sec. East, 274.03 feet; South 28 deg. 27 min. 05 sec. East, 201.45 feet to the point of BEGINNING, as shown by survey of Robert G. Campbell & Associates, Inc. dated December 1 1988, bearing File No. 88050.

TRACT 2:

BEGINNING at a point in the Southern right-of-way of Turkey Creek Road said point also being in the Northern right-of-way of the Southern Railway and 2798 feet West of the intersection of the Northern right-of-way of Turkey Creek Road and the Western right-of-way of Sailview Road. Thence with the Northern right-of-way of Southern Railway South 69 deg. 35 min. 02 sec. West, 253.04 feet to a point at the 820 elevation on the following chords: North 15 deg. 58 min. 22 sec. West, 54.03 feet; North 15 deg. 58 min. 22 sec. West, 64.33 feet; North 69 deg. 03 min. 35 sec. West, 151.99 feet; North 79 deg. 59 min. 10 sec. West, 71.59 feet; North 71 deg. 57 min. 33 sec. West, 107.30 feet; North 63 deg. 49 min. 18 sec. West, 87.51 feet; North 63 deg. 21 min. 24 sec. West, 98.58 feet; North 28 deg. 24 min. 16 sec. West, 95.15 feet; North 07 deg. 43 min. 21 sec. East, 102.27 feet; North 09 deg. 53 min. 49 sec. East, 97.32 feet; North 26 deg. 47 min. 46 sec. West, 39.72 feet; North 41 deg. 08 min. 42 sec. West, 158.93 feet; South 89 deg. 36 min. 26 sec. West, 127.65 feet, thence leaving the 820 elevation North 52 deg. 35 min. 39 sec. West, 71.06 feet to a point in the Southern right-of-way of Turkey Creek Road; thence with the southern right-of-way of Turkey Creek Road South 83 deg. 22 min. 44 sec. East, 145.11 feet, thence with a 246.48 radius curve to the right 213.82 feet said curve having a chord bearing of South 58 deg. 31 min. 39 sec. East and a chord distance of 207.17 feet; thence North 56 deg. 19 min. 26 sec. East, 15.00 feet; thence South 33 deg. 40 min. 34 sec. East, 366.73 feet; thence with a 597.96 radius curve to the left 625.78 feet, said curve having a chord bearing of South 63 deg. 40 min. 44 sec. East and a chord distance of 597.48 feet to the point of BEGINNING as shown by survey of Robert G. Campbell & Associates, Inc., dated December 1, 1988, bearing File No. 88050.

BEING a part of the same property conveyed to W.T. Phillips, Sr., Trustee, of Knox County, Tennessee by Warranty Deed dated December 20, 1988 from Robert Jackson Bevins and wife, Priscilla L. Bevins, of Boone County, Missouri, Lillian Bevins Swan and husband, Bill J. Swan of Cabarrus County, North Carolina, Devisees of Elizabeth Jackson Bevins, deceased, of record in Deed Book 1965, page 1025, in the Register's Office for Knox County, Tennessee.

2. Article IX is hereby amended by deleting the first paragraph and replacing it with the

following as a new first paragraph:

Instr:200803310021074
PAGE: 3 OF 4

All lots in the Subdivision and subject to these restrictions shall be known and designated as residential lots unless otherwise noted.

3. All words used herein shall have the same meanings as those words are defined in the Declaration.

4. Except to the extent expressly modified herein, all provisions of the Declaration as previously amended are hereby reaffirmed.

IN WITNESS WHEREOF, Phillips and Jordan, Incorporated has caused this instrument to be executed and its name to be signed by its Vice President and attested to by its Secretary pursuant to the authority of its Board of Directors this 30ᵗʰ day of ____March____, 2000.

PHILLIPS AND JORDAN, INCORPORATED

By: _W. Ted Phillips_

Its: Vice President

ATTEST:

_Connie H. Nichols_
Secretary

STATE OF TENNESSEE )
                   )
COUNTY OF KNOX     )

Instr:200803310021074
PAGE: 4 OF 4

Before me, the undersigned, authority, a Notary Public in and for said County and State, personally appeared W.T. Phillips, Jr., with whom I am personally acquainted, or proved to me on the basis of satisfactory evidence, and who, upon oath, acknowledged himself to be the Vice President of Phillips and Jordan, Incorporated, the within named bargainor, a corporation, and that he as such Vice President being authorized to do so, executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself as Vice President.

Witness my hand and seal at office, this 30ᵗʰ day of ____March____, 2000.

NOTARY
PUBLIC
_Marie Adams_
Notary Public

My Commission expires:

_8/5/2003_

4