

# FARRAGUT BOARD OF MAYOR AND ALDERMEN
# AGENDA
# October 22, 2020

**BMA MEETING**
**7:00 PM**

I. **Roll Call**

II. **Approval of Agenda**

III. **Approval of Minutes**
    A. October 8, 2020.

IV. **Mayor's Report**

V. **Ordinances**

    A. Public Hearing & Second Reading

        1. Ordinance 20-17, an Ordinance to amend the <u>Farragut Municipal Code</u>, Appendix A., Zoning, Chapter 4., Section XXIV.-Special Event Permit, to update the requirements and allow for food trucks for special events sponsored by a homeowner's association

        2. Ordinance 20-18, Ordinance to Rezone the Property at 1013 McFee Road from Agricultural (A) to Open Space Residential Overlay (R-1/OSR). 24.85 Acres (Rackley Engineering, Applicant)

        3. Ordinance 20-20, an ordinance to amend the text of the Comprehensive Land Use Plan Update as it relates to the Mixed-Use Town Center land use descriptions

        4. Ordinance 20-21, an Ordinance Amending the General Fund & Insurance Fund for the Fiscal Year 2020-2021 Budget, Passed By Ordinance 20-07

VI. **Business Items**

    A. Approval of Supplement Request for Additional Design Services from Ross-Fowler, PC at McFee Park Project.
    B. Approval of Lease Agreement with Knox County for Office Space in the Farragut Town Hall

11408 MUNICIPAL CENTER DRIVE | FARRAGUT, TN 37934 | 865.966.7057
WWW.TOWNOFFARRAGUT.ORG

It is the policy of the Town of Farragut not to discriminate on the basis of race, color, national origin, age, sex, or disability pursuant to Title VI of the civil Rights Act of 1964, Public Law 93-112 and 101-336 in its hiring, employment practices and programs. To request accommodations due to disabilities, please contact the ADA Coordinator at jcurry@townoffarragut.org or 865-966-7057 in advance of the meeting.

      C.  Approval of Amendments to the Education Relations Committee Charter

      D.  Approval of Dates for the November and December BMA Meetings

**VII.**    **Town Administrator's Report**

**VIII.**   **Town Attorney's Report**

 **IX.**    **Citizens Forum**

**This meeting can be viewed live on the Farragut YouTube Channel, [www.townoffarragut.org/livestream](http://www.townoffarragut.org/livestream), Charter channel 193 and TDS channel 3. The meeting will be held virtually, authorized by Governor Lee's executive orders regarding the COVID-19 pandemic. Meeting comments, including your name and address, may be emailed to comments@townoffarragut.org and must be received by 12:00pm on October 22 to be included in the record of the meeting.**

<p style="color:red; text-align:center;">**The Board of Mayor and Aldermen welcomes and invites Farragut residents to participate in public meetings.**</p>

At the end of each business meeting, there will be time reserved for public comment under the Citizen Forum agenda item.  If you are interested in speaking, please fill out a blue comment card and turn it in to the Town Recorder or staff member.  This time is set aside specifically for comments on items that are <u>not</u> on the Board of Mayor and Aldermen regular agenda for the meeting.  Each speaker will be given five (5) minutes to speak on his/her topic.

During the regular agenda portion of the meeting there may be an allowance for public comment for each agenda item.  The Mayor may recognize individuals for public comment based on the following guidelines.

1. The Mayor shall maintain and control the meeting to provide a professional and objective environment;
2. Any Farragut resident interested in speaking should fill out a blue comment card stating which agenda item they would like to comment on and turn in to the Town Recorder or a staff member;
3. Speakers shall come to the podium and identify themselves by name and street address;
4. Public comment shall be limited to five (5) minutes per individual. Time for public comment may be amended at the discretion of the Mayor.  Time is not transferable to other speakers;
5. Speakers should strive to avoid redundancy; each speaker should have their own original viewpoint;
6. Comments shall address issues, not individuals or personalities;
7. Comments may support or oppose issues or measures, but the motives of those with differing views shall not be questioned or attacked;
8. Personal attacks and malicious comments shall not be tolerated;
9. An applicant, and/or their representative(s), for an item on the regular agenda shall be afforded the time necessary to present their request and respond to questions.  The five (5) minute limitation shall not apply.  However, the Mayor may ask an applicant to stay on point in order to facilitate the efficiency of the meeting.

Each speaker will be asked if they can agree to abide by the Comment Protocol.  If so, please be prepared to speak when your name is called.

# Board of Mayor and Aldermen
# October 8, 2020 Minutes

The Farragut Board of Mayor & Aldermen met on October 8, 2020 for a workshop to review information about the proposed changes to the McFee Park improvement project.

## Roll Call

Mayor Williams called the meeting to order at 7:00 PM. Roll Call for attendance: Aldermen Burnette, yes; Alderman Meyer, yes; Alderman Pinchok, yes; Alderman Povlin, yes; Mayor Williams, yes; in additional to staff and members of the press. The meeting was held via WebEx Governor Lee's orders and the Knox County Health Department's orders regarding the COVID-19 pandemic.

## Approval of Agenda

Motion was made to approve the agenda with the deletion of the agreement with Fox Den Country Club and the award of bids for Virtue Road Improvements and the addition of Item VI.G. Approval purchase from Wilson County Motors for a 20212-wheel drive ½ ton pick-up truck. Moved by Alderman Povlin, seconded by Alderman Pinchok; voting yes, Alderman Meyer, yes; Alderman Pinchok, yes; Alderman Povlin, yes; Aldermen Burnette, yes; Mayor Williams, yes; no nays; motion passed.

## Approval of Minutes

Motion was made to approve the minutes of September 24, 2020 as presented. Moved by Alderman Povlin, seconded by Alderman Pinchok; voting yes, Alderman Meyer, yes; Alderman Pinchok, yes; Alderman Povlin, yes; Aldermen Burnette, yes; Mayor Williams, yes; no nays; motion passed.

## Mayor's Report

Extra Mile Day Proclamation

## Ordinances
## Public Hearing & Second Reading

**Ordinance 20-19**, an Ordinance Amending the General Fund and State Street Aid Fund for the Fiscal Year 2020-2021 Budget, Passed by Ordinance 20-07

Motion was made to approve Ordinance 20-19 on second and final reading. Moved by Alderman Povlin, seconded by Alderman Pinchok; voting yes, Alderman Pinchok, yes; Alderman Povlin, yes; Aldermen Burnette, yes; Alderman Meyer, yes; Mayor Williams, yes; no nays; motion passed.

## First Reading

**Ordinance 20-17**, an Ordinance to amend the <u>Farragut Municipal Code</u>, Appendix A., Zoning, Chapter 4., Section XXIV.-Special Event Permit, to update the requirements and allow for food trucks for special events sponsored by a homeowner's association

Motion was made to approve Ordinance 20-17 on first reading. Moved by Alderman Povlin, seconded by Alderman Pinchok; voting yes, Alderman Povlin, yes; Aldermen Burnette, yes; Alderman Meyer, yes; Alderman Pinchok, yes; Mayor Williams, yes; no nays; motion passed.

**Ordinance 20-18**, Ordinance to Rezone the Property at 1013 McFee Road from Agricultural (A) to Open Space Residential Overlay (R-1/OSR). 24.85 Acres (Rackley Engineering, Applicant)

Motion was made to approve Ordinance 20-18 on first reading. Moved by Alderman Povlin, seconded by Alderman Pinchok; voting yes, Aldermen Burnette, yes; Alderman Meyer, yes; Alderman Pinchok, yes; Alderman Povlin, yes; Mayor Williams, yes; no nays; motion passed.

**Ordinance 20-20**, an ordinance to amend the text of the Comprehensive Land Use Plan Update as it relates to the Mixed-Use Town Center land use descriptions

Motion was made to approve Ordinance 20-20 on first reading. Moved by Alderman Povlin, seconded by Alderman Pinchok. Allison Myers, Town Recorder, read the following comments into the record:

Thomas Bickford, 543 Colonial Ridge Lane
Pam Zachary, 548 Colonial Ridge
David and Mikki Jacobs, 511 Colonial Ridge Lane
Phil Trewhitt, 11013 Calloway View Drive
Luzzette B. Slough, 11337 Fords Cove Lane
Celesta Lee, 216 Towne Rd
David Niemann, 616 Spring Branch Lane
Marlena Engstrom, 11131 Hatteras Dr
Ben Stolt, 724 Fox Dale Lane
Rosemary Owens, 12714 Jarmann Road
Michael Wilson, 412 Eisenhower Street
Lynne Carty, 244 Geronimo Rd
Ali Cohen, 617 Commodore Lane
Bernard Roche, 412 Ferret Road
Jill Henry, 10733 Farragut Hills Blvd
Carleton and Donna Edmunds, 308 Park Place Boulevard
Gerald Armel, 416 Moser Lane
William Smith, 11524 Ivy Chase Ln
Joy Kasper, 12345 Butternut Circle
Penny Scott, 11157 Hughlan Drive
Victoria Kwasiborski, 701 Hampton Roads Drive
Karin Hierholzer, 208 Woodland Trace Dr
Greg and Missy Bassett, 308 Concord Road
Hal Aikens, 10901 Lookout Point
Gerald Hemmer, 11137 Windward Dr
Julie Dean, 11101 Farragut Hills Blvd
Larry Costigan, 10912 Farragut Hills Blvd
Jack and Christine Goebel, 11104 Crown Pt. Dr.
Lauren Lorusso, 11028 Flotilla Drive
Cindy and Drew Lancaster, 10928 Farragut Hills Blvd
Don Mann, President, Glen Abbey HOA, 518 MacArthur Lane

Robin Taylor, 11033 Flotilla Dr
Hayden Oakley, 11103 Crown Point Dr.
Al Fanjoy, 11136 Crown Point
Jennifer Oakley, 11103 Crown Point Dr.
Richard Remeta, 11033 Farragut Hills Blvd.
Scott Wilkerson, 10816 Farragut Hills
Paul Schleyer, 11114 Crown Point Drive
Jay Ferguson, 10840 Farragut Hills Blvd
Tina Honeycutt San Gil, 437 Ferret Rd
James Remont, 11100 Crown Point Drive
Marci Fraenkel, 11109 Flotilla Drive
Peter William Lorusso, 11028 Flotilla Drive
Rich Crompton, 11118 Farragut Hills Blvd
Mike Mitchell, 716 Brixworth Blvd.
Jim Froula, 11108 Flotilla
Ben and Suzanne Parham, 11008 Calloway View Dr
Marc O'Donnell, 11044 Crosswind Drive
Allan Cameron, 12414 Sparta Lane

Alderman Povlin made the following amendment to the ordinance.
Amend the language of the ordinance to insert in the 5th bullet point, under uses, insert "Mixed-Use" in front of "Town Center Development" and in the 6th bullet, under Uses, insert "Mixed-Use" in front of "Town Center Development". Motion was made by Alderman Povlin, seconded by Alderman Meyer; voting yes, on the amendment, Alderman Meyer, yes; Alderman Pinchok, yes; Alderman Povlin, yes; Aldermen Burnette, yes; Mayor Williams, yes; no nays; motion passed.

Roll-call vote on Ordinance 20-20, as amended; Alderman Meyer, yes; Alderman Pinchok, yes; Alderman Povlin, yes; Aldermen Burnette, yes; Mayor Williams, yes; no nays; motion passed.

**Ordinance 20-21**, an Ordinance Amending the General Fund & Insurance Fund for the Fiscal Year 2020-2021 Budget, Passed by Ordinance 20-07
Motion was made to approve Ordinance 20-21 on first reading. Moved by Alderman Povlin, seconded by Alderman Pinchok; voting yes, Alderman Pinchok, yes; Alderman Povlin, yes; Aldermen Burnette, yes; Alderman Meyer, yes; Mayor Williams, yes; no nays; motion passed.

## Business Items
**Approval of Change Order No. 1 & 2, Contract 2020-12, McFee Park Phase 3.**
Motion was made to approve Change Order No. 1 & 2 in the amount of $15,749. Moved by Alderman Povlin, seconded by Alderman Burnette; voting yes, Alderman Pinchok, yes; Alderman Povlin, yes; Aldermen Burnette, yes; Alderman Meyer, yes; Mayor Williams, yes; no nays; motion passed.

**Approval of Change Order No. 4, Contract 2020-12, McFee Park Phase 3.**
Motion was made to approve Change Order No. 4 in the amount of $40,000. Moved by Alderman Pinchok, seconded by Alderman Burnette; voting yes, Alderman Pinchok, yes;

Alderman Povlin, yes; Aldermen Burnette, yes; Alderman Meyer, yes; Mayor Williams, yes; no nays; motion passed.

**Approval of Change Order No. 3, Contract 2020-12, McFee Park Phase 3.**
   Motion was made to approve Change Order No. 3, approval of Base Bid for the basketball court plus Alternative 1 for the amount of $218,305 and add 45 days for the completion of the change order.  Moved by Alderman Burnette, seconded by Alderman Pinchok; roll call vote; Alderman Meyer, no; Alderman Pinchok, yes; Alderman Povlin, no; Aldermen Burnette, yes; Mayor Williams, yes; no nays; motion passed vote of 3-2.

**Approval of Supplement Request for Additional Design Services from Ross-Fowler, PC at McFee Park Project**.
   Motion was made to defer this agenda item until the next meeting.  Moved by Alderman Pinchok, seconded by Alderman Burnette; roll call vote, Alderman Pinchok, yes; Alderman Povlin, yes; Aldermen Burnette, yes; Alderman Meyer, yes; Mayor Williams, yes; no nays; motion passed.

**Approval of Purchase from Wilson County Motors for a 2021 2-Wheel Drive ½ ton pick-up truck**
   Motion was made to approve the purchase of a 2021 2-wheel drive pick-up truck in the amount of $25,888.  Moved by Alderman Povlin, seconded by Alderman Burnette; roll call vote, Alderman Pinchok, yes; Alderman Povlin, yes; Aldermen Burnette, yes; Alderman Meyer, yes; Mayor Williams, yes; no nays; motion passed.

## Town Administrator's Report

David Smoak, Town Administrator, reported the following:

- There was a great turn-out for the Farragut Fall Festival
- Court Officer, Bill Hudson has retired
- The employee picnic is Friday, October 9 at McFee Park

## Citizens Forum

Rich Crompton, 11118 Farragut Hills Blvd, submitted a comment thanking the Town for cleaning up rundown properties within the Town.

Meeting adjourned at 9:56 PM.

_____
Ron Williams, Mayor


_____
Allison Myers, Town Recorder

---

## REPORT TO THE BOARD OF MAYOR AND ALDERMEN

---

**PREPARED BY:** Mark Shipley, Community Development Director

**SUBJECT:** Ordinance 20-17, an ordinance on second reading to amend the <u>Farragut Municipal Code</u>, Appendix A., Zoning, Chapter 4., Section XXIV. – Special Events Permit, to update the requirements and allow for food trucks for special events sponsored by a homeowner's association

---

**INTRODUCTION AND BACKGROUND:** This item reflects an initial objective of revisiting the existing special events permit requirements to provide for food trucks in residential areas if part of an approved special event sponsored or hosted by a homeowner association (HOA).

Currently, food trucks are only permitted for commercial, office, and not for profit/non-profit entities if part of an approved special event. During the COVID pandemic, more people are staying at home and the thought was that food trucks should be permitted as an option for HOA's, provided a permit and filing fee was secured. This would help to establish a process and parameters for these activities in residential settings.

While addressing this item, staff felt that other language in this section of the Zoning Ordinance should be updated to reflect current practices and the recent changes made to the Town's sign ordinance with regards to signage permitted for temporary events. Included in your packet is a copy of the existing provisions and the proposed provisions. Staff has simplified the sections into "non-residential uses" and "residential uses." The new sign ordinance provisions are now cross referenced in the special events permit section and clarification has been added in relation to the permitting process as it applies to events with food trucks and those that may involve or affect public property.

**RECOMMENDATION:** At their meeting on September 17, the Planning Commission unanimously recommended approval of Ordinance 20-17 with the request that staff re-visit the language addressing the time limit for special events so that it was clear if some distinction would be needed between an event time frame and the time frame when a special events sign could be displayed. Staff reviewed the language in Ordinance 20-17 and concluded that no modifications would be needed.

At their meeting on October 8, the Board of Mayor and Aldermen approved Ordinance 20-17 on first reading. Community Development Director, Mark Shipley, recommends approval of Ordinance 20-17 on second reading.

**PROPOSED MOTION:** To approve Ordinance 20-17 on second reading.

**BOARD ACTION:**

**MOTION BY:**_____ **SECONDED BY:**_____

| VOTE/TOTAL | WILLIAMS | MEYER | PINCHOK | POVLIN | BURNETTE |
|---|---|---|---|---|---|
| YES | _____ | _____ | _____ | _____ | _____ |
| NO | _____ | _____ | _____ | _____ | _____ |
| ABSTAIN | _____ | _____ | _____ | _____ | _____ |

**RESOLUTION PC-20-13**


**FARRAGUT MUNICIPAL PLANNING COMMISSION**


**A RESOLUTION TO AMEND THE TEXT OF THE FARRAGUT ZONING ORDINANCE, ORDINANCE 86-16, AS AMENDED, PURSUANT TO AUTHORITY GRANTED BY SECTION 13-4-201, TENNESSEE CODE ANNOTATED, BY AMENDING THE FARRAGUT MUNICIPAL CODE, APPENDIX A., ZONING, CHAPTER 4., SECTION XXIV. – SPECIAL EVENTS PERMIT, TO REPLACE IT IN ITS ENTIRETY**


**WHEREAS**, the Tennessee Code Annotated, Section 13-4-201et seq, provides that the Municipal Planning Commission shall make and adopt a general plan for the physical development of the municipality; and

**WHEREAS**, the Farragut Municipal Planning Commission has adopted various elements of a zoning plan as an element of the general plan for physical development; and

**WHEREAS**, a public hearing was held on this request on September 17, 2020;

**NOW, THEREFORE, BE IT RESOLVED** that the Farragut Municipal Planning Commission hereby recommends approval to the Farragut Board of Mayor and Aldermen of an ordinance, amending Ordinance 86-16, of the Farragut Zoning Ordinance, by adding Ordinance 20-19.

ADOPTED this 17th day of September 2020.


_____
Rita Holladay, Chairman


_____
Scott Russ, Secretary

| ORDINANCE: | **20-17** |
|---|---|
| **PREPARED BY:** | **Shipley** |
| **REQUESTED BY:** | **Staff** |
| **1ST READING:** | _____ |
| **2ND READING:** | _____ |
| **PUBLISHED IN:** | _____ |
| **DATE:** | _____ |

**AN ORDINANCE TO AMEND THE TEXT OF THE FARRAGUT ZONING ORDINANCE, ORDINANCE 86-16, AS AMENDED, PURSUANT TO AUTHORITY GRANTED BY SECTION 13-4-201, TENNESSEE CODE ANNOTATED, BY AMENDING THE <u>FARRAGUT MUNICIPAL CODE</u>, APPENDIX A., ZONING, CHAPTER 4., SECTION XXIV. – SPECIAL EVENTS PERMIT, TO REPLACE IT IN ITS ENTIRETY**

**WHEREAS,** the Board of Mayor and Aldermen of the Town of Farragut, Tennessee, wishes to amend Chapter 4., Section XXIV. – Special Events Permit, of the Farragut Zoning Ordinance, Ordinance 86-16,

**NOW, THEREFORE, BE IT ORDAINED** by the Board of Mayor and Aldermen of the Town of Farragut, Tennessee, that the Farragut Zoning Ordinance is hereby amended as follows:

**SECTION 1.**

The <u>Farragut Municipal Code</u>, Appendix A, Zoning, Chapter 4, Section XXIV. – Special events permit, is amended by replacing it in its entirety with the following:

Sec. XXIV. - Special events permit.

It is the intent of this section to establish the permitting process and the requirements for special events held by private entities within the Town of Farragut. A special event may include a wide range of activities such as, but not limited to, a grand opening, sidewalk sale, fund raiser, yard sale, vacation bible school, holiday pageant or program, etc.

A. *Non-Residential Uses, including Schools and Churches, and Not-For-Profit/Non-Profit Entities.*

    1. *General Requirements.*

        a. Each individual permanent non-residential use with a valid Certificate of Occupancy is eligible for a special event. In addition, off-site not-for-profit and non-profit entities are eligible for a special event but shall be sponsored by an on-site commercial, office, or service entity.

        b. There shall be a maximum of four special events permits per entity per year.

        c. The duration of each special event shall not exceed ten calendar days.

        d. No special events are permitted on vacant or vacated properties.

    e.   Sales from food trucks are permitted if part of an approved special event and shall be subject to a fee, as provided for in the adopted Town of Farragut Fee Schedule.

    f.   Activities of the special event shall not materially affect the pedestrian or vehicular circulation within the immediate vicinity of the event. The traffic generation of the special event shall not be allowed to create a hazardous condition for traffic in the public rights-of-way.

2.   *Sign Requirements.*

    a.   Sign provisions shall be in accordance with the applicable sections of the Farragut Sign Ordinance.  Special events permit signs shall be considered temporary parcel signs. All signs shall have a white background and signs for commercial uses shall include, on at least 15% of the sign face, the Shop Farragut logo.

    b.   All signs and any supporting posts shall be removed at the end of each approved special event time frame.

3.   *Permitting Process.* A special events permit application and filing fee shall be submitted to and approved by the Town prior to the commencement of the event. The applicant must have an approved permit in hand prior to holding an event.

   All special events permit applications shall include the following information:

    a.   Applicant's name, street address, telephone number, fax number, and e-mail address.

    b.   Name, street address, telephone number, fax number, e-mail address, and signature of individual identified who assumes the responsibility of meeting the conditions of the permit.

    c.   Applicant status (commercial, office, service, not-for-profit, non-profit, etc.).

    d.   Location of event.

    e.   Nature/name of event.

    f.   Date range of event.

    g.   Previous special events permit(s) approved during the calendar year.

    h.   Where a sign is proposed, the application submittal shall be in accordance with the Farragut Sign Ordinance and the applicable provisions of this chapter. Special events permit signs shall be considered temporary parcel signs.

    i.   If having a tent(s), sidewalk sales, food trucks, or any other outdoor activities, a site plan is required to show the locations for such activities. A separate tent permit may be required per fire safety requirements.

    j.   If having a food truck(s), a list and full contact information is required for each of the vendors along with a filing fee for each non-Town based food truck vendor.

    k.   Events on or involving/affecting public property, such as road races, bicycle ride events, concerts, etc., will require additional reviews and information and shall be coordinated with the Town staff. Some events may be subject to approval from the Board of Mayor and Aldermen.

B.   *Residential Uses.*

   1.   *General Requirements.*

      a.   Each homeowner association and individual residence is eligible for a special event.

      b.   There shall be a maximum of five special events permits per homeowner association and a maximum of two per residence per year.

      c.   The duration of each special event shall not exceed three calendar days.

      d.   Special events permits can only be applied for and issued to the property owner of record.

      e.   No special events are permitted on vacant or vacated properties. Open space owned by a homeowner association may be used for a special event provided the land, without modifications, can accommodate the proposed activity.

      f.   Sales from food trucks are permitted if part of an approved special event sponsored or hosted by a homeowner association and shall be subject to a fee, as provided for in the adopted Town of Farragut Fee Schedule, for each non-Town based food truck vendor.

   2.   *Sign Requirements.*

      a.   Sign provisions shall be in accordance with the applicable sections of the Farragut Sign Ordinance. Special events permit signs shall be considered temporary parcel signs.

   3.   *Permitting Process.* A special events permit application and filing fee shall be submitted to and approved by the Town prior to the commencement of the event. The applicant must have an approved permit in hand prior to holding an event.

All special events permit applications shall include the following information:

      a.   Applicant's name, street address, telephone number, fax number, and e-mail address. Where an event is sponsored or hosted by a homeowner association, include the name, street address, telephone number, fax number, e-mail address, and signature of the individual identified who has legal authority and who assumes the responsibility of meeting the conditions of the permit.

      b.   Location of event.

      c.   Nature/name of event.

      d.   Date range of event.

      e.   Previous special events permit(s) approved during the calendar year.

      f.   If part of an event sponsored or hosted by a homeowner association, and having a tent, food truck, or any other outdoor activities, a site plan is required to show

the locations for such activities. A separate tent permit may be required per fire safety requirements.

g. If having a food truck(s), a list and full contact information is required for each of the vendors along with a filing fee, as provided for in the adopted Town of Farragut Fee Schedule, for each non-Town based food truck vendor.

h. Events on or involving/affecting public property, such as road races, street parties, etc., will require additional reviews and information and shall be coordinated with the Town staff. Some events may be subject to approval from the Board of Mayor and Aldermen.

**SECTION 2.**

This ordinance shall take effect from and after its final passage and publication, the public welfare requiring it.

_____
Ron Williams, Mayor

_____
Allison Myers, Town Recorder

Certified to the Farragut Board of Mayor and Aldermen this _____ day of _____, 2020, with approval recommended.

_____
Rita Holladay, Chairman

_____
Scott Russ, Secretary

**FARRAGUT MUNICIPAL PLANNING COMMISSION**

**EXISTING LANGUAGE:**

Sec. XXIV. – Special events permit.

    It is the intent of this section to establish the permitting process and the requirements for special events held by private entities within the Town of Farragut. For a commercial or office entity, a special event may constitute a grand opening, a sidewalk sale, or some other type of activity that is unique to their establishment. For not-for-profit or non-profit entities, a special event may constitute a fund raiser of some sort such as a car wash. For residential uses, a special event may be a neighborhood function on subdivision owned open space or a yard sale or garage sale for an individual residence. For schools and freestanding churches and other places of worship, a special event may be Vacation Bible School, a holiday pageant or program, a child consignment sale, of some other type of activity that is unique to the services offered.

A.   *Commercial, Office and Not-For-Profit/Non-Profit Entities.*

    1.   *General Requirements.*

        a.   Each individual permanent commercial and office entity is eligible for a special event. Within the Regional Commercial District, Retail/Warehousing (C-2-R/W) and in the case of a multi-tenant facility, only the multi-tenant facility is eligible for a special event, not each individual tenant/entity. Off-site not-for-profit and non-profit entities are eligible for a special event, but shall be sponsored by an on-site commercial or office entity.

        b.   There shall be a maximum of four special event permits per entity per year.

        c.   The duration of each special event shall not exceed ten calendar days.

        d.   No special events are permitted on vacant or vacated properties.

        e.   Sales from food trucks are permitted if part of an approved special event and shall be subject to a fee, as provided for in the adopted Town of Farragut Fee Schedule.

        f.   Activities of the special event shall not materially affect the pedestrian or vehicular circulation within the immediate vicinity of the event. The traffic generation of the special event shall not be allowed to create a hazardous condition for traffic in public rights-of-way.

    2.   *Sign Requirements.*

        a.   There shall be a maximum of one sign per event not to exceed 20 square feet. For a two-sided sign, only the area of a single face shall be considered.

        b.   For ground-mounted signs, the maximum sign height shall be six feet.

        c.   Ground-mounted signs shall be set back a minimum of 20 feet from the street edge of pavement as measured from the farthest most protrusion of the sign to the nearest point of the street edge of pavement. Signs shall be set back a minimum of ten feet from all entrance driveways.

        d.   All signs shall be a minimum [of] ten millimeter corrugated plastic. Ground mounted signs shall be affixed to studded T-posts. All signs shall be affixed in such a manner that they do not move in the wind.

        e.   All signs shall have a white background.

        f.   A minimum of 15 percent of the gross sign area shall include the Shop Farragut logo and website address. The sign shall also include the business name.

        g.   Sign letters shall meet the Visual Resources Review Board's adopted legibility requirements.

      h.   No banners, streamers, balloons, flags-on-a-rope, other types of wind activated displays, or any sign prohibited in the Farragut Sign Ordinance is permitted.

      i.   All signs and any associated support posts shall be removed at the end of the special event.

3.   *Permitting Process.* A special events permit application and filing fee shall be submitted to the Town Hall prior to the commencement of the event. The applicant must have an approved permit in hand prior to holding an event.

All special event permit applications shall include the following information:

      a.   Applicant's name, street address, telephone number, fax number, and e-mail address.

      b.   Name, street address, telephone number, fax number, e-mail address, and signature of individual identified who assumes the responsibility of meeting the conditions of the permit.

      c.   Applicant status (commercial, office, not-for-profit, non-profit).

      d.   Location of event.

      e.   Nature/name of event.

      f.   Date range of event.

      g.   Previous special event permits approved during the calendar year.

      h.   If applicable, a drawing of the sign which includes dimensions that show the length and width of the sign, the height and width of all letters and figures, and the overall height of the sign.

      i.   If having tent(s), sidewalk sales, or any other outdoor activities, include a site plan showing locations for such activities. A separate tent permit may be required per fire safety requirements.

B.   *Residential Uses.*

1.   *General Requirements.*

      a.   Each homeowner association and individual residence is eligible for a special event.

      b.   There shall be a maximum of two special event permits per homeowner association and residence per year.

      c.   The duration of each special event shall not exceed three calendar days.

      d.   Special events permits can only be applied for and issued to the property owner of record.

      e.   No special events are permitted on vacant or vacated properties. Open space owned by a homeowner association may be used for a special event provided the land, without modifications, can accommodate the proposed activity.

2.   *Sign Requirements.*

      a.   There shall be a maximum of one sign per event not to exceed six square feet and four feet in height. For a two-sided sign, only the area of a single face shall be considered.

      b.   Ground-mounted signs shall be set back a minimum of 20 feet from the street edge of pavement as measured from the farthest most protrusion of the sign to the nearest point of the street edge of pavement.

      c.   No banners, streamers, balloons, flags-on-a-rope, other types of wind activated displays, or any sign prohibited in the Farragut Sign Ordinance is permitted.

      d.   All signs and any associated support posts shall be removed at the end of the special event.

3. *Permitting Process.* A special events permit application and filing fee shall be submitted to the Town Hall prior to the commencement of the event. The applicant must have an approved permit in hand prior to holding an event.

All special event permit applications shall include the following information:

      a.   Applicant's name, street address, telephone number, fax number, and e-mail address. If a homeowner association, name, street address, telephone number, fax number, e-mail address, and signature of individual identified who has legal authority and who assumes the responsibility of meeting the conditions of the permit.

      b.   Location of event.

      c.   Nature/name of event.

      d.   Date range of event.

      e.   Previous special event permits approved during the calendar year.

      f.   If a homeowner association and having tent(s) or any other outdoor activities, include a site plan showing locations for such activities.

C. *Freestanding Schools, Churches, and Other Places of Worship.*

1. *General Requirements.*

      a.   Each freestanding school, church, and other place of worship is eligible for a special event.

      b.   There shall be a maximum of four special event permits per entity per year.

      c.   The duration of each special event shall not exceed ten calendar days.

      d.   No special events are permitted on vacant or vacated properties.

      e.   Activities of the special event shall not materially affect the pedestrian or vehicular circulation within the immediate vicinity of the event. The traffic generation of the special event shall not be allowed to create a hazardous condition for traffic in public rights-of-way.

2. *Sign Requirements.*

      a.   There shall be a maximum of one sign per event not to exceed 16 square feet. For a two-sided sign, only the area of a single face shall be considered.

      b.   For ground-mounted signs, the maximum sign height shall be six feet.

      c.   Ground-mounted signs shall be set back a minimum of 20 feet from the street edge of pavement as measured from the farthest most protrusion of the sign to the nearest point of the street edge of pavement. Signs shall be set back a minimum of ten feet from all entrance driveways.

      d.   All signs shall be a minimum [of] ten millimeter corrugated plastic. Ground-mounted signs shall be affixed to studded T-posts. All signs shall be affixed in such a manner that they do not move in the wind.

      e.   Sign letters shall meet the Visual Resources Review Board's adopted legibility requirements.

      f.   No banners, streamers, balloons, flags-on-a-rope, other types of wind activated displays, or any sign prohibited in the Farragut Sign Ordinance is permitted.

g.   All signs and any associated support posts shall be removed at the end of the special event.

3.   *Permitting Process.* A special events permit application and filing fee shall be submitted to the Town Hall prior to the commencement of the event. The applicant must have an approved permit in hand prior to holding an event.

All special event permit applications shall include the following information:

a.   Applicant's name, street address, telephone number, fax number, and e-mail address.

b.   Name, street address, telephone number, fax number, e-mail address, and signature of individual identified who assumes the responsibility of meeting the conditions of the permit.

c.   Location of event.

d.   Nature/name of event.

e.   Date range of event.

f.   Previous special event permits approved during the calendar year.

g.   If applicable, a drawing of the sign which includes dimensions that show the length and width of the sign, the height and width of all letters and figures, and the overall height of the sign.

h.   If having tent(s) or any other outdoor activities, include a site plan showing locations for such activities. A separate tent permit may be required per fire safety requirements.

(Ord. No. 86-16, 4-1986; Ord. of 2-2006; Ord. No. 11-22, § 1, 12-8-2011; Ord. No. 17-06, § 1, 4-27-2017)

**PROPOSED LANGUAGE:**

Sec. XXIV. - Special events permit.

It is the intent of this section to establish the permitting process and the requirements for special events held by private entities within the Town of Farragut. A special event may include a wide range of activities such as but not limited to a grand opening, sidewalk sale, fund raiser, yard sale, vacation bible school, holiday pageant or program, etc. ~~For a commercial or office entity, a special event may constitute a grand opening, a sidewalk sale, or some other type of activity that is unique to their establishment. For not-for-profit or non-profit entities, a special event may constitute a fund raiser of some sort such as a car wash. For residential uses, a special event may be a neighborhood function on subdivision owned open space or a yard sale or garage sale for an individual residence. For schools and freestanding churches and other places of worship, a special event may be Vacation Bible School, a holiday pageant or program, a child consignment sale, of some other type of activity that is unique to the services offered.~~

A. ~~Commercial, Office~~ Non-Residential Uses, including Schools and Churches, and Not-For-Profit/Non-Profit Entities.

   1. General Requirements.

      a. Each individual permanent non-residential use with a valid Certificate of Occupancy ~~commercial and office entity is eligible for a special event. Within the Regional Commercial District, Retail/Warehousing (C-2-R/W) and in the case of a multi-tenant facility, only.~~, ~~not each individual tenant/entity.~~ is eligible for a special event. In addition, off-site not-for-profit and non-profit entities are eligible for a special event but shall be sponsored by an on-site commercial, office, or service entity.

      b. There shall be a maximum of four special event permits per entity per year.

      c. The duration of each special event shall not exceed ten calendar days.

      d. No special events are permitted on vacant or vacated properties.

      e. Sales from food trucks are permitted if part of an approved special event and shall be subject to a fee, as provided for in the adopted Town of Farragut Fee Schedule.

      f. Activities of the special event shall not materially affect the pedestrian or vehicular circulation within the immediate vicinity of the event. The traffic generation of the special event shall not be allowed to create a hazardous condition for traffic in public rights-of-way.

   2. Sign Requirements.

      a. Sign provisions shall be in accordance with the applicable sections of the Farragut Sign Ordinance. Special events permit signs shall be considered temporary parcel signs. All signs shall have a white background and signs for commercial uses shall include, on at least 15% of the sign face, the Shop Farragut logo.

      b. All signs and any supporting posts shall be removed at the end of each approved special event time frame.

      ~~There shall be a maximum of one sign per event not to exceed 20 square feet. For a two-sided sign, only the area of a single face shall be considered.~~

      ~~b. For ground-mounted signs, the maximum sign height shall be six feet.~~

      ~~c. Ground-mounted signs shall be set back a minimum of 20 feet from the street edge of pavement as measured from the farthest most protrusion of the sign to the nearest point of the street edge of pavement. Signs shall be set back a minimum of ten feet from all entrance driveways.~~

d. ~~All signs shall be a minimum [of] ten millimeter corrugated plastic. Ground mounted signs shall be affixed to studded T-posts. All signs shall be affixed in such a manner that they do not move in the wind.~~

e. ~~All signs shall have a white background.~~

f. ~~A minimum of 15 percent of the gross sign area shall include the Shop Farragut logo and website address. The sign shall also include the business name.~~

g. ~~Sign letters shall meet the Visual Resources Review Board's adopted legibility requirements.~~

h. ~~No banners, streamers, balloons, flags-on-a-rope, other types of wind activated displays, or any sign prohibited in the Farragut Sign Ordinance is permitted.~~

i. ~~All signs and any associated support posts shall be removed at the end of the special event.~~

3. *Permitting Process.* A special events permit application and filing fee shall be submitted to and approved by the Town ~~to the Town Hall~~ prior to the commencement of the event. The applicant must have an approved permit in hand prior to holding an event.

   All special event permit applications shall include the following information:

   a. Applicant's name, street address, telephone number, fax number, and e-mail address.

   b. Name, street address, telephone number, fax number, e-mail address, and signature of individual identified who assumes the responsibility of meeting the conditions of the permit.

   c. Applicant status (commercial, office, service, not-for-profit, non-profit, etc.).

   d. Location of event.

   e. Nature/name of event.

   f. Date range of event.

   g. Previous special events permit(s) approved during the calendar year.

   h. Where a sign is proposed, the application submittal shall be in accordance with the Farragut Sign Ordinance and the applicable provisions of this chapter. Special events permit signs shall be considered temporary parcel signs. ~~If applicable, a drawing of the sign which includes dimensions that show the length and width of the sign, the height and width of all letters and figures, and the overall height of the sign.~~

   i. If having tent(s), sidewalk sales, food trucks, or any other outdoor activities, a site plan is required to show the ~~include a site plan showing~~ locations for such activities. A separate tent permit may be required per fire safety requirements.

   j. If having a food truck(s), a list and full contact information is required for each of the vendors along with a filing fee for each non-Town based food truck vendor.

   k. Events on or involving/affecting public property, such as road races, bicycle ride events, concerts, etc., will require additional reviews and information and shall be coordinated with the Town staff. Some events may be subject to approval from the Board of Mayor and Aldermen.

B. *Residential Uses.*

   1. *General Requirements.*

      a. Each homeowner association and individual residence is eligible for a special event.

b. There shall be a maximum of ~~two~~ five special event permits per homeowner association and a maximum of two per residence per year.

c. The duration of each special event shall not exceed three calendar days.

d. Special event permits can only be applied for and issued to the property owner of record.

e. No special events are permitted on vacant or vacated properties. Open space owned by a homeowner association may be used for a special event provided the land, without modifications, can accommodate the proposed activity.

f. Sales from food trucks are permitted if part of an approved special event sponsored or hosted by a homeowner association and shall be subject to a fee, as provided for in the adopted Town of Farragut Fee Schedule, for each non-Town based food truck vendor.

2. *Sign Requirements.*

a. Sign provisions shall be in accordance with the applicable sections of the Farragut Sign Ordinance. Special events permit signs shall be considered temporary parcel signs.

~~There shall be a maximum of one sign per event not to exceed six square feet and four feet in height. For a two-sided sign, only the area of a single face shall be considered.~~

b. ~~Ground-mounted signs shall be set back a minimum of 20 feet from the street edge of pavement as measured from the farthest most protrusion of the sign to the nearest point of the street edge of pavement.~~

c. ~~No banners, streamers, balloons, flags-on-a-rope, other types of wind activated displays, or any sign prohibited in the Farragut Sign Ordinance is permitted.~~

d. ~~All signs and any associated support posts shall be removed at the end of the special event.~~

3. *Permitting Process.* A special events permit application and filing fee shall be submitted to and approved by the Town ~~to the Town Hall~~ prior to the commencement of the event. The applicant must have an approved permit in hand prior to holding an event.

All special event permit applications shall include the following information:

a. Applicant's name, street address, telephone number, fax number, and e-mail address. Where an event is sponsored or hosted by a homeowner association, include the name, street address, telephone number, fax number, e-mail address, and signature of the individual identified who has legal authority and who assumes the responsibility of meeting the conditions of the permit.

b. Location of event.

c. Nature/name of event.

d. Date range of event.

e. Previous special events permit(s) approved during the calendar year.

f. If part of an event sponsored or hosted by a homeowner association, and having a tent, food truck, or any other outdoor activities, a site plan is required to show the locations for such activities. A separate tent permit may be required per fire safety requirements.

g. If having a food truck(s), a list and full contact information is required for each of the vendors along with a filing fee, as provided for in the adopted Town of Farragut Fee Schedule, for each non-Town based food truck vendor.

      h.   Events on or involving/affecting public property, such as road races, street parties, etc., will require additional reviews and information and shall be coordinated with the Town staff. Some events may be subject to approval from the Board of Mayor and Aldermen.

C.   ~~Freestanding Schools, Churches, and Other Places of Worship.~~

   1.  ~~General Requirements.~~

      a.  ~~Each freestanding school, church, and other place of worship is eligible for a special event.~~

      b.  ~~There shall be a maximum of four special event permits per entity per year.~~

      c.  ~~The duration of each special event shall not exceed ten calendar days.~~

      d.  ~~No special events are permitted on vacant or vacated properties.~~

      e.  ~~Activities of the special event shall not materially affect the pedestrian or vehicular circulation within the immediate vicinity of the event. The traffic generation of the special event shall not be allowed to create a hazardous condition for traffic in public rights-of-way.~~

   2.  ~~Sign Requirements.~~

      a.  ~~Sign provisions shall be in accordance with the applicable sections of the Farragut Sign Ordinance. Special events permit signs shall be considered temporary parcel signs.~~

      a.  ~~There shall be a maximum of one sign per event not to exceed 16 square feet. For a two-sided sign, only the area of a single face shall be considered.~~

      b.  ~~For ground-mounted signs, the maximum sign height shall be six feet.~~

      c.  ~~Ground-mounted signs shall be set back a minimum of 20 feet from the street edge of pavement as measured from the farthest most protrusion of the sign to the nearest point of the street edge of pavement. Signs shall be set back a minimum of ten feet from all entrance driveways.~~

      d.  ~~All signs shall be a minimum [of] ten millimeter corrugated plastic. Ground-mounted signs shall be affixed to studded T-posts. All signs shall be affixed in such a manner that they do not move in the wind.~~

      e.  ~~Sign letters shall meet the Visual Resources Review Board's adopted legibility requirements.~~

      f.  ~~No banners, streamers, balloons, flags-on-a-rope, other types of wind activated displays, or any sign prohibited in the Farragut Sign Ordinance is permitted.~~

      g.  ~~All signs and any associated support posts shall be removed at the end of the special event.~~

   3.  ~~Permitting Process. A special events permit application and filing fee shall be submitted to the Town Hall prior to the commencement of the event. The applicant must have an approved permit in hand prior to holding an event.~~

      ~~All special event permit applications shall include the following information:~~

      a.  ~~Applicant's name, street address, telephone number, fax number, and e-mail address.~~

      b.  ~~Name, street address, telephone number, fax number, e-mail address, and signature of individual identified who assumes the responsibility of meeting the conditions of the permit.~~

      c.  ~~Location of event.~~

d. ~~Nature/name of event.~~

e. ~~Date range of event.~~

f. ~~Previous special event permits approved during the calendar year.~~

g. ~~Where a sign is proposed, the application submittal shall be in accordance with the Farragut Sign Ordinance. Special events permit signs shall be considered temporary parcel signs. If applicable, a drawing of the sign which includes dimensions that show the length and width of the sign, the height and width of all letters and figures, and the overall height of the sign.~~

h. ~~If having tent(s) or any other outdoor activities, include a site plan showing locations for such activities. A separate tent permit may be required per fire safety requirements.~~

(Ord. No. 86-16, 4-1986; Ord. of 2-2006; Ord. No. 11-22, § 1, 12-8-2011; Ord. No. 17-06, § 1, 4-27-2017)

| |
|---|
| **REPORT TO THE BOARD OF MAYOR AND ALDERMEN** |

**PREPARED BY:**    Mark Shipley, Community Development Director

**SUBJECT:**    Ordinance 20-18, an ordinance on second reading to rezone the property at 1013 McFee Road from Agricultural (A) to Open Space Residential Overlay (R-1/OSR), 24.85 Acres (Rackley Engineering, Applicant)

**INTRODUCTION AND BACKGROUND:**   This item is an amendment to a rezoning request that was approved at the June Planning Commission meeting but subsequently denied by the Board of Mayor and Alderman.  That original request involved rezoning the Gibson farm property that is south of the parcel that is immediately south of McFee Park on the west side of McFee Road from Agricultural (A) to Open Space Mixed Residential Overlay (R-1/OSMR).

**DISCUSSION:**   When presented to the Board, a majority voted against the rezoning because of the stated desire to provide for only single-family detached residential.  The applicant had requested the OSMR, which provides for both detached and attached, similar to the Cottages at Pryse Farms Subdivision, due mainly to the presence of a 100-foot overhead transmission line easement that bisects the property.

The applicant amended their original request and, at the Planning Commission meeting on September 17, requested a rezoning to the Open Space Residential Overlay (R-1/OSR).  The R-1/OSR would provide for the same density as the R-1/OSMR but only permits detached single family residential.  As stated, when the original rezoning was considered, both the OSR and the OSMR Districts would be consistent with the Open Space Cluster Residential land use that is shown for this property on the Future Land Use Map.

**RECOMMENDATION:**    At their meeting on September 17 the Planning Commission unanimously recommended approval of Ordinance 20-18.  The Board of Mayor and Aldermen also unanimously approved Ordinance 20-18 on first reading at their meeting on October 8.  Community Development Director, Mark Shipley, recommends approval of Ordinance 20-18 on second reading.

**PROPOSED MOTION:**  To approve Ordinance 20-18 on second reading.

**BOARD ACTION:**

**MOTION BY:**_____ **SECONDED BY:**_____

| <u>VOTE/TOTAL</u> | <u>WILLIAMS</u> | <u>MEYER</u> | <u>PINCHOK</u> | <u>POVLIN</u> | <u>BURNETTE</u> |
|---|---|---|---|---|---|
| YES | _____ | _____ | _____ | _____ | _____ |
| NO | _____ | _____ | _____ | _____ | _____ |
| ABSTAIN | _____ | _____ | _____ | _____ | _____ |

**RESOLUTION PC-20-12**

## FARRAGUT MUNICIPAL PLANNING COMMISSION

**A RESOLUTION TO APPROVE AN AMENDMENT TO THE FARRAGUT ZONING MAP, ORDINANCE 86-16, TO RECOMMEND THE APPROVAL OF THE REZONING OF PARCEL 019, TAX MAP 162, 1013 MCFEE ROAD, FROM AGRICULTURAL (A) TO OPEN SPACE RESIDENTIAL OVERLAY (R-1/OSR)**

**WHEREAS**, the Tennessee Code Annotated, Section 13-4-201et seq, provides that the Municipal Planning Commission shall make and adopt a general plan for the physical development of the municipality; and

**WHEREAS**, the Farragut Municipal Planning Commission has adopted various elements of a zoning plan as an element of the general plan for physical development; and

**WHEREAS**, a public hearing was held on this request on September 17, 2020;

**NOW, THEREFORE, BE IT RESOLVED** that the Farragut Municipal Planning Commission hereby recommends approval of Ordinance 20-18 to the Farragut Board of Mayor and Aldermen, an ordinance amending the Farragut Zoning Ordinance and Map, Ordinance 86-16, by rezoning the above noted property.

ADOPTED this 17th day of September 2020.

_____

Rita Holladay, Chairman

_____

Scott Russ, Secretary

| | |
|---|---|
| **ORDINANCE:** | **20-18** |
| **PREPARED BY:** | **Shipley** |
| **REQUESTED BY:** | **Town of Farragut** |
| **CERTIFIED BY FMPC:** | **September 17, 2020** |
| **PUBLIC HEARING:** | _____ |
| **PUBLISHED IN:** | _____ |
| **DATE:** | _____ |
| **1ST READING:** | _____ |
| **2ND READING:** | _____ |
| **PUBLISHED IN:** | _____ |
| **DATE:** | _____ |

**AN ORDINANCE AMENDING THE ZONING ORDINANCE OF THE TOWN OF FARRAGUT, TENNESSEE, ORDINANCE 86-16, AS AMENDED, PURSUANT TO SECTION 13-4-201, <u>TENNESSEE CODE ANNOTATED</u>.**

**BE IT ORDAINED** by the Board of Mayor and Aldermen of the Town of Farragut, Tennessee, that the Farragut Zoning Ordinance, Ordinance 86-16, as amended, is hereby amended as follows:

**SECTION 1.**

The Farragut Zoning Ordinance, Ordinance 86-16, as amended, is hereby amended by rezoning Parcel 019, Tax Map 162, said property being located at 1013 McFee Road and including approximately 24.85 acres, from Agricultural (A) to Open Space Residential Overlay (R-1/OSR (See Exhibit A).

**SECTION 2.**

This ordinance shall take effect from and after its final passage and publication, the public welfare requiring it.

_____
Ron Williams, Mayor

_____
Allison Myers, Town Recorder

Certified to the Farragut Board of Mayor and Aldermen this _____ day of _____, 2020, with approval recommended by the Farragut Municipal Planning Commission (FMPC).


_____
Rita Holladay, Chairman


_____
Scott Russ, Secretary

Case 3:23-cv-00402-TRM-JEM   Document 6-12   Filed 11/11/23   Page 26 of 55   PageID #: 737



**farragut**

**Exhibit A**
**Ordinance 20-18**

**Rezone**
**Parcel 19**
**Tax Map 162**
**1013 McFee Road**

From
A (Agricultural)

to

R-1/OSR (Rural Single-Family
Residential/Open Space
Residential Overlay)

**Legend**

| | |
|---|---|
| ▭ | Subject Property |
| ▰▰▰ | Town Limit |
| — | Streets |
| ▢ | Parcels |
| ▢ | A, Agricultural |
| 🟩 | OS-P, Open Space/Park |
| ▢ | R-1, Rural Single-Family Residential |
| 🟨 | R-2, General Single-Family Residential |
| ▢ | R-1/OSR, Open Space Residential Overlay |
| ⬚ | R-1/OSMR, Open Space Mixed Residential Overlay |



1 in = 400 ft

OSR

OSMR

OS-P

R-2

A to R-1/OSR

R-1

A

MCFEE RD

BOYD STATION RD

Document Path: G:\Farragut\Map Documents\2020\Rezoning map McFee Rd Ord 20-18.mxd

| REPORT TO THE BOARD OF MAYOR AND ALDERMEN |
| :---: |

**PREPARED BY:**      Mark Shipley, Community Development Director

**SUBJECT:**      Ordinance 20-20, an ordinance on second reading to amend the text of Comprehensive Land Use Plan Update as it relates to the Mixed-Use Town Center land use descriptions (Town of Farragut, Applicant)

---

**INTRODUCTION AND BACKGROUND:** In response to the Town Center at Biddle Farms concept plan, staff re-convened the Comprehensive Land Use Plan (CLUP) Steering Committee to review in more detail the Mixed-Use Town Center land use description and map provided for in the CLUP.  The Committee met on July 28 and August 19 with a primary objective of evaluating the concept of a Mixed-Use Town Center and what key components it would need to contain.

The Committee generally felt that the key components emphasized in the text was still representative of what this land use designation is intended to represent.  An exception was to have less prescriptions for high density residential and more emphasis on applying the flex density and transition concepts discussed in Chapters Two and Three of the CLUP.  These concepts specifically relate to considering the context and protecting existing neighborhoods from incompatible new development by providing for gradual transitions within a development (with densities increasing or decreasing away from a common boundary).  Specifically, it was recommended that, in the short term, the text portion of the MUTC should be clear with regards to the policy that residential densities of new development should be compatible with existing adjacent densities.

The applicable text related to both transitions and flex density are included in the packet.

**RECOMMENDATION:**  Based on feedback provided by the Steering Committee, staff took the text portion of the Mixed-Use Town Center land use (those pages with existing text are included in the packet) and created new language that was reflected in Ordinance 20-20 and that was presented to the Planning Commission on September 17.

Some key provisions in the proposed text were as follows:

1. Ensure that the inherent components of the Mixed-Use Town Center are still provided for but in more succinctly stated provisions.
2. An emphasis on interconnectedness (the people movement component) and iconic architecture that creates a unique sense of community identity.
3. Reference to form and arrangement of buildings as they relate to the public realm and surrounding plan of development.
4. An emphasis on ensuring that residential types and densities are appropriate to the context and the intent of having different types of residential in different areas.  For example, higher density residential is discussed only as an option to be part of and support a downtown and only in those areas that do not abut existing residential communities.  This helps connect the text of this portion of the Plan with other objectives in the Plan, such as protecting existing neighborhoods from incompatible new development.

**PROPOSED MOTION:**  When Ordinance 20-20 was presented to the Planning Commission on September 17, Commissioners were generally in agreement with staffs' proposed amendments.  Vice Mayor Povlin recommended some modifications to clarify certain aspects of the staffs' proposed amendments.  Those modifications were supported by Commissioners and have been incorporated into Ordinance 20-20 which the Planning Commission unanimously recommended for approval.

As part of the discussion of Ordinance 20-20 at the Board of Mayor and Alderman meeting on October 8, Vice Mayor Povlin requested an amendment to the "Uses" section of the proposed language to insert the words "mixed use" before "town center" in bullet items 5 and 6. With this amendment noted, the Board of Mayor and Alderman unanimously approved Ordinance 20-20 on first reading.

Community Development Director, Mark Shipley, recommends approval of Ordinance 20-20, as amended, on second reading.

**BOARD ACTION:**

**MOTION BY:**_____ **SECONDED BY:**_____

| VOTE/TOTAL | WILLIAMS | MEYER | PINCHOK | POVLIN | BURNETTE |
|---|---|---|---|---|---|
| YES | _____ | _____ | _____ | _____ | _____ |
| NO | _____ | _____ | _____ | _____ | _____ |
| ABSTAIN | _____ | _____ | _____ | _____ | _____ |

| ORDINANCE: | 20-20 |
|---|---|
| PREPARED BY: | Shipley |
| REQUESTED BY: | Staff |
| CERTIFIED BY FMPC: | September 17, 2020 |
| PUBLIC HEARING: | _____ |
| PUBLISHED IN: | _____ |
| DATE: | _____ |
| 1ST READING: | _____ |
| 2ND READING: | _____ |
| PUBLISHED IN: | _____ |
| DATE: | _____ |

## AN ORDINANCE TO AMEND THE TEXT OF THE MIXED-USE TOWN CENTER LAND USE DESCRIPTIONS IN CHAPTER THREE OF THE COMPREHENSIVE LAND USE PLAN UPDATE

**WHEREAS,** the Board of Mayor and Aldermen of the Town of Farragut, Tennessee, through the Farragut Municipal Planning Commission, created and adopted the Farragut Comprehensive Land Use Plan Update and Future Land Use Map; and,

**WHEREAS,** the Tennessee Code Annotated, Section 13-4-201 et seq, provides that the Municipal Planning Commission shall make and adopt a general plan for the physical development of the municipality; and

**WHEREAS,** the Farragut Municipal Planning Commission adopted the Farragut Comprehensive Land Use Plan Update and Future Land Use Map by Resolution PC-12-18 on December 20, 2012; and

**WHEREAS,** the Tennessee Code Annotated, Section 13-4-202 et seq, provides that the Municipal Planning Commission and the chief legislative body may adopt parts of the Comprehensive Land Use Plan Update that correspond generally with one (1) or more of the functional subdivisions of the subject matter of the plan; and

**WHEREAS,** the Board of Mayor and Alderman of the Town of Farragut has adopted the Mixed-Use Town Center Land Use Descriptions Section of the Farragut Comprehensive Land Use Plan Update; and

**WHEREAS,** the Board of Mayor and Alderman of the Town of Farragut may periodically amend the text of the Mixed-Use Town Center Land Use Descriptions Section of the Farragut Comprehensive Land Use Plan Update;

**NOW, THEREFORE, BE IT ORDAINED** by the Board of Mayor and Aldermen of the Town of Farragut that the Farragut Comprehensive Land Use Plan Update, Chapter Three, Future Land Use Plan, Land Use Descriptions Section, Description 1, Mixed-Use Town Center, is hereby amended by replacing it in its entirety with the following:

**SECTION 1.**

I.      Chapter Three/ Future Land Use Plan, Land Use Descriptions Section, 1. Town Center

**Intent**
- Provide for the creation of a unique town center for Farragut with a variety of shops, restaurants, businesses, offices, and residences, in a pedestrian-oriented setting
- Create a sense of community identity with a mixture of well-connected public gathering spaces and entertainment venues framed by an iconic architecture and streetscape
- Provide for a built environment that prioritizes walkability and pedestrian activity but still acknowledges, though to a lesser degree, the role of the automobile in a suburban community

**Uses**
- Though ultimately driven by form, provide for a mix of uses that complement each other, including employment, commercial, retail, services, offices, civic, and residential
- Retail-oriented uses with smaller, more pedestrian scale, footprints with a high degree of ground floor transparency
- A mix of residential types appropriate to the context and surrounding plan of development
- Residential uses with densities that are consistent with the transition and flex density concepts described in the Comprehensive Land Use Plan Update.  Residential density in the Town Center land use area should transition internally so that the density along a common boundary is compatible with the density of the existing abutting residential community
- High density residential should only be permitted as part of a mixed-use town center development plan
- A mixed-use town center development plan which includes high density residential is intended to be located only in the area bound by S. Campbell Station Road, Concord Road, and Kingston Pike

**Character**
- Well-connected internally and externally for bicyclists and pedestrians
- Lively outdoor spaces and storefronts with a high degree of transparency
- Places to gather for a variety of different type of events
- Buildings that engage the street and that are inviting to pedestrians with wide sidewalks, outdoor dining, street trees, benches, planters, and other streetscaping enhancements
- On-street parking and a gridded or semi-gridded street layout system

- Appropriately scaled buildings that reflect an emphasis on form and arrangement that promotes uses consistent with the surrounding context

**SECTION 2.**

This ordinance shall take effect from and after its final passage and publication, the public welfare requiring it.

_____
Ron Williams, Mayor


_____
Allison Myers, Town Recorder


Certified to the Farragut Board of Mayor and Aldermen this _____ day of _____, 2020, with approval recommended.


_____
Rita Holladay, Chairman


_____
Scott Russ, Secretary


**FARRAGUT MUNICIPAL PLANNING COMMISSION**

## Transitions

To protect existing neighborhoods from incompatible new development, and to encourage gradual transitions even within a new development (such as between blocks with different densities), the following guidelines should be applied:

- If a density different from an adjacent property is proposed, the transition should occur within the proposed development (gradually increase or decrease away from the common boundary).

  For example, if a new development with a medium density designation were placed next to an existing low density neighborhood, single-family homes should be placed along the common boundary, with duplexes and townhomes placed further away from the existing neighborhood. This will create a gradual transition of density away from the existing property line and make adjacent developments compatible. However, if the medium density was placed alongside a non-residential use (commercial, office), density could increase to match the intensity of that use. For example a medium density residential development would 'fit' next to office or commercial.

- Gradual density increases are encouraged near mixed use, office and commercial developments, along arterials, and at major intersections, as long as they maintain quality standards to ensure compatibility with adjacent development.



Figure 10: Higher density transitioning gradually to lower density existing development.

Policy: Densities of new development should be compatible with existing adjacent densities.

### Primary implementation tools

**1. Mixed use development**

Add housing variety and create mixed use zoning when implementing strategy 1 and 2.

**2. Flexible density & transitions**

The Town can take advantage of the relatively few remaining large vacant parcels in Farragut, by using the concept of "flexible density" to encourage, within new developments, a greater range of housing types. (See *Chapter 3 Future Land Use Plan for more information*).

Actions

**1. Update zoning to:**

- Create mixed use zoning districts that allow residential uses in commercial, office and some civic uses—with appropriate amenities (see *Chapter 3: Future Land Use Plan for more information*).

- Allow greater range of housing types within a development, including the concept of flexible, or averaging, density

## Strategy 4. Increase Connectivity

Many of Farragut's subdivisions have only a single entrance. Single-entry subdivisions have impacts on the rest of the community in the form of congestion and longer distances to travel. Increased roadway connectivity provides more options for travel and thereby reduces congestion. It also improves the efficiency of school buses and emergency services and provides access when one entry may be blocked. Increasing pathway connectivity encourages walking and biking, which is attractive to both elderly and starter families.

### Primary implementation tools

**1. Connect new development**

Require new development to connect to surrounding development when possible. The plan identifies a number of potential "desire lines" for connecting roads and trails. These should be implemented through the subdivision review process, and condition approval on their construction.

**2. Fix missing links**

Construct "missing links" (pedestrian ways and roadways) in existing developments, where routes are feasible.

**3. Continue to implement the Road Master Plan and the Pedestrian and Bicycle Plan (PBP)**

**······· Potential Roadway**

Figure 11: Potential roadways identify missing links and in some cases desired roadway connections. (See *Chapter 3: Future Land Use Plan for more information*.)

Case 3:23-cv-00402-TRM-JEM   Document 6-12   Filed 11/11/23   Page 33 of 55   PageID #: 744

# How to use the concepts, descriptions, and map

the Comprehensive plan map is a quick visual reference for the whole Comprehensive plan. to better understand the logic, assumptions, and detailed expectations for elements of the map, please refer to the Concepts and descriptions.

as this is the town's first future land use plan, great care was taken to reflect existing conditions as well as citizen's desires, including:

1. building condition and potential for redevelopment
2. environmental constraints such as steep slopes, sinkholes, drainage and flooding. (see figure 20)
3. Zoning (existing use by right)
4. adjacent land use
5. owner intent
6. public desire (creation of a more holistic community)
7. protecting existing uses

the comprehensive plan map is a physical expression of the plans eight key strategies:

1. bringing about a downtown
2. repair aging shopping Centers
3. allow/encourage greater housing Choice
4. increase Connectivity
5. Capitalize on our heritage
6. expand our borders
7. enhance our identity
8. plan for remaining vacant

This chapter has three main parts:

A. *Future Land Use Concepts* (FLUC) are key ideas (such as pedestrian ways, activity hubs, and flex density) that influence how land is utilized. While they are not land uses, they influence how land is used.

B. *Land Use Descriptions* (LUD) translates the key concepts into land use categories that describe the intent, character, applicability, density, and location criteria for each of the 13 land uses.

C. The *Future Land Use Map (FLUM)* and the *Comprehensive Plan Map (CPM)* translate the FLUC and LUD into a physical form, specifying locations throughout the town. The CPM displays land uses plus the land use concepts—in a way that is consistent with the 8 plan strategies. (See *Chapter 2: Eight Key Strategies*.)

## Future Land Use Concepts

Future Land Use Concepts are key ideas that influence land utilization. They are identified on the Comprehensive Plan Map.

### Flex density

To encourage a greater variety of housing types in new neighborhoods, the residential and mixed use descriptions contain a range of density for residential uses. This range encourages diversity in development to avoid monotonous "cookie-cutter" similarity.

The "base" density assumed for the zoning or Planned Unit Development (PUD) designation of a parcel is the lowest density of the designated range. The Town will consider granting zoning with higher density (within the range) relative to demonstrated significant public benefits achieved by the proposed project, such as the provision of pedestrian amenities and/or the preservation of open space. In most areas, the midpoint of the range should be considered an overall average that can be achieved by using a mix of unit types and/or lot sizes within the range. For example, in the medium density residential land use (6-12 units/acre), the average of 9 units per acre could be achieved by mixing single-family homes, duplexes, and even some townhomes.

To ensure that the new development is compatible with existing neighborhoods, gradual transitions between different densities should occur (see *Transitions*).

Policy 4: The base density assumed for the rezoning or Planned Unit Development (PUD) designation of a parcel is the lowest density of the designated range. The Town will consider granting higher density in the range relative to demonstrated significant public benefits to be achieved by the project. Parcels must be large enough to allow transitions or surrounding density should be matched.

### Mixed use

Throughout the planning process, Farragut's citizens expressed a desire to allow (and even encourage) residential uses to be mixed with retail and employment uses in certain areas.

Mixed land use designations (mixed use town center and mixed use neighborhood) should encourage the co-location of residential with a variety of non-residential uses. Commercial land uses and office/light industrial are allowed to include residential uses when there are adequate amenities (extensive pedestrian amenities, the dedication of a large park) to support residents.

With enough people living in and nearby a mixed use center, it will attract a retail mix that reduces its reliance on automobile traffic.

### Activity hubs

The town's Strategic Plan identified a number of activity centers, defined as "Self-contained community where residents enjoy easy access to shopping and restaurants, entertainment, worship and schools within minutes of home."

Case 3:23-cv-00402-TRM-JEM    Document 6-12    Filed 11/11/23    Page 34 of 55    PageID #: 745

# Mixed use town center

## Intent

- Increase Farragut's long-term economic sustainability by diversifying the retail tax base through the creation of a traditional downtown with a variety of shops, restaurants, businesses and residences, in a pedestrian-oriented setting.

- Integrate high-density residential development to help support retail and other commercial uses.

- Consider the creation of an entertainment district that draws people to the area. This could include subsidies for galleries or a resident artist elected each year. This would require a planning process to establish a vision, governance structure, and secure seed money.

- Create public gathering spaces

- Provide extended (evening) hours of operation that will cater to shopping, dining, and entertainment to increase the vitality of the area.

## Uses

- A mix of uses including: employment, commercial, retail, services, civic, and residential.

- Substantial residential use—primarily multi-family residences, but some attached units (townhomes, duplexes) for transitions to adjacent single-family neighborhoods.

- Retail-oriented commercial uses, including "one off" establishments (local businesses) as well as chain establishments that utilize small footprints (such as coffee shops, small footprint versions of big box stores).

- Offices and personal services such as doctor, dentists, bookkeeping, or studios.

- Also encourage:

  - Public service providers (law enforcement, fire protection) and new schools.

  - Entertainment options such as theater or performing arts.

Residential Density

- 8-15 dwelling units per acre.



Mixed Use Neighborhood (6-10 DUs / Acre)

Mixed Use Town Center (8-15 DUs / Acre)

Figure 26: Mixed use land uses (Mixed use town center and Mixed use neighborhood).

Case 3:23-cv-00402-TRM-JEM   Document 6-12   Filed 11/11/23   Page 35 of 55   PageID #: 746





Figure 27: Mixed use town center character.

## Location

- Within a general 1 mile radius of Kingston Pike and Campbell Station Road.

## Character

- Connected building facades, with minor setback variations close to the sidewalk, on both sides of a street, that form a continuous shopping experience, with individual buildings adequately differentiated (to avoid strip appearance).

- High degree of ground floor transparency (glass) for visual interest to pedestrians.

- Comfortable bike and pedestrian connections to surrounding neighborhoods, with adequate bike parking.

- Pedestrian-focused amenities, places for gathering (pocket parks and plazas), wide sidewalks, outdoor dining, street trees, benches, consolidated newspaper racks, planters, and paving.

- Pedestrian scale signage.

- On-street parking to separate pedestrians from traffic and provide convenient parking; Major parking behind buildings, out of sight of pedestrians.

- Gridded or semi-gridded street network - a block pattern that includes a 'figure 8' pedestrian circulation pattern that wraps around corners (as opposed to a single street).

## Other

- Require consistent hours of operation.

(See *Chapter 2: Eight Key Strategies* Strategy 1 Bring About a Downtown and *Chapter 5: Extended Implementation Tools* for more information)

# REPORT TO THE BOARD OF MAYOR AND ALDERMEN

**PREPARED BY:  Allison Myers, Town Recorder/Treasurer**

**SUBJECT:  Second Reading of Ordinance 20-21, Ordinance to Amend the General Fund and the Insurance Fund for the Fiscal Year 2020-2021 budget, passed by Ordinance 20-07**

**INTRODUCTION:**

The purpose of this agenda item is to approve Ordinance 20-21 on first reading to amend the Fiscal Year 2021 General Fund and Insurance Aid Fund Budgets.

**DISCUSSION:**

The **General Fund** will be amended by increasing the appropriated expenditures from $7,316,228 to $7,335,228, an increase of $19,000.

- o **Community Center**
    - ▪ **$19,000**- The increase in the expenditures is for the replacement of the Community Center Water Source Heat Pump.  The Town will be responsible for half of the total replacement cost, $37,265.

**FINANCIAL SECTION:**

  With the $19,000 adjustment, the amended fund balance for the General Fund is $19,692,203.

| **Account Number**: General Fund Budget | | |
|---|---|---|
| **<u>Amended FY2021 Budget</u>** | **<u>Requested Amendment</u>** | **<u>FY2021 Amended Budget</u>** |
| $7,316,228 | $19,000 | $7,335,288 |
| **Approved By**: _Allison Myers_____ | | |

The **Insurance Fund** will be amended by increasing the appropriated expenditures from $0 to $6,000, an increase of $6,000.

- o **Retirement Benefit Contribution**
    - ▪ **$6,000**- Based on the investment income actuarial assumptions, the plan administrator has advised the Town to contribute $6,000 this fiscal year

**FINANCIAL SECTION:**

| **Account Number**: Insurance Fund Budget | | |
|---|---|---|
| **<u>Original FY2021 Budget</u>** | **<u>Requested Amendment</u>** | **<u>FY2021 Amended Budget</u>** |
| $0 | $6,000 | $6,000 |
| **Approved By**: _Allison Myers_____ | | |

**RECOMMENDATION BY:** Allison Myers, Town Recorder/Treasurer, for approval.

**PROPOSED MOTION:** Motion to approve Ordinance 20-21 on second and final reading.

**BOARD ACTION:**

**MOTION BY:**_____ **SECONDED BY:**_____

| VOTE/TOTAL | BURNETTE | MEYER | PINCHOK | POVLIN | WILLIAMS |
|:---:|:---:|:---:|:---:|:---:|:---:|
| YES | _____ | _____ | _____ | _____ | _____ |
| NO | _____ | _____ | _____ | _____ | _____ |
| ABSTAIN | _____ | _____ | _____ | _____ | _____ |

| | |
|---|---|
| ORDINANCE | 20-21 |
| PREPARED BY | Myers |
| 1ST READING | October 8, 2020 |
| 2nd READING | October 22, 2020 |
| PUBLISHED IN | Shopper News Farragut |
| DATE | |

## AN ORDINANCE OF THE TOWN OF FARRAGUT, TENNESSEE
## AMENDING THE FISCAL YEAR 2020-2021 BUDGET, PASSED BY ORDINANCE 20-07

**WHEREAS**, the Town of Farragut adopted the fiscal year 2020-21 budget by passage of Ordinance Number 20-07 on June 11, 2020; and

**WHEREAS**, pursuant to the Tennessee State Constitution, Section 24 of Article II, no public money shall be expended except pursuant to appropriations made by law; and

**WHEREAS**, expenses for the General Fund & Insurance Fund will be greater than budgeted; and

**NOW THEREFORE** BE IT ORDAINED BY THE BOARD OF MAYOR AND ALDERMEN OF THE TOWN OF FARRAGUT, TENNESSEE THAT CHANGES BE MADE TO THE FISCAL YEAR 2019-2020 BUDGET AS FOLLOWS:

SECTION 1. Ordinance 20-07 is hereby amended by:

- The **General Fund** will be amended by increasing the appropriated expenditures from $7,316,228 to $7,335,228, an increase of $19,000.

- The **Insurance Fund** will be amended by increasing the appropriated expenditures from $0 to $6,000 an increase of $6,000.

SECTION 2. The Board of Mayor and Aldermen authorizes the Town Recorder to make said changes in the accounting system.

SECTION 3. This ordinance shall take effect after its final passage and publication, the public welfare requiring it.

_____
Ron Williams, Mayor

_____
Allison Myers, Town Recorder

## REPORT TO THE BOARD OF MAYOR AND ALDERMEN

**PREPARED BY:  Darryl W. Smith, PE**

**SUBJECT:  Approval of Amendment 003, Supplement Request for Additional Design Services, from Ross-Fowler, PC at McFee Park Phase 3 Project**

**INTRODUCTION:**  The purpose of this item is to consider approval of a request for additional payment for design services from Ross-Fowler, PC for work outside the project scope at the Town's McFee Park Phase 3 project.

**BACKGROUND**:  The Board of Mayor and Aldermen originally approved a contract with Ross Fowler, PC for design services of the McFee Park Phase 3 project at a cost of 7.25% of the total construction cost, for a total fee of $442,250.  The contract was amended to expand the scope to include additional alternate amenities and increased the compensation to 7.25% of the new estimated construction cost, for a total fee of $559,124.

### Amendment 003

At the request of the Board, staff asked Ross Fowler to further revise the project plans as follows:

1.  Add an asphalt basketball court.
2.  Add concrete walkway access to the basketball court.
3.  Add planting and irrigation to the areas west and north of the basketball court.
4.  Add four concrete pads for spectator seating between the tennis courts and the sidewalk.
5.  Revise the tennis shade structures as requested.
6.  Revise the fence at the north and south ends of the tennis courts as requested.

These revisions have been presented as Change Order 3 to the construction project scope.  Ross Fowler requests supplemental fee on an hourly basis not to exceed $6,900, and approval will increase the total fee to $566,024.

This request was considered at the last meeting of the Board (October 8), and the Board asked staff to clarify the basis of Ross Fowler's original fee to determine if a lower fee for these design services might be appropriate given not all alternate amenities have been selected for construction.  Staff has determined the current fee of $559,124 is correct as the Architects fee is based on estimated construction costs and explicitly states the fee is not reduced if the Owner opts to not construct any or all of the project, reference Section 11.6.

The clearest and most accurate way to compensate any consultant at this point in development of the project is to base additional fee on the consultant's hourly rates provided in the contract.  For that reason, Section 11.7 of the Town's contract with Ross Fowler specifically states that additional services of the Architect will be billed at the Architect's hourly rates.  In accordance with Section 11.7, staff recommends award of this supplement request as presented.

**FINANCIAL SECTION:**

| Project:  Contract 2020-12, McFee Park Phase 3 | | | |
|---|---|---|---|
| **Project Budget** | **Requested Amount** | **Expenditures to Date** | **Available Amount** |
| $8,650,000 | $6,900.00 | $8,283,215 | $359,885 |

Approved By:_____ *Allison Myers*

**RECOMMENDATION BY:** Darryl Smith, Town Engineer

**PROPOSED MOTION:** Approval of Amendment 003 supplement fee request from Ross Fowler, PC for additional design services for McFee Park Phase 3.

**BOARD ACTION:**

**MOTION BY:**_____ **SECONDED BY:**_____

| VOTE/TOTAL | WILLIAMS | POVLIN | PINCHOK | MEYER | BURNETTE |
|---|---|---|---|---|---|
| YES | _____ | _____ | _____ | _____ | _____ |
| NO | _____ | _____ | _____ | _____ | _____ |
| ABSTAIN | _____ | _____ | _____ | _____ | _____ |

# ▰AIA® Document G802™ – 2017

## Amendment to the Professional Services Agreement

| **PROJECT:** *(name and address)*<br>McFee Park Phase III<br>Farragut, Tennessee | **AGREEMENT INFORMATION:**<br>Date: October 26, 2017 | **AMENDMENT INFORMATION:**<br>Amendment Number: 003<br>Date: September 24, 2020 |
| --- | --- | --- |
| **OWNER:** *(name and address)*<br>Town of Farragut<br>11408 Municipal Center Drive<br>Farragut, TN 37934 | **ARCHITECT:** *(name and address)*<br>Ross/Fowler, P.C.<br>5103 Kingston Pike<br>Suite 105<br>Knoxville, TN 37919 | |

The Owner and Architect amend the Agreement as follows:
Revise the drawings to include the following work requested by the Town:
1. Add an asphalt basketball court. Surfacing, fencing and lighting to match the tennis courts to be shown as adds.
2. Add concrete walkway access to the basketball court
3. Add planting and irrigation to the areas west and north of the basketball court
4. Add four concrete pads for spectator seating between the tennis courts and the sidewalk
5. Revise the tennis shade structures as requested
6. Revise the fence at the north and south ends of the tennis courts as requested

The Architect's compensation and schedule shall be adjusted as follows:

Compensation Adjustment:
The Architect and their consultants will provide the requested drawing changes on an hourly basis in an amount not to exceed $6,900.00

Schedule Adjustment:
The Architect is to proceed as quickly as is consistent with good practice.

---

**SIGNATURES:**

| Ross/Fowler, P.C.<br>**ARCHITECT** *(Firm name)* | Town of Farragut<br>**OWNER** *(Firm name)* |
| --- | --- |
| *(signature)*<br>**SIGNATURE** | **SIGNATURE** |
| Michael F. Fowler, President<br>**PRINTED NAME AND TITLE** | Ron Williams, Mayor<br>**PRINTED NAME AND TITLE** |
| 9.24.20<br>**DATE** | **DATE** |

---

**AIA Document G802™ – 2017.** Copyright © 2000, 2007 and 2017 by The American Institute of Architects. All rights reserved. The "American Institute of Architects," "AIA," the AIA Logo, and "AIA Contract Documents" are registered trademarks and may not be used without permission. This document was produced by AIA software at 10:38:21 ET on 09/24/2020 under Order No.2589102876 which expires on 02/09/2021, is not for resale, is licensed for one-time use only, and may only be used in accordance with the AIA Contract Documents® Terms of Service. To report copyright violations, e-mail copyright@aia.org.
**User Notes:** (3B9ADA55)

1

**§ 11.5** Where compensation for Basic Services is based on a percentage of the Cost of the Work, the compensation for each phase of services shall be as follows:

| | | | | |
|---|---|---|---|---|
| Schematic Design Phase | $66,337.50 | ( | 15 | ) |
| Design Development Phase | $88,450.00 | ( | 20 | %) |
| Construction Documents Phase | $154,787.50 | ( | 35 | %) |
| Bidding or Negotiation Phase | $22,112.50 | ( | 5 | %) |
| Construction Phase | $110,562.50 | ( | 25 | %) |
| Total Basic Compensation | 442,250.00 | ( | 100 | %) |

**§ 11.6** When compensation is based on a percentage of the Cost of the Work and any portions of the Project are deleted or otherwise not constructed, compensation for those portions of the Project shall be payable to the extent services are performed on those portions, in accordance with the schedule set forth in Section 11.5 based on (1) the lowest bona fide bid or negotiated proposal, or (2) if no such bid or proposal is received, the most recent estimate of the Cost of the Work for such portions of the Project. The Architect shall be entitled to compensation in accordance with this Agreement for all services performed whether or not the Construction Phase is commenced.

**§ 11.7** The hourly billing rates for Additional Services of the Architect and the Architect's consultants, if any, are set forth below. The rates shall be adjusted in accordance with the Architect's and Architect's consultants' normal review practices.
*(If applicable, attach an exhibit of hourly billing rates or insert them below.)*

Exhibit C Ross/Fowler Hourly Rates
Exhibit D Johnson Architecture Hourly Rates
Exhibit E Vaughn & Melton Engineers Hourly Rates
Exhibit F Vreeeland Engineers Hourly Rates

**Employee or Category**                          **Rate**

**§ 11.8 COMPENSATION FOR REIMBURSABLE EXPENSES**
**§ 11.8.1** Reimbursable Expenses are in addition to compensation for Basic and Additional Services and include expenses incurred by the Architect and the Architect's consultants directly related to the Project, as follows:
   .1  Transportation and authorized out-of-town travel and subsistence;
   .2  Long distance services, dedicated data and communication services, teleconferences, Project Web sites, and extranets;
   .3  Fees paid for securing approval of authorities having jurisdiction over the Project;
   .4  Printing, reproductions, plots, standard form documents;
   .5  Postage, handling and delivery;
   .6  Expense of overtime work requiring higher than regular rates, if authorized in advance by the Owner;
   .7  Renderings, models, mock-ups, professional photography, and presentation materials requested by the Owner;
   .8  Architect's Consultant's expense of professional liability insurance dedicated exclusively to this Project, or the expense of additional insurance coverage or limits if the Owner requests such insurance in excess of that normally carried by the Architect's consultants;
   .9  All taxes levied on professional services and on reimbursable expenses;
   .10  Site office expenses; and
   .11  Other similar Project-related expenditures.

**§ 11.8.2** For Reimbursable Expenses the compensation shall be the expenses incurred by the Architect and the Architect's consultants plus Fifteen percent ( 15 %) of the expenses incurred.
11.8.3 Reimbursable expenses are estimated to be $10,000.00.

Init.

/

AIA Document B101™ – 2007 (formerly B151™ – 1997). Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 17:19:32 on 10/19/2017 under Order No. 3894102134 which expires on 02/01/2018, and is not for resale.

16



# AIA® Document G802™ – 2017

## Amendment to the Professional Services Agreement

| PROJECT: *(name and address)*<br>McFee Park Phase III<br>Farragut, Tennessee | AGREEMENT INFORMATION:<br>Date: October 26, 2017 | AMENDMENT INFORMATION:<br>Amendment Number: Two<br>Date: March 28, 2019 |
| --- | --- | --- |
| OWNER: *(name and address)*<br>Town of Farragut<br>11408 Municipal Center Drive<br>Farragut, Tennessee 37934 | ARCHITECT: *(name and address)*<br>Ross/Fowler, P.C.<br>5103 Kingston Pike Suite 105<br>Knoxville, Tennessee 37919 | |

The Owner and Architect amend the Agreement as follows:
Expand the scope of work for the McFee Park Phase III project to include a Tennis Complex with four lighted tennis courts, a Tennis Pavilion and Restroom, hitting wall/basketball court combination, associated parking and related improvements as generally illustrated in the attached McFee Park Phase III rendering dated March 28, 2019.

The Architect's compensation and schedule shall be adjusted as follows:

Compensation Adjustment:
The compensation shall be increased in accordance with the contract provisions at 7.25% of the estimated construction cost of Seven million seven hundred twelve thousand fifty-five dollars ($7,712,055.00) which represents a net increase of ($116,874.00). The increase by phase is shown in the revised Article 11.5 (attached).

Schedule Adjustment:
To be determined in consultation with the Town of Farragut.

SIGNATURES:

| Ross/Fowler, P.C.<br>ARCHITECT *(Firm name)* | Town of Farragut<br>OWNER *(Firm name)* |
| --- | --- |
| SIGNATURE | SIGNATURE |
| Michael F. Fowler, President<br>PRINTED NAME AND TITLE | Ron Williams, Mayor<br>PRINTED NAME AND TITLE |
| 3-15-19<br>DATE | 3/29/2019<br>DATE |

AIA Document G802™ – 2017. Copyright © 2000, 2007 and 2017 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 12:16:12 ET on 03/15/2019 under Order No. 9599999992 which expires on 02/07/2020, and is not for resale.
User Notes: (3B9ADA74)

1

AGENDA NUMBER __VI. B.__     MEETING DATE <u>October 22, 2020</u>

## REPORT TO THE BOARD OF MAYOR AND ALDERMEN

**PREPARED BY:** David Smoak, Town Administrator

**SUBJECT:** Approval of Lease Agreement with Knox County for Office Space in the Farragut Town Hall

**INTRODUCTION:** The Knox County Clerk and Assessor's office has a lease agreement with the Town of Farragut for 1,200 s.f. of space on the second floor of Town Hall. The current lease was approved October 8, 2015 and will expire on October 31, 2020.

**DISCUSSION:** The terms of the previous lease were for five years from November 1, 2015 to October 31, 2020. The attached agreement is also for a five-year term, which will extend from November 1, 2020 through October 31, 2025. The rent payment Knox County will pay the Town over the life of the term will increase slightly each year the lease is in effect.

Having Knox County offices in town hall provides convenience to our citizens and consolidates several government services into one building so that citizens can easily identify where to come for assistance.

**FINANCIAL SECTION:**

| Current and New Lease Rates | | |
|---|---|---|
| Year | Current Rate per Month | New Rate per Month |
| 1 | $1,100 | $1,350 |
| 2 | $1,150 | $1,400 |
| 3 | $1,200 | $1,450 |
| 4 | $1,250 | $1,500 |
| 5 | $1,300 | $1,550 |

**RECOMMENDATION BY:** Town Administrator David Smoak for approval.

**PROPOSED MOTION:** To approve the Agreement between the Town of Farragut and Knox County for the lease of office space in the Farragut Town Hall.

**BOARD ACTION:**

MOTION BY:_____ SECONDED BY:_____

| VOTE/TOTAL | MEYER | POVLIN | PINCHOK | BURNETTE | WILLIAMS |
|---|---|---|---|---|---|
| YES | _____ | _____ | _____ | _____ | _____ |
| NO | _____ | _____ | _____ | _____ | _____ |
| ABSTAIN | _____ | _____ | _____ | _____ | _____ |

## AGREEMENT BETWEEN THE TOWN OF FARRAGUT AND KNOX COUNTY
## FOR THE LEASE OF OFFICE SPACE IN THE FARRAGUT TOWN HALL

THIS AGREEMENT, made and entered as of the _____ day of October, ~~2015~~2020, by and between the TOWN OF FARRAGUT, TENNESSEE, hereinafter called "Landlord" and KNOX COUNTY, TENNESSEE, hereinafter called "Tenant."

WHEREAS, Tenant, acting through the offices of the Knox County Clerk and Knox County Trustee, desires to make more convenient and accessible services to Knox County residents utilizing the services of those offices by maintaining the current office space within the Farragut Town Hall, located at 11408 Municipal Center Drive, Farragut, Tennessee, that has been utilized under ~~two~~ three lease agreements entered into November 8, 2007, ~~and~~ October 13, 2011 and October 8, 2015.

WHEREAS, Landlord agrees to permit such location of said offices, all subject to the terms and conditions hereinafter set forth.

NOW, THEREFORE, for and in consideration of the mutual promises, covenants and agreements provided for hereinafter, and as provided for in the Agreement, the Landlord and Tenant hereby agree as follows:

1. Landlord shall lease approximately one thousand two hundred square feet (1,200 s.f.) of space on the second floor of Town Hall, together with ingress and egress thereto, for the sole and exclusive purpose of maintaining satellite offices of the Knox County Clerk and the Knox County Trustee.

2. Tenant shall continue to provide the services carried out in the offices of the Knox County Clerk and Trustee prior to this new lease agreement. The office space shall be available on a twenty-four hour basis, but ingress and egress during other than normal business hours shall be via the outside stairway only. The Tenant shall be responsible for its own internal office security of confidential records and shall be solely responsible for any costs incurred in connection therewith. Nothing contained herein shall limit Landlord in its access to the entirety of the first floor and the remainder of the second floor, including access to and use of the common areas, mechanical room and restrooms at all times. Access to the office space of the Tenant shall be limited to those designated by the Tenant, the general public to the extent appropriate and during the time designated by Tenant, personnel of Landlord during normal business hours, janitorial and maintenance personnel selected, controlled and paid by Tenant, and personnel acting for Landlord in an emergency situation.

3. Landlord shall provide building standard finished space, unfurnished, and shall likewise provide building standard heating, cooling, lighting, electrical connections and electricity. Each party shall be responsible for providing its own janitorial services so as to be able to provide for and control security in the space utilized by each. Landlord will afford access to public facilities and restrooms to employees of Tenant, but public facilities and Restrooms shall only be available to the general public on the first floor. Employees of Landlord shall have access to second floor restrooms.

4. Tenant shall be responsible for all furnishings, equipment and supplies necessary and appropriate to the operation of a full-service, satellite office of the Knox County Clerk, including the operation of a business/marriage license office. Tenant shall be responsible

for its own telephone, computer lines and equipment, any physical requirements for heating, cooling, electrical supply, communications capability in excess of building standard, and shall be responsible for all charges, costs, and expense in connection with the installation and utilization of such, either by separate billing, separate metering, or reimbursement to Landlord as appropriate and applicable.

5.  Tenant shall be solely responsible for the hiring, firing, payment, and any and all related matters pertaining to its employees, including the employees of the Knox County Clerk and the Knox County Trustee, which employees are to be located in the facilities of the Landlord. Any and all insurance, benefits, workmen's compensation insurance, if any, and terms and conditions of employment of personnel of the office of the Knox County Clerk and the Knox County Trustee shall be solely and exclusively within the purview and province of and the duty and responsibility of Tenant and Landlord shall have no responsibility, obligation or liability whatsoever in connection therewith. Tenant shall appoint and furnish to Landlord the names of appointees who shall be responsible as to each separate office located in the leased space to act as liaison with the Town Administrator of Landlord to resolve on-site matters with the Town.

6.  Each Landlord and Tenant shall be responsible for the security of the space in the Farragut Town Hall allocated to each.

7.  The term of this Agreement shall extend from November 1, ~~2015~~ 2020 to and including October 31, ~~2020~~2025. Either party may opt to terminate this Agreement by giving written notice of its desire to terminate to the other party at least ninety (90) days prior to the desired date of termination. Further, Tenant may terminate this lease at any time, without penalty, but no refund of any portion of a monthly payment will be made. Upon termination of the Agreement, Tenant will remove at its sole cost and expense, during normal business hours, all of the furnishings, equipment, supplies and other personal property from the space, leaving the same broom-clean and surrender the space to Landlord in as good condition as received, normal wear and tear excepted.

8.  As rent for the entire term of this lease and for the fulfillment of the conditions contained in this Agreement, Landlord agrees to charge and accept, and Tenant agrees to pay rent in the following amounts, payable on the first of the month for each month, beginning November 1, ~~2015~~2020:

| Year | Rental Per Month |
|---|---|
| 11/1/~~15~~20 — 10/31/~~16~~21 | $1,~~100~~350 |
| 11/1/~~16~~21 — 10/31/~~17~~22 | $1,~~150~~400 |
| 11/1/~~17~~22 — 10/31/~~18~~23 | $1,~~200~~450 |
| 11/1/~~18~~23 — 10/31/~~19~~24 | $1,~~250~~500 |
| 11/1/~~19~~24 — 10/31/~~20~~25 | $1,~~300~~550 |

Landlord shall make no other charge or assess any other fee to Tenant for the occupancy of space by Tenant in the Town Hall building, provided however Tenant shall be responsible for costs of utilities, communications, heating and cooling, lighting, electrical connections and electrical requirements in excess of building standard, and Tenant shall be responsible for costs incident to its own janitorial service. Landlord shall furnish at no expense to Tenant and pay all

2

costs associated with common area maintenance, parking and normal maintenance upkeep and repair, except for items in excess of building standard installed at the expense of Tenant as to which obligations of repair, maintenance and upkeep shall be the sole duty, responsibility and obligation of Tenant.

IN WITNESS WHEREOF, the parties have caused this instrument to be executed as of the day and year first above written.

LANDLORD

By:_____
        Ron Williams, Mayor

TENANT:

By: _____
        Glenn Jacobs, Mayor

3

## REPORT TO THE BOARD OF MAYOR AND ALDERMEN

**PREPARED BY:  Allison Myers, Town Recorder**

**SUBJECT: Approval of proposed amendments to the Farragut Education Relation Committee Charter**

**INTRODUCTION:**  Alderman Povlin has been working with the Education Relations Committee for some time regarding the membership and goals of the committee.  The proposed revisions are outlined on the attached charter.

In summary, the private school representatives will be non-voting members.  Once there is a clearer understanding of the private school's desire to participate, the decision can be made to add them back to being voting members.  By changing the voting status of the private school members, the committee can assemble a quorum.  Also included is the ability for the voting members to designate a representative in the case that a voting member will be absent.

**RECOMMENDATION BY:** Town Recorder/Treasurer Allison Myers for approval

**PROPOSED MOTION:** To approve the proposed amendments to the Farragut Education Relations Committee Charter

**BOARD ACTION:**

**MOTION BY:** _____ **SECONDED BY:** _____

| VOTE/TOTAL | BURNETTE | MEYER | PINCHOK | POVLIN | WILLIAMS |
|---|---|---|---|---|---|
| YES | _____ | _____ | _____ | _____ | _____ |
| NO | _____ | _____ | _____ | _____ | _____ |
| ABSTAIN | _____ | _____ | _____ | _____ | _____ |



# Farragut Education Relations Committee Charter

**ARTICLE I:**        **NAME**

The name of this body shall be the **Farragut Education Relations Committee** (hereafter called the "committee").

**ARTICLE II:**        **PURPOSE**

The purpose of the committee shall be to connect the Town of Farragut with the education institutions and youth in the Farragut community. Additionally, the committee will advise the Town Staff and Board of Mayor and Aldermen on school and student activities and achievements, youth leadership opportunities and community service opportunities, and other issues as directed by the elected body.

**ARTICLE III:**        **COMMITTEE**

**Section I.**        **Number, Terms, Qualifications**

The committee shall consist of eight (8) voting members and be composed of the following: one (1) member of the Board of Mayor and Aldermen appointed annually on or around July 01 by the Board, one (1) voting member shall be a representative of each of the educational institutions within the Town's boundaries including Farragut Primary School, Farragut Intermediate School, Farragut Middle School, Farragut High School, Concord Christian School, St. John Neumann Catholic School and Knoxville Christian School and two (2) non-voting youth members which will be selected and appointed by majority vote of the committee.

- The Town Administrator or his/her designee shall serve as an ex officio nonvoting member of this committee and be responsible for providing Town Staff support to the committee as the Town Administrator deems appropriate.

- Members may hold committee membership until a successor is appointed.

- The non-voting youth members' terms may be for up to two years depending on the youth members' availability. The non-voting youth members may be removed from the committee at any time by majority vote of the committee.

The main intent of this committee is to provide an opportunity for the representatives from the Town and the schools to collaborate and coordinate with each other and to engage with the youth in the Town of Farragut. The members shall be formally involved with the school they represent.

Farragut Education Relations Committee Charter
Original Adoption September 10, 2009 Board Meeting
Revised July 8, 2010; December 10, 2015; November 8, 2018; January 24, 2019; July 25, 2019; July 9, 2020

Case 3:23-cv-00402-TRM-JEM   Document 6-12   Filed 11/11/23   Page 50 of 55   PageID #: 761

ARTICLE III: COMMITTEE

Section I. Number, Terms, Qualifications

The committee shall consist of ~~eight (8)~~ five (5) voting members and five (5) non-voting members. The five (5) voting members shall be composed of the following: one (1) member of the Board of Mayor and Aldermen appointed annually on or around July 01 by the Board, one (1) voting member shall be a representative of each of the public educational institutions within the Town's boundaries including Farragut Primary School, Farragut Intermediate School, Farragut Middle School, and Farragut High School. The five (5) non-voting members shall be composed of representatives from the following educational institutions: Concord Christian School, St. John Neumann Catholic School and Knoxville Christian School and two (2) non-voting youth members which will be selected and appointed by majority vote of the voting members of the committee.

- The Town Administrator or his/her designee shall serve as an ex officio ~~nonvoting~~ non-voting member of this committee and be responsible for providing Town Staff support to the committee as the Town Administrator deems appropriate.
- Members may hold committee membership until a successor is appointed.
- Each voting member may designate, in writing, a representative to serve at meetings during said member's absence.
- The non-voting youth members' terms may be for up to two years depending on the youth members' availability. The non-voting youth members may be removed from the committee at any time by majority vote of the committee.

The main intent of this committee is to provide an opportunity for the representatives from the Town and the schools to collaborate and coordinate with each other and to engage with the youth in the Town of Farragut. The members shall be formally involved with the school they represent.

Section II. Quorum

A quorum shall consist of a majority of the voting ~~committee~~ members or designated representatives present upon calling of the roll at any meeting.

**Section II.      Appointment**

Except for the Town Administrator or his/her designee, and the non-voting youth members, all voting members of the committee shall be approved by majority vote of the governing body.

**Section III.      Committee Responsibilities:  The Committee shall:**

    a.  Be subordinate to the Board of Mayor and Aldermen.

    b.  Annually establish committee goals and objectives for the upcoming year.

    c.  Recommend guidance, policy, and procedures to the governing body related to education and engagement with education institutions and youth in the Farragut community.

    d.  Review and make a recommendation to the Board of Mayor and Aldermen funding related to other committee initiatives.

    e.  Provide a verbal annual report to the Board of Mayor and Aldermen at the end of the calendar year (or as needed).

    f.  Provide recommendations on appointments to the committee to the Board of Mayor and Aldermen.

    g.  Annually review this charter and provide recommendations on changes to the Board of Mayor and Aldermen as appropriate.

**Section IV.      Attendance at Meetings**

Voting members serve at the pleasure of the Board of Mayor and Aldermen and are expected to attend scheduled meetings. The term of any voting member shall expire on the second absence from the scheduled meetings during the fiscal year. Voting members may seek reappointment by the Board of Mayor and Aldermen.

**Section V.      Disclosure of Interests**

A committee member who has any interest in any matter before the committee, that member shall disclose said interest in accordance with the adopted Town Ethics Ordinance. The Chairman shall make the determination on whether that member shall have a vote in said matter.

**ARTICLE IV:          OFFICERS**

**Section I.      Officers**

The officers of the committee shall be a chairman, vice-chairman, and secretary.

2

Farragut Education Relations Committee Charter
Original Adoption September 10, 2009 Board Meeting
Revised July 8, 2010; December 10, 2015; November 8, 2018; January 24, 2019; July 25, 2019; July 9, 2020

Case 3:23-cv-00402-TRM-JEM   Document 6-12   Filed 11/11/23   Page 52 of 55   PageID #: 763

## Section II.    Nomination and Election of Officers

Any voting member may nominate any other voting member of the committee (other than the Town Administrator and Board member) to serve as an officer of the committee. Officers of the committee shall be elected by majority vote of the committee.

## Section III.    Terms of Officers

Officers of the committee shall be for a term of one (1) year commencing on July 1.

## Section IV.    Vacancies

A vacancy in office because of resignation, removal, or otherwise may be filled by majority vote of the committee for the unexpired portion of the term.

## Section V.    Chairman

The Chairman shall prepare agendas in collaboration with the Town Administrator or his/her designee, preside at all meetings of the committee in accordance with Roberts Rules of Order, call special meetings of the committee, have the authority to cancel called meetings of the committee, provide the annual report to the Board of Mayor and Aldermen, report as requested by the Board of Mayor and Aldermen, and appoint a sub-committee of the committee as needed.

## Section VI.    Vice Chairman

In the absence of the Chairman, the Vice Chairman shall perform the duties of the Chairman.

## Section VII.    Secretary

The Secretary shall record and maintain accurate records and minutes of the proceedings of the committee.

## ARTICLE V:        MEETINGS

## Section I.    Regular Meetings

The committee shall meet monthly or as needed at Town Hall with the time and date to be determined by the committee. The committee shall determine and publish on the Town website and Town Hall community board the upcoming year's meeting schedule on or around July 1.

Farragut Education Relations Committee Charter
Original Adoption September 10, 2009 Board Meeting
Revised July 8, 2010; December 10, 2015; November 8, 2018; January 24, 2019; July 25, 2019; July 9, 2020

**Section II.     Quorum**

A quorum shall consist of a majority of the voting committee members present upon calling of the roll at any meeting.

**Section III.     Special Meetings**

Special meetings may be called by the Chairperson or by simple majority of the committee.  Notice of a special meeting may be served by delivering it to the committee members in person, by phone number of record or by email of record, at least 24 hours prior to the special meeting.

**Section IV.     Length of Meetings**

Committee meetings shall not be more than two (2) consecutive hours in duration except that a meeting may be extended by thirty (30) minute intervals by majority vote of the committee.

**Section V.     Procedures**

All meetings shall be held in accordance with Roberts Rules of Order and the Tennessee Open Meetings Act

**ARTICLE VI:          AMENDMENTS**

This Charter may be amended at any time by committee recommendation to the Board of Mayor and Aldermen or at the sole discretion of the Board of Mayor and Aldermen.

Farragut Education Relations Committee Charter
Original Adoption September 10, 2009 Board Meeting
Revised July 8, 2010; December 10, 2015; November 8, 2018; January 24, 2019; July 25, 2019; July 9, 2020

**AGENDA NUMBER** <u>VI.D.</u>     **MEETING DATE** <u>October 22, 2020</u>

## REPORT TO THE BOARD OF MAYOR AND ALDERMEN

**PREPARED BY:  Allison Myers, Town Recorder**

**SUBJECT:** Approval of Dates for the November and December BMA meetings

**BACKGROUND:**

In the past the Board of Mayor and Aldermen have chosen to cancel the second meeting in November due to Thanksgiving and the second meeting in December due to Christmas.

**DISCUSSION:**

The date for the meetings in November are Thursday, November 12 and 26 and the December meetings are Thursday, December 10 and 24.

The second meeting in both November and December will need to be cancelled.  If a need arises, a special meeting may be called.

**PROPOSED MOTION:**

To cancel the meeting of November 26, 2020 and December 24, 2020.

**BOARD ACTION:**

**MOTION BY:** _____ **SECONDED BY:** _____

| VOTE/TOTAL | BURNETTE | MEYER | PINCHOK | POVLIN | WILLIAMS |
|------------|----------|-------|---------|--------|----------|
| YES | _____ | _____ | _____ | _____ | _____ |
| NO | _____ | _____ | _____ | _____ | _____ |
| ABSTAIN | _____ | _____ | _____ | _____ | _____ |