

# FARRAGUT MUNICIPAL PLANNING COMMISSION
## AGENDA

### September 17, 2020

### 7:00 p.m.

This meeting can be viewed live on Charter channel 193 and TDS channel 3." The meeting will be held virtually, authorized by Governor Lee's executive orders regarding the COVID19 pandemic.

Meeting comments may be emailed to comments@townoffarragut.org and must be received by 12:00 p.m. on September 17 to be included in the record of the meeting. Anyone that wishes to provide comments must include their name and address. For questions please e-mail Mark Shipley at mshipley@townoffarragut.org

1. **Approval of agenda**

2. **Approval of minutes – August 20, 2020**

3. **Discussion and public hearing on a re-subdivision plat for Lots 17-19 in Unit 2 of the Split Rail Subdivision, Zoned R-1/OSR (Adam Schmeing Land Surveying, Applicant)**

4. **Discussion and public hearing on a rezoning of the property at 1013 McFee Road from Agricultural (A) to Open Space Residential Overlay (R-1/OSR), 24.85 Acres (Rackley Engineering, Applicant)**

5. **Discussion and public hearing on a preliminary plat for the Brookmere Subdivision, Phase 2, 52 Lots, Zoned R-1/OSR, 87.34 Acres (Lose Design, Applicant)**

6. **Discussion and public hearing on a preliminary plat for Goin Property Subdivision, 11 Lots, Zoned R-1 (current) with R-2 (pending), 7.09 Acres (Rackley Engineering, Applicant)**

7. **Discussion and public hearing on an amendment to the Farragut Municipal Code, Appendix A., Zoning, Chapter 4., Section XXIV. – Special Events Permit, to allow for food trucks for special events sponsored by a homeowner's association (Town of Farragut, Applicant)**

8. **Discussion and public hearing on amendments to the text of Comprehensive Land Use Plan Update as it relates to the Mixed-Use Town Center and use descriptions (Town of Farragut, Applicant)**

It is the policy of the Town of ... Civil Rights Act of 1964, Public Law 93-112 and 101-336 in its hiring, employment practices and programs. To request accommodations due to disabilities, please call 865-966-7057 in advance of the meeting.

9. Discussion on an amendment to the <u>Farragut Municipal Code</u>, Appendix A., Zoning, Chapter 4., Section XXIX, - Grand Opening Special Events Permit, to provide for different sign related provisions (Town of Farragut, Applicant)

10. Discussion and public hearing on Public Comment Protocol for Planning Commission meetings

11. Approval of utilities

12. Citizen Forum

## Planning Commission Meeting
## Public Comment Protocol

The Planning Commission welcomes and invites citizens to participate in public meetings.

At the end of each meeting, there will be time reserved for public comment on matters not on the regular agenda under the Citizen Forum agenda item. If you are interested in providing a comment, please do so through the Town's web site at comments@townoffarragut.org by no later than 12:00 p.m. on the date of the meeting. Please provide your name and address with the comment.

During the regular agenda portion of the meeting there may be an allowance for public comment for each agenda item. The Chairman may recognize public comment based on the following guidelines:

1. The Chairman shall maintain and control the meeting to provide a professional and objective environment conducive to presentation and discussion of the agenda items;
2. Comments shall address issues, not individuals or personalities;
3. Comments may support or oppose particular issues or measures, but the motives of those with differing views shall not be questioned or attacked;
4. Personal attacks and malicious comments shall not be tolerated;
5. An applicant, and/or their representative(s), for an item on the regular agenda shall be afforded the time necessary to present their request and respond to questions.



## MINUTES
## FARRAGUT MUNICIPAL PLANNING COMMISSION

### August 20, 2020

**MEMBERS PRESENT**

Ed St. Clair, Vice-Chairman
Ron Williams, Mayor
Louise Povlin
Scott Russ
Jon Greene
Betty Dick
Noah Myers
Michael Bellamy
Austin Strobel, Youth Representative

**MEMBERS ABSENT**

Rita Holladay, Chairman

**Staff Representatives:** Mark Shipley, Community Development Director
David Smoak, Town Administrator

This meeting was conducted through a remote Webex session due to Governor Lee's orders and the Knox County Health Department's orders regarding the COVID-19 pandemic.

Vice-Chairman St. Clair called the meeting to order at 7 p.m. and provided background on why the meeting was being conducted through Webex and where it may be viewed.

1. **Approval of agenda**
   Staff recommended approval of the agenda as submitted.

   *A motion was made by Mayor Williams to approve the agenda as presented. Motion was seconded by Commissioner Russ and motion passed 8-0 through a roll call vote.*

2. **Approval of minutes – July 16, 2020**
   Staff recommended approval of the minutes as submitted.

   *A motion was made by Mayor Williams to approve the minutes as submitted. Motion was seconded by Commissioner Povlin and motion passed 8-0 through a roll call vote.*

3. **Discussion and public hearing on a site plan for a Dog Park at the Overlook at Campbell Station Road, 820 N. Campbell Station Road, Zoned R-6/OSMFR (PDI Architecture, Applicant)**
   Staff reviewed this item and recommended approval subject to as-built verifications of compliance with stormwater runoff controls and handicap accessibility requirements.

11408 MUNICIPAL CENTER DRIVE | FARRAGUT, TN 37934 | 865.966.7057
WWW.TOWNOFFARRAGUT.ORG

It is the policy of the Town of Farragut not to discriminate on the basis of race, color, national origin, age, sex or disability in employment to
Title VI of the Civil Rights Act of 1964, Public Law 90-412 and 110-325 in its hiring, employment practices and programs. To request
accommodations due to disabilities, please call 865-966-7057 in advance of the meeting.

*After a short discussion, a motion was made by Mayor Williams to approve the site plan subject to the staffs' recommendations. Motion was seconded by Commissioner Povlin and motion passed 8-0 through a roll call vote.*

4. **Discussion and public hearing on a request to rezone the property at 11824 Kingston Pike, Parcel 025, Tax Map 152C, Group J., 1.81 Acres from Office (O-1) to General Single-Family Residential (R-2) (Troy and Evangella Stavros, Applicant)**
Staff reviewed this item and recommended approval of Resolution PC-20-07 which recommends approval of Ordinance 20-12.

*A motion was made by Commissioner Povlin to follow staffs' recommendation. Motion was seconded by Commissioner Myers and motion passed 8-0 through a roll call vote.*

5. **Discussion and public hearing on a request to rezone Parcel 021.03 and a portion of Parcel 021.01, Tax Map 153, from Rural Residential (R-1) to General Single-Family Residential (R-2), 7.35 Acres (Rackley Engineering, Applicant)**
Staff reviewed this item and recommended approval of Resolution PC-20-08 which recommends approval of Ordinance 20-13.

*A motion was made by Mayor Williams to follow staffs' recommendation. Motion was seconded by Commissioner Povlin and motion passed 8-0 through a roll call vote.*

6. **Discussion and public hearing on an amendment to the Farragut Municipal Code, Chapter 22., Article 5. – Driveways and Other Access Ways, Section 22-150, Specifications; permanent access, (2) Access to and from property being developed, as it relates to circular drives on corner lots with more than 350 feet of total street frontage (Town of Farragut, Applicant)**
Staff reviewed this item and recommended approval of Resolution PC-20-09 which recommends approval of Ordinance 20-14.

*A motion was made by Mayor Williams to follow staffs' recommendation. Motion was seconded by Commissioner Povlin and motion passed 8-0 through a roll call vote.*

7. **Discussion and public hearing on an amendment to the Farragut Municipal Code, Chapter 113 – Tree Protection, Section 113-4. – Applicability, as it relates to provisions for utilities (Town of Farragut, Applicant)**
Staff reviewed this item and recommended approval of Resolution PC-20-10 which recommends approval of Ordinance 20-15.

*Commissioners were in general agreement with the proposed language. One modification, however, that was recommended was to exempt the construction of individual single-family detached and two-family dwelling units on individual lots and activities conducted by an owner on his/her lot of residence from coordinating with the Town in terms of tree related matters. Commissioners also asked staff to require coordination on the other listed activities that would be exempt from the general provisions of the Tree Protection Ordinance.*

*A motion was made by Commissioner Povlin to recommend approval of Ordinance 20-15 subject to the recommended modifications being made. Motion was seconded by Mayor Williams and motion passed 8-0 through a roll call vote.*

8. **Discussion and public hearing on a request to amend the Farragut Zoning Ordinance to permit a microbrewery and brewpub (Carlos Cortez, Applicant)**
   Staff reviewed this item and recommended approval of Resolution PC-20-11 which recommends approval of Ordinance 20-16.

   A discussion ensued regarding the definitions of "Microbrewery" and "Brewpub." A modified definition for each was suggested by Commissioner Greene. Commissioners discussed different options.

   *A motion was made by Commissioner Povlin to modify the definition of a "Brewpub" to define it as "An establishment licensed by The State of Tennessee, and meeting all regulatory and permitting requirements of The Town of Farragut, which includes a microbrewery, operating in conjunction with an eating establishment involving the preparation and serving of food to seated patrons in addition to on-premise consumption of beer or malt beverages, including beer produced at the micro-brewery on the same premises." Motion was seconded by Commissioner Myers and motion passed 8-0 through a roll call vote.*

9. **Discussion on using the Planned Commercial Development (PCD) Zoning District for the redevelopment of the old Kroger property – Farragut Town Center at Biddle Farms, Parcels 3.02, 3.03, a portion of 3.18, and a portion of 3.19, Tax Map 143, 45 Acres (SITE Incorporated, Applicant)**
   For discussion purposes only.

10. **Discussion on an amendment to the Farragut Municipal Code, Appendix A., Zoning, Chapter 4., Section XXIV. – Special Events Permit, to allow for food trucks for special events sponsored by a homeowner's association**
    For discussion purposes only.

11. **Discussion on an amendment to the Farragut Municipal Code, Appendix A., Zoning, Chapter 4., Section XXIX, - Grand Opening Special Events Permit, to provide for different sign related provisions (Town of Farragut, Applicant)**
    For discussion purposes only.

12. **Approval of utilities**

13. **Citizen Forum**
    Staff read into the record citizen comments that were submitted for items that were not on the agenda.

    The meeting was adjourned at 10:18 p.m.

_____

Scott Russ, Secretary

# REPORT TO THE FARRAGUT MUNICIPAL PLANNING COMMISSION

**PREPARED BY:** Mark Shipley, Community Development Director

**SUBJECT:** Discussion and public hearing on a re-subdivision plat for Lots 17-19 in Unit 2 of the Split Rail Subdivision, Zoned R-1/OSR (Adam Schmeing Land Surveying, Applicant)

**INTRODUCTION AND BACKGROUND:** This item involves a plat which will provide for the side property lines of Lots 17-19 in the Split Rail Subdivision to be shifted less than a couple of feet to allow for a driveway that was constructed on Lot 17 to be entirely on that lot. Apparently, when construction started on Lot 18, it was found that about one foot of the driveway on Lot 17 was on Lot 18.

**RECOMMENDATION:** This is a simple plat of correction intended to remedy an existing error in the field. The adjusted properties all comply with the requirements of the zoning district and subdivision regulations. Staff recommends approval subject to obtaining the required signatures.



Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 7 of 118   PageID #: 1202

# REPORT TO THE FARRAGUT MUNICIPAL PLANNING COMMISSION

**PREPARED BY:** Mark Shipley, Community Development Director

**SUBJECT:** Discussion and public hearing on a rezoning of the property at 1013 McFee Road from Agricultural (A) to Open Space Residential Overlay (R-1/OSR), 24.85 Acres (Rackley Engineering, Applicant)

**INTRODUCTION AND BACKGROUND:** This item is an amendment to a rezoning request that was approved at the June Planning Commission meeting but subsequently denied by the Board of Mayor and Alderman. That request involved rezoning the Gibson farm property that is south of the parcel that is immediately south of McFee Park on the west side of McFee Road from Agricultural (A) to Open Space Mixed Residential Overlay (R-1/OSMR).

**DISCUSSION:** When presented to the Board, a majority voted against the rezoning because of the stated desire to provide for only single-family detached residential. The applicant had requested the OSMR, which provides for both detached and attached, similar to the Cottages at Pryse Farms Subdivision, due mainly to the presence of a 100-foot overhead transmission line easement that bisects the property.

The applicant has amended their original request and is now asking for a rezoning to the Open Space Residential Overlay (R-1/OSR). The R-1/OSR would provide for the same density as the R-1/OSMR but only permits detached single family residential. As stated in June, both the OSR and the OSMR Districts would be consistent with the Open Space Cluster Residential land use that is shown for this property on the Future Land Use Map.

**RECOMMENDATION:** Staff recommends approval of Resolution PC-20-12 which recommends approval of Ordinance 20-18, an ordinance to rezone the property at 1013 McFee Road from Agricultural (A) to Open Space Residential Overlay (R-1/OSR).

**RESOLUTION PC-20-12**

## FARRAGUT MUNICIPAL PLANNING COMMISSION

## A RESOLUTION TO APPROVE AN AMENDMENT TO THE FARRAGUT ZONING MAP, ORDINANCE 86-16, TO RECOMMEND THE APPROVAL OF THE REZONING OF PARCEL 019, TAX MAP 162, 1013 MCFEE ROAD, FROM AGRICULTURAL (A) TO OPEN SPACE RESIDENTIAL OVERLAY (R-1/OSR)

**WHEREAS**, the <u>Tennessee Code Annotated</u>, Section 13-4-201et seq, provides that the Municipal Planning Commission shall make and adopt a general plan for the physical development of the municipality; and

**WHEREAS**, the Farragut Municipal Planning Commission has adopted various elements of a zoning plan as an element of the general plan for physical development; and

**WHEREAS**, a public hearing was held on this request on September 17, 2020;

**NOW, THEREFORE, BE IT RESOLVED** that the Farragut Municipal Planning Commission hereby recommends approval of Ordinance 20-18 to the Farragut Board of Mayor and Aldermen, an ordinance amending the Farragut Zoning Ordinance and Map, Ordinance 86-16, by rezoning the above noted property.

ADOPTED this 17th day of September 2020.

_____
Rita Holladay, Chairman

_____
Scott Russ, Secretary

| | |
|---|---|
| ORDINANCE: | 20-18 |
| PREPARED BY: | Shipley |
| REQUESTED BY: | Town of Farragut |
| CERTIFIED BY FMPC: | September 17, 2020 |
| PUBLIC HEARING: | _____ |
| PUBLISHED IN: | _____ |
| DATE: | _____ |
| 1ST READING: | _____ |
| 2ND READING: | _____ |
| PUBLISHED IN: | _____ |
| DATE: | _____ |

## AN ORDINANCE AMENDING THE ZONING ORDINANCE OF THE TOWN OF FARRAGUT, TENNESSEE, ORDINANCE 86-16, AS AMENDED, PURSUANT TO SECTION 13-4-201, TENNESSEE CODE ANNOTATED.

**BE IT ORDAINED** by the Board of Mayor and Aldermen of the Town of Farragut, Tennessee, that the Farragut Zoning Ordinance, Ordinance 86-16, as amended, is hereby amended as follows:

### SECTION 1.

The Farragut Zoning Ordinance, Ordinance 86-16, as amended, is hereby amended by rezoning Parcel 019, Tax Map 162, said property being located at 1013 McFee Road and including approximately 24.85 acres, from Agricultural (A) to Open Space Residential Overlay (R-1/OSR (See Exhibit A).

### SECTION 2.

This ordinance shall take effect from and after its final passage and publication, the public welfare requiring it.

_____
Ron Williams, Mayor

_____
Allison Myers, Town Recorder

Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 10 of 118   PageID #: 1205

Certified to the Farragut Board of Mayor and Aldermen this _____ day of _____, 2020, with approval recommended by the Farragut Municipal Planning Commission (FMPC).


_____
Rita Holladay, Chairman


_____
Scott Russ, Secretary



## farragut

**Exhibit A**
**Ordinance 20-18**

**Rezone**
**Parcel 19**
**Tax Map 162**
**1013 McFee Road**

From
A (Agricultural)

to

R-1/OSR (Rural Single-Family
Residential/Open Space
Residential Overlay)

### Legend

- Subject Property
- Town Limit
- Streets
- Parcels
  - A, Agricultural
  - OS-P, Open Space/Park
  - R-1, Rural Single-Family Residential
  - R-2, General Single-Family Residential
  - R-1/OSR, Open Space Residential Overlay
  - R-1/OSMR, Open Space Mixed Residential Overlay

1 in = 400 ft

A to R-1/OSR

A

R-2

R-1

OSMR

OSR

OS-P

MCFEE RD

BOYD STATION RD

# REPORT TO THE FARRAGUT MUNICIPAL PLANNING COMMISSION

**PREPARED BY:** Mark Shipley, Community Development Director

**SUBJECT:** Discussion and public hearing on a preliminary plat for the Brookmere Subdivision, Phase 2, 52 Lots, Zoned R-1/OSR, 87.34 Acres (Lose Design, Applicant)

**INTRODUCTION AND BACKGROUND:** This item involves a request for approval of a preliminary plat for what was submitted as Phase 3 of the Brookmere Subdivision off Virtue Road. In terms of a preliminary plat, this is Phase 2 and will complete the development of the subdivision infrastructure.

Brookmere Phase 1 was approved on March 15, 2018 and included 90 lots. This phase will create the infrastructure to serve 52 lots for a total of 142 lots in the entire subdivision. This phase will also provide for the secondary access street connecting Brookmere to West Kingsate Road. The north and eastern portion of Phase 2 abuts the Sugarwood Subdivision and the southern portion of Phase 2 abuts the Kingsate Subdivision. A 25-foot undisturbed buffer to be owned by the Brookmere Homeowners Association borders these adjacent subdivisions.

**DISCUSSION:** Similar to Phase 1, the applicant has requested a variance from the Subdivision Regulations to lower the design speed at the intersections to 25 MPH and to lower the design speed of Reverence Run Lane to 25 MPH. These variances and staffs' initial comments were discussed at the staff/developer meeting on September 1.

**RECOMMENDATION:** Staff will make a recommendation at the meeting based on whether the initial staff comments have been addressed. Separate action will be needed for the requested variances. Staff has included the revised plan set in the packet file.



September 8, 2020

Mark Shipley
Community Development Director
11408 Municipal Center Dr.
Farragut, TN 37934

Re: Staff Comments on the Preliminary Plat for Brookmere Phase 3, Parcel 044, Tax
Map 152, 430 Virtue Road

Dear Mr. Shipley,

Thank you for your comments regarding the Brookmere Phase 3 Preliminary Plat.
Please find attached to this digital submittal the revised plans and attachments.
Additionally, each comment agreed upon is addressed below in **bold**.

1)    Cover sheet indicates that there are 52 lots. - **This has been corrected on the plat.**

2)    Doesn't match cover sheet. - **The open space has been updated to match the cover.**

3)    This is to be a public street so the reference should indicate that. – **The callout has been changes to it a public street access to Kingsgate.**

4)    No tree removal is permitted in the 25 foot buffer. Please adjust the plans accordingly. – **Per our discussion in the preliminary meeting the line shown on the EPSC plan was the 50' setback line. We are not showing any trees to be removed in the 25' buffer.**

5)    Please show on the layout sheets where the street lights are proposed. – **Light callouts have been added.**

6)    No grading or any disturbance is permitted in tree covered portions of the 25 foot buffer area. – **There are minimal grading encroachments into the 25' buffer and these occur in areas where there are no trees per the tree survey.**

7)    Please include a cross section for the connector road. It mush be constructed to local street standards since it will be a public street. – **The cross section has been included on C401.**

LOSE DESIGN  |  9724 KINGSTON PIKE, SUITE 1404  KNOXVILLE, TN 37922  |  865.409.1424



8) Fire comment regarding sprinklers. – **Disregarded per preliminary meeting discussion.**

9) Please submit Drainage Fee of $1600 – **The fee will be submitted by Homestead Land Holdings**

10) Erosion Control LOC will be based upon area of disturbance. Please indicate area. – **The overall site LOC has been shown on the EPSC and Grading plans.**

11) Are gas, electric, telephone and cable plans included? – **The preliminary utility plan from LCUB has been included as an attachment to this response letter.**

12) Are all pipes Class III RCP? - **Yes**

13) Inlet protection should remain through EPSC Phase 3. – **Inlet protection has been shown on Phase 3 EPSC.**

14) Provide 12"x18" fire lane signs on both sides of roads less than 26' as described in 2018 IFC d103.6. This included Boyd Chase Blvd, connector Road and Cul-de-sac access. – **Road widths were approved per concept plan and signage was not required at that time.**

Thank you again for your assistance. Please call me if you have any questions.

Sincerely,

Matt Shearon, PE
Civil Engineer / Project Manager



NOTES:

1. ANY INSTALLATION OR ALTERATION OF THE OVERHEAD ELECTRICAL INFRASTRUCTURE TO BE PERFORMED BY LCUB.

2. VAULTS AND TRANSFORMER PADS ARE NOT TO SCALE.

3. ALL PRIMARY CONDUIT IS 6IN2 45 PVC 2" UNLESS OTHERWISE NOTED.

4. ANY PRIMARY CONDUIT INSTALLED LESS THAN 42" BELOW GRADE MUST BE ENCASED IN CONCRETE.

5. ALL TRANSFORMER/IR LOCATIONS SHALL MEET STATE AND LOCAL CODES.

6. UNDERGROUND SERVICE BETWEEN TF AND TF AND AGAIN BETWEEN TF AND TF SHALL CROSS OVER A COLONIAL GAS PIPELINE.

## LEGEND

| | |
|---|---|
| - - ● - - | NUMBER OF CONDUITS |
| - - - - - - | URD PRIMARY |
| - - - - - - | URD SECONDARY |
| ——— | INSTALL |
| ——— | REMOVE |
| ——— | EXISTING TO REMAIN |
| BAC | BREAK ALL CONDUITS |
| BBC | BREAK BOTH CONDUITS |

## LCUB

7608 Creekwood Park Blvd
P.O. Box 149
Lenoir City, TN 37772
Office (865) 687-2262
www.LCUB.com

| REV NO. | DATE | REV BY | DESCRIPTION |
|---|---|---|---|
| | | | |
| | | | |

**BROOKMERE PHASE 3**

**430 VIRTUE ROAD**

**PRELIMINARY UNDERGROUND ELECTRIC DESIGN**

| Designed By: | A. MCDANIEL | Date: | 10/28/20 |
|---|---|---|---|
| Drawn By: | A. MCDANIEL | Scale: | 1"=100' |
| Approved By: | | Job Order #: | 15019/ |
| Page Number: | Page 1 of 1 | | |

NOT FOR CONSTRUCTION

Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 17 of 118   PageID #: 1212

# CONSTRUCTION DOCUMENTS

# BROOKMERE

## PHASE 3

PREPARED FOR:
HOMESTEAD LAND HOLDINGS, LLC

## OWNER/DEVELOPER

HOMESTEAD LAND HOLDINGS, LLC
122 PERIMETER PARK ROAD
KNOXVILLE, TN 37922
(865) 966-8700
CONTACT: BOB MOHNEY, PRESIDENT

## DESIGNER

LOSE & ASSOCIATES, INC
LANDSCAPE ARCHITECTURE/ARCHITECTURE/CIVIL
ENGINEERING/PLANNING

9724 KINGSTON PIKE, SUITE 1404
KNOXVILLE, TENNESSEE 37922
PHONE: 865-409-1424
CONTACT: MATT SHEARON, P.E.

## CONSULTANTS

SURVEYOR:
LYNCH SURVEYS, LLC
4405 COSTER ROAD
KNOXVILLE, TN 37912
(865) 584-2630

## SITE DATA

SITE ADDRESS: 430 VIRTUE RD,
KNOXVILLE, TN 37934
COUNTY: KNOX COUNTY
CITY / TOWNSHIP: TOWN OF FARRAGUT
TAX MAP / PARCEL ID: 152.044
ZONING: R-1, OSR
SITE ACREAGE: 87.34 AC
DISTURBED ACREAGE (PHASE 3): 15.6 AC
OPEN SPACE REQUIRED: 30.57 AC (35.00%)
OPEN SPACE PROVIDED: 33.01 AC (37.79%)
LOT COUNT (PHASE 3): 52

## LOCATION MAP



## ENVIRONMENTAL

1. THERE SHALL BE NO CLEARING, GRADING, GRUBBING, CONSTRUCTION, OR DISTURBANCE OF SOIL AND/OR NATURAL VEGETATION WITHIN THE AQUATIC BUFFER EXCEPT AS PERMITTED BY THE TOWN OF FARRAGUT.
2. CONTRACTORS SHALL NOT WORK WITHIN BUFFERS OF STATE AND/OR FEDERALLY JURISDICTIONAL WATERS WITHOUT ALL APPLICABLE TDEC, ACOE, AND LOCAL GOVERNMENT PERMITS.

## SHEET INDEX

| Sheet Number | Sheet Title |
| --- | --- |
| 1 OF 46 | C0.00 - COVER SHEET |
| 2 OF 46 | C0.01 - GENERAL NOTES |
| 3 OF 46 | PRELIMINARY PLAT |
| 4 OF 46 | PRELIMINARY PLAT |
| 5 OF 46 | PRELIMINARY PLAT |
| 6 OF 46 | PRELIMINARY PLAT |
| 7 OF 46 | PRELIMINARY PLAT |
| 8 OF 46 | C1.00 - SITE PLAN KEY |
| 9 OF 46 | C1.04 - SITE LAYOUT |
| 10 OF 46 | C1.05 - SITE LAYOUT |
| 11 OF 46 | C2.00 - GRADING AND DRAINAGE PLAN KEY |
| 12 OF 46 | C2.04 - GRADING AND DRAINAGE PLAN |
| 13 OF 46 | C2.05 - GRADING AND DRAINAGE PLAN |
| 14 OF 46 | C2.15 - EPSC PLAN KEY |
| 15 OF 46 | C2.19 - EPSC PHASE I |
| 16 OF 46 | C2.20 - EPSC PHASE I |
| 17 OF 46 | C2.25 - EPSC PHASE II |
| 18 OF 46 | C2.26 - EPSC PHASE II |
| 19 OF 46 | C2.34 - EPSC PHASE III |
| 20 OF 46 | C2.35 - EPSC PHASE III |
| 21 OF 46 | C2.90 - EPSC CHART |
| 22 OF 46 | C2.91 - EPSC AND DRAINAGE DETAILS |
| 23 OF 46 | C2.92 - EPSC AND DRAINAGE DETAILS |
| 24 OF 46 | C2.93 - EPSC AND DRAINAGE DETAILS |
| 25 OF 46 | C2.94 - EPSC AND DRAINAGE DETAILS |
| 26 OF 46 | C3.00 - ROADWAY PROFILE KEY SHEET |
| 27 OF 46 | C3.04 - ROADWAY PLAN AND PROFILE SHEET |
| 28 OF 46 | C3.05 - ROADWAY PLAN AND PROFILE SHEET |
| 29 OF 46 | C3.06 - ROADWAY PLAN AND PROFILE SHEET |
| 30 OF 46 | C3.07 - ROADWAY PLAN AND PROFILE SHEET |
| 31 OF 46 | C3.08 - ROADWAY PLAN AND PROFILE SHEET |
| 32 OF 46 | C4.00 - SITE DETAILS |
| 33 OF 46 | C4.01 - SITE DETAILS |
| 34 OF 46 | C5.00 - OVERALL UTILITY LAYOUT |
| 35 OF 46 | C5.01 - SEWER LINE 1 |
| 36 OF 46 | C5.02 - SEWER LINE 1 & 2 |
| 37 OF 46 | C5.03 - FORCEMAIN 1 & 2 |
| 38 OF 46 | C5.10 - OVERALL WATER LAYOUT |
| 39 OF 46 | C5.11 - WATER LAYOUT |
| 40 OF 46 | C6.71 - WATER LAYOUT |
| 41 OF 46 | C5.72 - WATER LAYOUT |
| 42 OF 46 | C5.73 - WATER LAYOUT |
| 43 OF 46 | L2.01 - TREE PRESERVATION PLAN KEY |
| 44 OF 46 | L2.01 - TREE PRESERVATION PLAN |
| 45 OF 46 | L2.02 - TREE PRESERVATION PLAN |
| 46 OF 46 | L2.03 - TREE PRESERVATION PLAN |

TENNESSEE

HOMESTEAD LAND HOLDINGS, LLC
TOWN OF FARRAGUT
BROOKMERE
PHASE 3

C0.00 - COVER SHEET

1 OF 46



Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 18 of 118   PageID #: 1213





Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 20 of 118   PageID #: 1215



LOCATION MAP – NTS

BROOKMERE PHASE 3
CLT: 152 – 044
Knoxville, Tennessee
District FW, Knox County, Tennessee

HomeStead Land Holdings
122 Perimeter Park Rd
Knoxville, Tennessee 37922
Phone 865-690-3200

LYNCH SURVEYS LLC
SUBDIVISIONS | AS-BUILTS | SITE DESIGN
COSTER RD. KNOXVILLE, TENN. 37912
WWW.LYNCHSURVEY.COM

GRAPHIC SCALE

JUSTICE VALLEY ST
REVERENCE RUN LN
SANDY RUN RD



LOCATION MAP – NTS

BROOKMERE PHASE 3
CLT: 152 – 044
Knoxville, Tennessee 37934
District FW, Knox County, Tennessee

HomeStead Land Holdings
122 Perimeter Park Rd
Knoxville, Tennessee 37922
Phone 865-690-3200

SHEET NO
6 of 46

PROJECT NO
4040-12

LYNCH SURVEYS LLC
SUBDIVISIONS | AS-BUILTS | SITE DESIGN
4425 COSTER RD, KNOXVILLE, TENN. 37912
865-584-3430  FAX 865-584-1280  WWW.LYNCHSURVEY.COM



TOTAL AREA = 87.70 ACRES

430 Virtue Road & Lot 23 Kingsgate
CLT: 152 — 044
Knoxville, Tennessee 37934
District PW, Knox County, Tennessee

HomeStead Land Holdings
122 Perimeter Park Rd
Knoxville, Tennessee 37922
Phone 865—680—3200

LYNCH SURVEYS LLC
SUBDIVISIONS | AS-BUILTS | SITE DESIGN
4438 COSTER RD. KNOXVILLE, TENN. 37912
865-524-2430  FAX: 865-584-2651  WWW.LYNCHSURVEY.COM

SHEET NO.
7 OF 46
PROJECT NO.
4040



Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 24 of 118   PageID #: 1219







Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 27 of 118   PageID #: 1222



TENNESSEE

HOMESTEAD LAND HOLDINGS, LLC

TOWN OF FARRAGUT

BROOKMERE
PHASE 3

C2.04 - GRADING AND
DRAINAGE PLAN

12 OF 46

SCALE 1" = 50'

ALL SLOPES TO BE
2.5:1 OR FLATTER

SEE SHEET C2.50 FOR
STORM PIPE CHART



Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 29 of 118   PageID #: 1224





Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 31 of 118   PageID #: 1226





Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 33 of 118   PageID #: 1228





Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 35 of 118   PageID #: 1230



TENNESSEE
TOWN OF FARRAGUT
HOMESTEAD LAND HOLDINGS, LLC

BROOKMERE
PHASE 3

C130 - PIPE CHART

21 OF 46

**STRUCTURE TABLE**

| STRUCTURE NAME | DETAIL | PIPES IN | PIPES OUT | STRUCTURE TYPE |
|---|---|---|---|---|
| M1 | TC = 983.54 / RIM IN x / RIM OUT x | M1-M2 | | SINGLE INLET |
| M2 | TC = 983.54 / RIM IN x / RIM OUT x | M2-M3 | M1-M2 / M2-M3 | SINGLE INLET |
| M3 | TC = 980.14 / RIM IN x / RIM OUT x | M3-M4 | M3-M4 | AREA DRAIN |
| M4 | TC = 983.54 / RIM IN x / RIM OUT x | M4-M5 | M3-M4 | SINGLE INLET |
| M5 | TC = 983.11 / RIM IN x / RIM OUT x | M5-M6 | M4-M5 / M5-M6 | SINGLE INLET |
| M6 | TC = 980.48 / RIM IN x / RIM OUT x | M6-N7 | M5-M6 | AREA DRAIN |
| N2 | TC = 983.54 / RIM IN x / RIM OUT SK25 | N2-N3 | N1-N2 | SINGLE INLET |
| N3 | TC = 980.98 / RIM IN x / RIM OUT x | N3-N4 | N2-N3 | SINGLE INLET |

**STRUCTURE TABLE**

| STRUCTURE NAME | DETAIL | PIPES IN | PIPES OUT | STRUCTURE TYPE |
|---|---|---|---|---|
| C7 | TC = 987.64 / RIM IN x / RIM OUT x | SK-C7 | C7-C9 | BRIDGE INLET |
| C9 | TC = 978.54 / RIM IN x / RIM OUT x | N2-N3 | C9-N2 | SINGLE INLET |
| J1 | TC = 976.94 / RIM IN x / RIM OUT x | J1-J2 | J1-J2 | TRIPLE INLET |
| J2 | TC = 984.54 / RIM IN x / RIM OUT x | J2-J4 | J1-J2 / J2-J4 | TRIPLE INLET |
| J3 | TC = 984.75 / RIM IN x / RIM OUT x | J3-J4 | J3-J4 | SINGLE INLET |
| J4 | TC = 984.05 / RIM IN x / RIM OUT x | J4-K1 | J2-J4 / J3-J4 | HEADWALL |
| K1 | TC = 987.44 / RIM IN x / RIM OUT x | K1-K2 | K1-K2 | SINGLE INLET |
| K2 | TC = 987.54 / RIM IN x / RIM OUT x | K2-K3 | K1-K2 / K2-K3 | SINGLE INLET |
| K3 | TC = 981.17 / RIM IN x / RIM OUT x | K3-K4 | K2-K3 | SINGLE INLET |
| K4 | TC = 980.14 / RIM IN x / RIM OUT x | K4-K5 | K3-K4 | AREA DRAIN |
| K5 | TC = 982.11 / RIM IN x / RIM OUT x | K5-K6 | K4-K5 / K5-K6 | DOUBLE INLET |
| K6 | TC = 985.14 / RIM IN x / RIM OUT x | K6-K7 | K5-K6 | SINGLE INLET |
| K7 | TC = 987.14 / RIM IN x / RIM OUT x | K7-K8 | K6-K7 | DOUBLE INLET |
| K8 | TC = 980.54 / RIM IN x / RIM OUT x | K8-L1 | K7-K8 | HEADWALL |
| L1 | TC = 978.11 / RIM IN x / RIM OUT x | L1-L2 | L1-L2 | SINGLE INLET |
| L2 | TC = 979.54 / RIM IN x / RIM OUT x | L2-L3 | L1-L2 / L2-L3 | SINGLE INLET |
| L3 | TC = 978.05 / RIM IN x / RIM OUT x | L3-L4 | L2-L3 | AREA DRAIN |
| L4 | TC = 978.44 / RIM IN x / RIM OUT x | L4-L5 | L3-L4 | SINGLE INLET |
| L5 | TC = 979.11 / RIM IN x / RIM OUT x | L5-L6 | L4-L5 | SINGLE INLET |
| L6 | TC = 977.54 / RIM IN x / RIM OUT x | L6-L7 | L5-L6 | SINGLE INLET |
| L7 | TC = 977.27 / RIM IN x / RIM OUT x | L7-J7 | L6-L7 | HEADWALL |

**STORM PIPES**

| PIPE ID | SIZE | LENGTH | SLOPE | INV UP | INV DOWN |
|---|---|---|---|---|---|
| SK-C7 | 18" | 70.05 | 4.30% | 972.05 | 970.10 |
| J1-J2 | 18" | 10.94 | 2.30% | 973.28 | 973.00 |
| J2-J4 | 18" | 9.93% | 8.02% | 975.00 | 972.50 |
| J3-J4 | 18" | 24.28 | 13.27% | 974.00 | 972.00 |
| K1-K2 | 18" | 131.07 | 1.67% | 976.00 | 973.75 |
| K2-K3 | 18" | 64.16 | 7.80% | 974.50 | 972.00 |
| K3-K4 | 18" | 43.36 | 4.62% | 972.00 | 970.00 |
| K4-K5 | 18" | 16.59 | 10.27% | 970.00 | 968.30 |
| K5-K6 | 18" | 24.28 | 13.89% | 969.00 | 968.00 |
| K6-K7 | 24" | 100.05 | 8.87% | 967.00 | 965.00 |
| K7-K8 | 24" | 14.93 | 3.43% | 965.00 | 964.00 |
| L1-L2 | 18" | 142.05 | 3.47% | 969.00 | 967.00 |
| L2-L3 | 18" | 108.42 | 5.80% | 967.00 | 965.00 |
| L3-L4 | 24" | 32.02 | 2.11% | 963.00 | 962.00 |
| L4-L5 | 18" | 119.38 | 3.24% | 962.00 | 960.00 |
| L5-L6 | 18" | 124.62 | 2.74% | 960.00 | 958.00 |
| L6-L7 | 18" | 40.26 | 4.22% | 958.00 | 956.50 |
| L7-J7 | 18" | 129.25 | 1.82% | 956.50 | 954.00 |
| N2-N3 | 18" | 40.97 | 1.82% | 972.00 | 970.10 |



Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 38 of 118   PageID #: 1233



Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 39 of 118   PageID #: 1234



TENNESSEE

HOMESTEAD LAND HOLDINGS, LLC

BROOKMERE
PHASE 3

TOWN OF FARRAGUT

24 OF 46

TENNESSEE

TOWN OF FARRAGUT

HOMESTEAD LAND HOLDINGS, LLC

BROOKMERE
PHASE 3

C3.03 - EPSC AND
DRAINAGE DETAILS

25 OF 46





BROOKMERE
PHASE 3
HOMESTEAD LAND HOLDINGS, LLC
TENNESSEE
TOWN OF FARRAGUT



Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 43 of 118   PageID #: 1238



BROOKMERE
PHASE 3

HOMESTEAD LAND HOLDINGS, LLC

TENNESSEE

TOWN OF FARRAGUT

JUSTICE VALLEY ST

JUSTICE VALLEY ST

SCALE 1" = 50'



Case 3:23-cv-00402-TRM-JEM Document 6-26 Filed 11/11/23 Page 45 of 118 PageID #: 1240





Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 47 of 118   PageID #: 1242





Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 49 of 118   PageID #: 1244





Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 51 of 118   PageID #: 1246



FORCEMAIN 1

SCALE 1" = 50'

FORCEMAIN 2

SCALE 1" = 50'

Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 53 of 118   PageID #: 1248



Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 54 of 118   PageID #: 1249



BROOKMERE
PHASE 3
HOMESTEAD LAND HOLDINGS, LLC
TOWN OF FARRAGUT
TENNESSEE

CS.11 - WATER LAYOUT
SCALE 1" = 50'

WATER LINE 7

WATER LINE 6B

WATER LINE 6A

WATER LINE 5



WATER LINE 8

SCALE 1" = 50

BROOKMERE
PHASE 3

HOMESTEAD LAND HOLDINGS, LLC
TOWN OF FARRAGUT
TENNESSEE

CS.12 - WATER LAYOU

40 OF 46



WATER LINE 8

SCALE: 1" = 50'

BROOKMERE
PHASE 3
HOMESTEAD LAND HOLDINGS, LLC
TOWN OF FARRAGUT
TENNESSEE

C5.13 - WATER LAYOUT

41 OF 46



WATER LINE 9

SCALE 1" = 50'

BROOKMERE
PHASE 3

HOMESTEAD LAND HOLDINGS, LLC.
TENNESSEE
TOWN OF FARRAGUT

CS.14 - WATER LAYOUT

42 OF 46



TENNESSEE

HOMESTEAD LAND HOLDINGS, LLC

TOWN OF FARRAGUT

BROOKMERE
PHASE 3

L2.00 - TREE
PRESERVATION PLAN
KEY

43 OF 46

SCALE 1" = 100'

NOTES:
1. TREE CREDIT CALCULATIONS ARE
PROVIDED IN THE PROJECT CALCULATIONS
2. NO LANDSCAPING TREES REQUIRED IN PHASE 3
PER TREE CREDIT CALCULATION

| TOTAL REPLACEMENT CREDITS | -345.2 |
|---|---|
| TOTAL TREES SPECIFIED IN PHASE 1 | 251 |
| TOTAL TREES SPECIFIED IN PHASE 2 | 0 |
| TOTAL TREES SPECIFIED IN ENTRY AND AMENITIES | 115 |
| TOTAL TREE CREDITS | 20.8 |





Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 61 of 118   PageID #: 1256



# REPORT TO THE FARRAGUT MUNICIPAL PLANNING COMMISSION

**PREPARED BY:**   Mark Shipley, Community Development Director

**SUBJECT:**   Discussion and public hearing on a preliminary plat for Goin Property Subdivision, 11 Lots, Zoned R-1 (current) with R-2 (pending), 7.09 Acres (Rackley Engineering, Applicant)

**INTRODUCTION AND BACKGROUND:**   This agenda item involves the property that is situated between Phase 3 of the Inverness Subdivision and Turkey Creek Road and that was recommended for approval of a rezoning from R-1 to R-2 at the August 20 Planning Commission meeting. Pending approval of the rezoning by the Board of Mayor and Aldermen, the applicant has submitted a preliminary plat for consideration.

**DISCUSSION:**   Given the width and amount of property involved, the applicant is proposing a cul-de-sac for the subdivision with access being provided onto Turkey Creek Road but not to Spring Branch Lane in the Inverness Subdivision. As you may recall from the discussions involving the rezoning, though the property in question was provided access via a plat note on the Phase 3 final plat for Inverness, the construction of the Spring Branch Lane cul-de-sac was not designed for a public street to be extended from it. Though not specifically indicated, the plat note regarding access appeared to be for a driveway only.

The applicant is requesting a variance from Article III. 13. *Dead end streets and cul-de-sacs.*, to allow for a dead-end street exceeding 500 feet in length (the proposed street is 743 feet) and a variance from Article III. 18. *Connectivity.*, to not have more than one public street vehicular access into and out of the development. These variances will need to be considered and acted on separately.

**RECOMMENDATION:**   Staff will make a recommendation at the meeting based on whether the initial staff comments have been addressed. Approval will be subject to the rezoning being approved through the Board of Mayor and Aldermen. Staff has included the revised plan set in the packet file.

# Goin property prelim plat 1st review set staff comments.pdf Markup Summary

RESPONSE TO COMMENTS IN RED

## Area Measurement (1)



**Subject:** Area Measurement
**Page Label:** [2] 2 C200
**Author:** Dsmith
**Date:** 8/21/2020 7:28:41 PM
**Status:**
**Color:** ■
**Layer:**
**Space:**

244,943 sf

## Callout (11)



**Subject:** Callout
**Page Label:** [9] 10 C500
**Author:** Dan Johnson
**Date:** 8/21/2020 4:11:10 PM
**Status:**
**Color:** ■
**Layer:**
**Space:**

Provide fire hydrant in vicinity of entrance.

Hydrant added

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -



**Subject:** Callout
**Page Label:** [1] 1 C100
**Author:** Dsmith
**Date:** 8/21/2020 6:07:33 PM
**Status:**
**Color:** ■
**Layer:**
**Space:**

Cap existing catch basin, construct new catch basin (tied to existing system) outside driving lane.

Revised Call on C200

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -



**Subject:** Callout
**Page Label:** [2] 2 C200
**Author:** Dsmith
**Date:** 8/21/2020 6:16:07 PM
**Status:**
**Color:** ■
**Layer:**
**Space:**

Cap and construct new curb inlet outside driving surface.

Revised Call on C200

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -



**Subject:** Callout
**Page Label:** [2] 2 C200
**Author:** Dsmith
**Date:** 8/21/2020 7:23:27 PM
**Status:**
**Color:** ■
**Layer:**
**Space:**

Suggest using open-throated drain with bee-hive grate to avoid clogging. This is a questionable location for a simple grate.

Renamed structure on C200, 201 and revised structure note 4 for 'beehive' grade. there is a 2% swale to the road if grate is clogged.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -



**Subject:** Callout
**Page Label:** [1] 1 C100
**Author:** mshipley
**Date:** 8/24/2020 11:17:53 AM
**Status:**
**Color:** ■
**Layer:**
**Space:**

This street width may be excessive due to the short distance of the street.

No action. Streets will remain 26 ft.

Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 64 of 118   PageID #: 1259



**Subject:** Callout
**Page Label:** [1] 1 C100
**Author:** mshipley
**Date:** 8/24/2020 11:18:40 AM
**Status:**
**Color:** ■
**Layer:**
**Space:**

Where are the street lights proposed?

Added to plan, they go behind the transformers,
where TOF regulation requires. C101

---



**Subject:** Callout
**Page Label:** 11
**Author:** mshipley
**Date:** 8/24/2020 11:37:47 AM
**Status:**
**Color:** ■
**Layer:**
**Space:**

Though this would need to be part of the
streetscape plan, how is the open space being
enhanced with landscaping. What gathering
spaces or amenities are being provided for this
open space consistent with the Subdivision
Regulations?

C101 added. App E states active or passive use. We are using
landscape and natural areas as passive use. The existing greenway trail
and sidewalk connection will provide plenty of active use.

---



**Subject:** Callout
**Page Label:** 1
**Author:** mshipley
**Date:** 8/26/2020 9:39:25 AM
**Status:**
**Color:** ■
**Layer:**
**Space:**

what is this dashed line for?

Side building setback for design purposes,
deleted from plat.

---



**Subject:** Callout
**Page Label:** 1
**Author:** mshipley
**Date:** 8/26/2020 9:47:33 AM
**Status:**
**Color:** ■
**Layer:**
**Space:**

These notes will not be acceptable on the final
plat. Easements must be shown based on the
as-constructed utilities that they serve.

Understood.

---



**Subject:** Callout
**Page Label:** 1
**Author:** mshipley
**Date:** 8/26/2020 9:47:40 AM
**Status:**
**Color:** ■
**Layer:**
**Space:**

Do you envision having a subdivision entrance
sign? If so, please provide the area for this or
clarify where it is envisioned if within the open
space.

See C101, any sign will be in HOA owned
property, no easement needing.

---



**Subject:** Callout
**Page Label:** 1
**Author:** mshipley
**Date:** 8/26/2020 9:49:08 AM
**Status:**
**Color:** ■
**Layer:**
**Space:**

Please include dimensions to nearest driveways
on each side of Turkey Creek Road. Is the sight
distance acceptable in this location?

Added to plat sheet.

Text Box (8)

**Subject:** Text Box
**Page Label:** [9] 10 C500
**Author:** Dan Johnson
**Date:** 8/21/2020 4:14:50 PM
**Status:**
**Color:** ■
**Layer:**
**Space:**

Add note " Fire hydrants shall produce a minimum flow of 1000 GPM at 20 PSI"

Note added to C500. Identical note used on passed projects in Town of Farragut.

---

**Subject:** Text Box
**Page Label:** [2] 2 C200
**Author:** Dsmith
**Date:** 8/21/2020 7:29:35 PM
**Status:**
**Color:** ■
**Layer:**
**Space:**

No Action

---

**Subject:** Text Box
**Page Label:** [2] 2 C200
**Author:** Dsmith
**Date:** 8/21/2020 7:32:03 PM
**Status:**
**Color:** ■
**Layer:**
**Space:**

Approximately 5.5 acres disturbed. Please submit $46,000 Letter of Credit for erosion control.

Understood

---

**Subject:** Text Box
**Page Label:** [2] 2 C200
**Author:** Dsmith
**Date:** 8/21/2020 7:32:53 PM
**Status:**
**Color:** ■
**Layer:**
**Space:**

Please submit Drainage Fee of $400.

Understood

---

**Subject:** Text Box
**Page Label:** [4] 1 C300
**Author:** Lori Saal
**Date:** 8/25/2020 4:16:37 PM
**Status:**
**Color:** ■
**Layer:**
**Space:**

Consider silt fence in this area to protect Inverness residents/cul-de-sac

Silt fence added to intermediate plans. This area is higher grade than the subdivision grading, but during sidewalk tie in it could be benificial.

---

**Subject:** Text Box
**Page Label:** 1
**Author:** mshipley
**Date:** 8/26/2020 9:38:21 AM
**Status:**
**Color:** ■
**Layer:**
**Space:**

Please provide a cover sheet.

Cover sheet added.



**Subject:** Text Box
**Page Label:** 1
**Author:** mshipley
**Date:** 8/26/2020 9:47:03 AM
**Status:**
**Color:** ■
**Layer:**
**Space:**

Given the short length of the street, staff would support a variance to the street width.

No action

---

**Subject:** Text Box
**Page Label:** 1
**Author:** mshipley
**Date:** 8/26/2020 9:47:11 AM
**Status:**
**Color:** ■
**Layer:**
**Space:**

1. Please submit all of the plan sheets (e.g. tree preservation plan, streetscape plan, locations for electric, gas, and telecommunications, etc) required for a preliminary plat. This submittal is incomplete.
2. A variance request will be needed for the requirement to connect to Spring Branch Lane.

1. Tree preservation plan and streetscape plan added. LCUB layout added.
Communications share trench with LCUB.
KUB has not provided gas design yet, but generally is is a 2" line looped 6' outside the ROW.

2. Variances were listed on C100. Added to Cover Sheet and preliminary plat sheet.

b.   Collector streets: 400 feet.

c.   Residential streets: 150 feet.

d.   Dead end and loop streets: 100 feet.

9. *Vertical curves.* Vertical curves shall conform to AASHTO stopping sight distance for the following design speeds:

a.   Arterial streets and highways: 50 mph.

b.   Collector streets: 40 mph.

c.   Residential streets: 35 mph.

d.   Dead end and loop streets: 30 mph.

10. *Intersections.* Street intersections shall be as nearly at right angles as possible, and no intersection shall be at an angle of less than 60 degrees.

To permit the construction of a curb having a desirable radius, property line radii at all street intersections shall not be less than 20 feet. Where the angle of the street intersection is less than 90 degrees, the Planning Commission may require a greater radius.

All intersections of two or more streets shall have a grade that does not exceed four percent of the following distance from the intersection:

a.   Arterial streets and highways: 150 feet.

b.   Collector streets: 100 feet.

c.   Residential streets: 60 feet.

d.   Dead end and loop street: 50 feet.

11. *Tangents.* Reverse curves in road right-of-way shall be corrected by tangents of not less than the following:

a.   Arterial streets and highways: 150 feet.

b.   Collector streets: 100 feet.

c.   Residential streets: 75 feet.

d.   Dead end and loop streets: 50 feet.

12. *Street jogs.* Street jogs of less than 200 feet shall not be allowed, except where both intersecting streets are cul-de-sacs in which case the street jogs with centerline offsets of less than 125 feet shall not be allowed.

13. *Dead end streets and cul-de-sacs.*

a.   The use of dead end streets and cul-de-sacs shall be discouraged in favor of loop and other connected street designs. The planning commission may permit the limited use of dead end streets and cul-de-sacs to enhance the protection of desirable natural features inherent to the

*Variance request* ✕

property or as a temporary stub out to abutting properties for future connections. When permitted, dead end streets and cul-de-sacs shall be no more than 500 feet in length unless necessitated by topography and approved as a variance by the planning commission.

Dead end streets and cul-de-sacs shall be provided at the closed end with a turn-around having an outside roadway diameter of at least 74 feet and a street right-of-way diameter of at least 94 feet.

b.      Where dead end streets are stubbed out to abutting properties, such streets shall be provided with a temporary turn-around as recommended by the Town Engineer and Fire Marshal.

14. *Private streets and reserve strips.* Private streets are prohibited. All streets shall be constructed per these regulations and shall be dedicated to the town. There shall be no reserve strips controlling access to streets, except where the control of such strips is definitely placed with the town under conditions approved by the Planning Commission.

15. *Drainage.* All streets and roads must be so designed as to provide for the discharge of surface water from the right-of-way of all streets and roads by grading and drainage as shall be approved by the planning commission. Where possible, water should be discharged by surface drainage into open ditches or swales. Such open ditches and swales shall be platted on the final plat as water quality drainage easements. In order to reduce run off, such open ditches and swales shall be kept in a vegetated state. No piping or the use of any type of hard surface (rip rap, river rock, etc.) shall be permitted in a water quality drainage easement. Where water cannot be adequately discharged by surface drainage, the planning commission shall require the installation of a storm sewer.

A street shall not carry water for a distance greater than 400 feet from the beginning point of the runoff. Discharge from the street shall be handled by means of a catch basin—The number, size, type, and location to be determined by the town engineer. Pipes under the right-of-way, for purposes of discharging water into the pipe, must be no less than 18 inches in diameter. Drainage shall not discharge into a sinkhole as a means of an outlet for runoff, unless the depression has a storage capacity for a 100-year flood without flooding any adjacent properties, or creating overflow runoff that will adversely affect existing drainage courses.

16. *Street Names.* Proposed streets which are obviously in alignment with others already existing and names shall bear the names of existing streets. In no case shall the name for proposed streets duplicate existing street names, irrespective of the use of the suffix street, avenue, boulevard, drive, place or court. The Planning Commission shall have the power to approve or disapprove street names and if necessary determine and assign names to public rights-of-way on submitted plats.

17. *Street Elevations.* The Planning Commission may require, where necessary, profiles and elevations of streets for determination of proximity to floodplains. No street shall be approved for construction within a floodplain if it is proposed to be constructed more than one foot below the elevation of the 500-year flood as defined in Article III, Section E. Fill may be used for streets provided such fill does not increase upstream flood heights. Drainage openings shall be so designed as to not restrict the flow of floodwaters or increase upstream flood heights.

Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 69 of 118   PageID #: 1264

names, irrespective of the use of the suffix street, avenue, boulevard, drive, place or court. The Planning Commission shall have the power to approve or disapprove street names and if necessary determine and assign names to public rights-of-way on submitted plats.

17. *Street Elevations.* The Planning Commission may require, where necessary, profiles and elevations of streets for determination of proximity to floodplains. No street shall be approved for construction within a floodplain if it is proposed to be constructed more than one foot below the elevation of the 500-year flood as defined in Article III, Section E. Fill may be used for streets provided such fill does not increase upstream flood heights. Drainage openings shall be so designed as to not restrict the flow of floodwaters or increase upstream flood heights.

18. *Connectivity.* The subdivision shall provide for both vehicular and pedestrian/shared-use path connectivity to abutting properties. The subdivision shall have more than one public street vehicular access into and out of the development. The Planning Commission may consider waiving this requirement in cases where 1) All of the abutting properties have been developed as existing house lots of less than one acre in size and are so located to physically preclude (block) such connections; or 2) Where very significant topographic issues, not created by the design of the subdivision, would effectively prohibit connections; or 3) The subdivision will have thirty (30) or less dwelling units.

*[handwritten margin note:] Variance request*

(Ord. of 10-1987; Ord. of 2-2006; Res. No. PC-09-08, § 2, 5-21-2009; Res. PC-17-01 , § 1, 2-16-2017; Ord. No. 18-04, § 1, 1-18-2018; Res. No. PC 18-04, § 2, 1-18-2018; Res. No. PC-19-11 § 3, 12-19-2019)

**B. - Sidewalks and other pedestrian facilities.**

1. *Provisions for Sidewalks and Other Pedestrian Facilities.* Sidewalks shall be constructed on all collector and arterial streets which a subdivision fronts. Sidewalks shall be constructed on at least one side of all new spine streets. Spine streets are those main streets located within a subdivision which connect less traveled streets located deeper within the subdivision to the subdivision entrance(s).

Additional sidewalks along non-spine streets internal to a subdivision may also be required by the Planning Commission. In making their determination, the Planning Commission shall consider the anticipated use of such facilities, the frequency of pedestrian/vehicular conflicts, and whether such additional facilities would significantly contribute to the town's existing or projected pedestrian network.

In lieu of sidewalks being constructed along spine and/or non-spine streets, the Planning Commission may approve an alternate comprehensive pedestrian system for the subdivision. Such system shall include sidewalks, bicycle/pedestrian paths, greenways, or any combination thereof.

2. *Placement of sidewalks and other pedestrian and shared-use facilities.* A grassed or landscaped strip of at least six feet in width shall be provided between the back of the street curb and the edge of the approved pedestrian or shared-use facility on all streets classified as a local or collector on the Major Road Plan. A grassed or landscaped strip of at least eight feet in width shall be provided between the back of the street curb and the edge of the approved pedestrian or shared-use facility on all streets classified as an arterial street on the Major Road Plan. When there is a deceleration or taper lane and the right-of-way is not of adequate width to accommodate a six-foot or eight-foot grassed or landscaped strip between the back of the street curb and the edge of the pedestrian or shared-use facility, the grass or landscaped strip may be reduced in width to a minimum of three feet for that abutting section, if approved by the planning commission.

# PRELIMINARY PLAT

# GOIN PROPERTY

## FARRAGUT, TN



11625 Turkey Creek Rd. FARRAGUT,TN 37934
DEED 2015050400059606, 20150504005907
CLT MAP 153 PARCEL 21.03, 21.01
10.23 ACRES

September 8, 2020

**OWNER/DEVELOPER:**
HOMESTEAD LAND HOLDINGS, LLC
BOB MOHNEY
122 PERIMETER PARK DR
KNOXVILLE, TN 37922
865-392-5630
bmohney@saddlebrookproperties.com

Variances:
1. No road connection to adjacent property
2. Length of dead end road from 500 ft to 743 ft

**ARBORIST:**
CONSULTREE LLC
CURTIS CASCIANO
8817 CAVINDISH COURT
KNOXVILLE, TN 37923
865-789-7643
curtis_tre@yahoo.com

SURVEYING BY:

**LYNCH SURVEYS LLC**
SUBDIVISIONS | AS-BUILTS | SITE DESIGN
4405 COSTER RD.  KNOXVILLE, TENN. 37912
865.584.5220   FAX: 865-588-2801   WWW.LYNCHSURVEY.COM
rlynch@lynchsurvey.com

ENGINEERING BY:



**Rackley Engineering**
P.O BOX 30456, KNOXVILLE, TN, 37930
WWW.RACKLEYENGINEERING.COM   865-622-6560
marackley@rackleyengineering.com







Alignment - (1) PROFILE

PUBLIC ROAD DETAIL

Case 3:23-cv-00402-TRM-JEM    Document 6-26    Filed 11/11/23    Page 74 of 118    PageID #: 1269











811

Know what's below.
Call before you dig.



C302

INTERMEDIATE CONTROLS
EROSION CONTROL PLANS
FARRAGUT, TN
GOIN PROPERTY SUBDIVISION

Rackley Engineering



Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 81 of 118   PageID #: 1276



Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 82 of 118   PageID #: 1277



Water Line 'A' PROFILE



NOTES:

1. ANY INSTALLATIONS ON ALTERATION OF THE OVERHEAD ELECTRICAL INFRASTRUCTURE TO BE PERFORMED BY LCUB.

2. VAULTS AND TRANSFORMERS PADS ARE NOT TO SCALE.

3. ALL PRIMARY CONDUIT IS 3RD. 40 PVC. 2" UNLESS OTHERWISE NOTED.

4. ANY PRIMARY CONDUIT INSTALLED LESS THAN 42" BELOW GRADE MUST BE ENCASED IN CONCRETE.

5. ALL TRANSFORMERS LOCATIONS SHALL MEET STATE AND LOCAL CODES.

## LEGEND

| | |
|---|---|
| ···· #···· | NUMBER OF CONDUITS |
| ············ | URD PRIMARY |
| ———————— | URD SECONDARY |
| ———————— | OH PRIMARY |
| ———————— | INSTALL |
| ———————— | REMOVE |
| ———————— | EXISTING TO REMAIN |
| BAC | BREAK ALL CONDUITS |
| BBC | BREAK BOTH CONDUITS |

OPEN SPACE - 11
SQUARE SQ FT
1.28 ACRES

LCUB
7608 Creekwood Park Blvd.
P.O. Box 449
Lenoir City, TN 37772
Office (865) 986-6591
www.LCUB.com

| REV. NO. | DATE | REV. BY | DESCRIPTION |
|---|---|---|---|
| 1 | 8/26/21 | MJ | REVIEW SET |

**GOIN PROPERTY SUBDIVISION**

**TURKEY CREEK ROAD**

**PRELIMINARY UNDERGROUND ELECTRIC DESIGN**

| Designer By: | A. MICHAEL | Date: | | SCALE |
|---|---|---|---|---|
| Drawn By: | A. MICHAEL | Scale: | 1"=60' | |
| Approved By: | A. MICHAEL | Job Order #: | 15113/ |
| Page Number: | Page 1 of 1 | | | |

N

# REPORT TO THE FARRAGUT MUNICIPAL PLANNING COMMISSION

**PREPARED BY:**  Mark Shipley, Community Development Director

**SUBJECT:**  Discussion and public hearing on an amendment to the <u>Farragut Municipal Code</u>, Appendix A., Zoning, Chapter 4., Section XXIV. – Special Events Permit, to allow for food trucks for special events sponsored by a homeowner's association

**INTRODUCTION AND BACKGROUND:**  This was reviewed as a workshop item last month.

**DISCUSSION:**  As noted in August, the initial objective of including this item on the agenda was to present the idea of allowing sales from food trucks if part of an approved special event sponsored or hosted by a homeowner association (HOA).

The existing language only provides for sales from food trucks for commercial, office, and not for profit/non-profit entities if part of an approved special event.  During the COVID pandemic, more people are staying at home and the thought was that food trucks should be permitted as an option for HOA's, provided a permit and filing fee was secured.  This would help to establish a process and parameters for these activities in residential settings.

While addressing this item, staff felt that other language in this section of the Zoning Ordinance should be updated to reflect current practices and the recent changes related to signage permitted for temporary events.  The proposed language reviewed by the Planning Commission last month is now included in Ordinance 20-19.

**RECOMMENDATION:**  Staff recommends approval of Resolution PC-20-13 which recommends approval of Ordinance 20-19.

**RESOLUTION PC-20-13**

## FARRAGUT MUNICIPAL PLANNING COMMISSION

**A RESOLUTION TO AMEND THE TEXT OF THE FARRAGUT ZONING ORDINANCE, ORDINANCE 86-16, AS AMENDED, PURSUANT TO AUTHORITY GRANTED BY SECTION 13-4-201, TENNESSEE CODE ANNOTATED, BY AMENDING THE FARRAGUT MUNICIPAL CODE, APPENDIX A., ZONING, CHAPTER 4., SECTION XXIV. – SPECIAL EVENTS PERMIT, TO REPLACE IT IN ITS ENTIRETY**

**WHEREAS**, the Tennessee Code Annotated, Section 13-4-201et seq, provides that the Municipal Planning Commission shall make and adopt a general plan for the physical development of the municipality; and

**WHEREAS**, the Farragut Municipal Planning Commission has adopted various elements of a zoning plan as an element of the general plan for physical development; and

**WHEREAS**, a public hearing was held on this request on September 17, 2020;

**NOW, THEREFORE, BE IT RESOLVED** that the Farragut Municipal Planning Commission hereby recommends approval to the Farragut Board of Mayor and Aldermen of an ordinance, amending Ordinance 86-16, of the Farragut Zoning Ordinance, by adding Ordinance 20-19.

ADOPTED this 17th day of September 2020.

_____
Rita Holladay, Chairman


_____
Scott Russ, Secretary

| ORDINANCE: | 20-19 |
|---|---|
| PREPARED BY: | Shipley |
| REQUESTED BY: | Staff |
| 1ST READING: | _____ |
| 2ND READING: | _____ |
| PUBLISHED IN: | _____ |
| DATE: | _____ |

**AN ORDINANCE TO AMEND THE TEXT OF THE FARRAGUT ZONING ORDINANCE, ORDINANCE 86-16, AS AMENDED, PURSUANT TO AUTHORITY GRANTED BY SECTION 13-4-201, TENNESSEE CODE ANNOTATED, BY AMENDING THE <u>FARRAGUT MUNICIPAL CODE</u>, APPENDIX A., ZONING, CHAPTER 4., SECTION XXIV. – SPECIAL EVENTS PERMIT, TO REPLACE IT IN ITS ENTIRETY**

**WHEREAS,** the Board of Mayor and Aldermen of the Town of Farragut, Tennessee, wishes to amend Chapter 4., Section XXIV. – Special Events Permit, of the Farragut Zoning Ordinance, Ordinance 86-16,

**NOW, THEREFORE, BE IT ORDAINED** by the Board of Mayor and Aldermen of the Town of Farragut, Tennessee, that the Farragut Zoning Ordinance is hereby amended as follows:

**SECTION 1.**

The <u>Farragut Municipal Code</u>, Appendix A, Zoning, Chapter 4, Section XXIV. – Special events permit, is amended by replacing it in its entirety with the following:

Sec. XXIV. - Special events permit.

It is the intent of this section to establish the permitting process and the requirements for special events held by private entities within the Town of Farragut. A special event may include a wide range of activities such as, but not limited to, a grand opening, sidewalk sale, fund raiser, yard sale, vacation bible school, holiday pageant or program, etc.

A. *Non-Residential Uses, including Schools and Churches, and Not-For-Profit/Non-Profit Entities.*

  1. *General Requirements.*

     a. Each individual permanent non-residential use with a valid Certificate of Occupancy is eligible for a special event. In addition, off-site not-for-profit and non-profit entities are eligible for a special event but shall be sponsored by an on-site commercial, office, or service entity.

     b. There shall be a maximum of four special events permits per entity per year.

     c. The duration of each special event shall not exceed ten calendar days.

     d. No special events are permitted on vacant or vacated properties.

e. Sales from food trucks are permitted if part of an approved special event and shall be subject to a fee, as provided for in the adopted Town of Farragut Fee Schedule.

f. Activities of the special event shall not materially affect the pedestrian or vehicular circulation within the immediate vicinity of the event. The traffic generation of the special event shall not be allowed to create a hazardous condition for traffic in the public rights-of-way.

2. *Sign Requirements.*

a. Sign provisions shall be in accordance with the applicable sections of the Farragut Sign Ordinance. Special events permit signs shall be considered temporary parcel signs. All signs shall have a white background and signs for commercial uses shall include, on at least 15% of the sign face, the Shop Farragut logo.

b. All signs and any supporting posts shall be removed at the end of each approved special event time frame.

3. *Permitting Process.* A special events permit application and filing fee shall be submitted to and approved by the Town prior to the commencement of the event. The applicant must have an approved permit in hand prior to holding an event.

All special events permit applications shall include the following information:

a. Applicant's name, street address, telephone number, fax number, and e-mail address.

b. Name, street address, telephone number, fax number, e-mail address, and signature of individual identified who assumes the responsibility of meeting the conditions of the permit.

c. Applicant status (commercial, office, service, not-for-profit, non-profit, etc.).

d. Location of event.

e. Nature/name of event.

f. Date range of event.

g. Previous special events permit(s) approved during the calendar year.

h. Where a sign is proposed, the application submittal shall be in accordance with the Farragut Sign Ordinance and the applicable provisions of this chapter. Special events permit signs shall be considered temporary parcel signs.

i. If having a tent(s), sidewalk sales, food trucks, or any other outdoor activities, a site plan is required to show the locations for such activities. A separate tent permit may be required per fire safety requirements.

j. If having a food truck(s), a list and full contact information is required for each of the vendors along with a filing fee for each non-Town based food truck vendor.

      k. Events on or involving/affecting public property, such as road races, bicycle ride events, concerts, etc., will require additional reviews and information and shall be coordinated with the Town staff. Some events may be subject to approval from the Board of Mayor and Aldermen.

B. *Residential Uses.*

  1. *General Requirements.*

    a. Each homeowner association and individual residence is eligible for a special event.

    b. There shall be a maximum of five special events permits per homeowner association and a maximum of two per residence per year.

    c. The duration of each special event shall not exceed three calendar days.

    d. Special events permits can only be applied for and issued to the property owner of record.

    e. No special events are permitted on vacant or vacated properties. Open space owned by a homeowner association may be used for a special event provided the land, without modifications, can accommodate the proposed activity.

    f. Sales from food trucks are permitted if part of an approved special event sponsored or hosted by a homeowner association and shall be subject to a fee, as provided for in the adopted Town of Farragut Fee Schedule, for each non-Town based food truck vendor.

  2. *Sign Requirements.*

    a. Sign provisions shall be in accordance with the applicable sections of the Farragut Sign Ordinance. Special events permit signs shall be considered temporary parcel signs.

  3. *Permitting Process.* A special events permit application and filing fee shall be submitted to and approved by the Town prior to the commencement of the event. The applicant must have an approved permit in hand prior to holding an event.

  All special events permit applications shall include the following information:

    a. Applicant's name, street address, telephone number, fax number, and e-mail address. Where an event is sponsored or hosted by a homeowner association, include the name, street address, telephone number, fax number, e-mail address, and signature of the individual identified who has legal authority and who assumes the responsibility of meeting the conditions of the permit.

    b. Location of event.

    c. Nature/name of event.

    d. Date range of event.

    e. Previous special events permit(s) approved during the calendar year.

    f. If part of an event sponsored or hosted by a homeowner association, and having a tent, food truck, or any other outdoor activities, a site plan is required to show

the locations for such activities. A separate tent permit may be required per fire safety requirements.

g. If having a food truck(s), a list and full contact information is required for each of the vendors along with a filing fee, as provided for in the adopted Town of Farragut Fee Schedule, for each non-Town based food truck vendor.

h. Events on or involving/affecting public property, such as road races, street parties, etc., will require additional reviews and information and shall be coordinated with the Town staff. Some events may be subject to approval from the Board of Mayor and Aldermen.

## SECTION 2.

This ordinance shall take effect from and after its final passage and publication, the public welfare requiring it.

Ron Williams, Mayor

Allison Myers, Town Recorder

Certified to the Farragut Board of Mayor and Aldermen this _____ day of _____, 2020, with approval recommended.

Rita Holladay, Chairman

Scott Russ, Secretary

## FARRAGUT MUNICIPAL PLANNING COMMISSION

**EXISTING LANGUAGE:**

Sec. XXIV. - Special events permit.

It is the intent of this section to establish the permitting process and the requirements for special events held by private entities within the Town of Farragut. For a commercial or office entity, a special event may constitute a grand opening, a sidewalk sale, or some other type of activity that is unique to their establishment. For not-for-profit or non-profit entities, a special event may constitute a fund raiser of some sort such as a car wash. For residential uses, a special event may be a neighborhood function on subdivision owned open space or a yard sale or garage sale for an individual residence. For schools and freestanding churches and other places of worship, a special event may be Vacation Bible School, a holiday pageant or program, a child consignment sale, of some other type of activity that is unique to the services offered.

    A. *Commercial, Office and Not-For-Profit/Non-Profit Entities.*

        1. *General Requirements.*

           a. Each individual permanent commercial and office entity is eligible for a special event. Within the Regional Commercial District, Retail/Warehousing (C-2-R/W) and in the case of a multi-tenant facility, only the multi-tenant facility is eligible for a special event, not each individual tenant/entity. Off-site not-for-profit and non-profit entities are eligible for a special event, but shall be sponsored by an on-site commercial or office entity.

           b. There shall be a maximum of four special event permits per entity per year.

           c. The duration of each special event shall not exceed ten calendar days.

           d. No special events are permitted on vacant or vacated properties.

           e. Sales from food trucks are permitted if part of an approved special event and shall be subject to a fee, as provided for in the adopted Town of Farragut Fee Schedule.

           f. Activities of the special event shall not materially affect the pedestrian or vehicular circulation within the immediate vicinity of the event. The traffic generation of the special event shall not be allowed to create a hazardous condition for traffic in public rights-of-way.

        2. *Sign Requirements.*

           a. There shall be a maximum of one sign per event not to exceed 20 square feet. For a two-sided sign, only the area of a single face shall be considered.

           b. For ground-mounted signs, the maximum sign height shall be six feet.

           c. Ground-mounted signs shall be set back a minimum of 20 feet from the street edge of pavement as measured from the farthest most protrusion of the sign to the nearest point of the street edge of pavement. Signs shall be set back a minimum of ten feet from all entrance driveways.

           d. All signs shall be a minimum [of] ten millimeter corrugated plastic. Ground mounted signs shall be affixed to studded T-posts. All signs shall be affixed in such a manner that they do not move in the wind.

           e. All signs shall have a white background.

           f. A minimum of 15 percent of the gross sign area shall include the Shop Farragut logo and website address. The sign shall also include the business name.

           g. Sign letters shall meet the Visual Resources Review Board's adopted legibility requirements.

        h.    No banners, streamers, balloons, flags-on-a-rope, other types of wind activated displays, or any sign prohibited in the Farragut Sign Ordinance is permitted.

        i.    All signs and any associated support posts shall be removed at the end of the special event.

    3.  *Permitting Process.* A special events permit application and filing fee shall be submitted to the Town Hall prior to the commencement of the event. The applicant must have an approved permit in hand prior to holding an event.

        All special event permit applications shall include the following information:

        a.    Applicant's name, street address, telephone number, fax number, and e-mail address.

        b.    Name, street address, telephone number, fax number, e-mail address, and signature of individual identified who assumes the responsibility of meeting the conditions of the permit.

        c.    Applicant status (commercial, office, not-for-profit, non-profit).

        d.    Location of event.

        e.    Nature/name of event.

        f.    Date range of event.

        g.    Previous special event permits approved during the calendar year.

        h.    If applicable, a drawing of the sign which includes dimensions that show the length and width of the sign, the height and width of all letters and figures, and the overall height of the sign.

        i.    If having tent(s), sidewalk sales, or any other outdoor activities, include a site plan showing locations for such activities. A separate tent permit may be required per fire safety requirements.

  B.  *Residential Uses.*

    1.  *General Requirements.*

        a.    Each homeowner association and individual residence is eligible for a special event.

        b.    There shall be a maximum of two special event permits per homeowner association and residence per year.

        c.    The duration of each special event shall not exceed three calendar days.

        d.    Special events permits can only be applied for and issued to the property owner of record.

        e.    No special events are permitted on vacant or vacated properties. Open space owned by a homeowner association may be used for a special event provided the land, without modifications, can accommodate the proposed activity.

    2.  *Sign Requirements.*

        a.    There shall be a maximum of one sign per event not to exceed six square feet and four feet in height. For a two-sided sign, only the area of a single face shall be considered.

        b.    Ground-mounted signs shall be set back a minimum of 20 feet from the street edge of pavement as measured from the farthest most protrusion of the sign to the nearest point of the street edge of pavement.

        c.    No banners, streamers, balloons, flags-on-a-rope, other types of wind activated displays, or any sign prohibited in the Farragut Sign Ordinance is permitted.

d. All signs and any associated support posts shall be removed at the end of the special event.

3. *Permitting Process.* A special events permit application and filing fee shall be submitted to the Town Hall prior to the commencement of the event. The applicant must have an approved permit in hand prior to holding an event.

   All special event permit applications shall include the following information:

   a. Applicant's name, street address, telephone number, fax number, and e-mail address. If a homeowner association, name, street address, telephone number, fax number, e-mail address, and signature of individual identified who has legal authority and who assumes the responsibility of meeting the conditions of the permit.

   b. Location of event.

   c. Nature/name of event.

   d. Date range of event.

   e. Previous special event permits approved during the calendar year.

   f. If a homeowner association and having tent(s) or any other outdoor activities, include a site plan showing locations for such activities.

C. *Freestanding Schools, Churches, and Other Places of Worship.*

1. *General Requirements.*

   a. Each freestanding school, church, and other place of worship is eligible for a special event.

   b. There shall be a maximum of four special event permits per entity per year.

   c. The duration of each special event shall not exceed ten calendar days.

   d. No special events are permitted on vacant or vacated properties.

   e. Activities of the special event shall not materially affect the pedestrian or vehicular circulation within the immediate vicinity of the event. The traffic generation of the special event shall not be allowed to create a hazardous condition for traffic in public rights-of-way.

2. *Sign Requirements.*

   a. There shall be a maximum of one sign per event not to exceed 16 square feet. For a two-sided sign, only the area of a single face shall be considered.

   b. For ground-mounted signs, the maximum sign height shall be six feet.

   c. Ground-mounted signs shall be set back a minimum of 20 feet from the street edge of pavement as measured from the farthest most protrusion of the sign to the nearest point of the street edge of pavement. Signs shall be set back a minimum of ten feet from all entrance driveways.

   d. All signs shall be a minimum [of] ten millimeter corrugated plastic. Ground-mounted signs shall be affixed to studded T-posts. All signs shall be affixed in such a manner that they do not move in the wind.

   e. Sign letters shall meet the Visual Resources Review Board's adopted legibility requirements.

   f. No banners, streamers, balloons, flags-on-a-rope, other types of wind activated displays, or any sign prohibited in the Farragut Sign Ordinance is permitted.

g. All signs and any associated support posts shall be removed at the end of the special event.

3. *Permitting Process.* A special events permit application and filing fee shall be submitted to the Town Hall prior to the commencement of the event. The applicant must have an approved permit in hand prior to holding an event.

All special event permit applications shall include the following information:

a. Applicant's name, street address, telephone number, fax number, and e-mail address.

b. Name, street address, telephone number, fax number, e-mail address, and signature of individual identified who assumes the responsibility of meeting the conditions of the permit.

c. Location of event.

d. Nature/name of event.

e. Date range of event.

f. Previous special event permits approved during the calendar year.

g. If applicable, a drawing of the sign which includes dimensions that show the length and width of the sign, the height and width of all letters and figures, and the overall height of the sign.

h. If having tent(s) or any other outdoor activities, include a site plan showing locations for such activities. A separate tent permit may be required per fire safety requirements.

(Ord. No. 86-16, 4-1986; Ord. of 2-2006; Ord. No. 11-22, § 1, 12-8-2011; Ord. No. 17-06, § 1, 4-27-2017)

**PROPOSED LANGUAGE:**

Sec. XXIV. - Special events permit.

It is the intent of this section to establish the permitting process and the requirements for special events held by private entities within the Town of Farragut. A special event may include a wide range of activities such as but not limited to a grand opening, sidewalk sale, fund raiser, yard sale, vacation bible school, holiday pageant or program, etc. ~~For a commercial or office entity, a special event may constitute a grand opening, a sidewalk sale, or some other type of activity that is unique to their establishment. For not-for-profit or non-profit entities, a special event may constitute a fund raiser of some sort such as a car wash. For residential uses, a special event may be a neighborhood function on subdivision owned open space or a yard sale or garage sale for an individual residence. For schools and freestanding churches and other places of worship, a special event may be Vacation Bible School, a holiday pageant or program, a child consignment sale, of some other type of activity that is unique to the services offered.~~

A. ~~Commercial, Office~~ Non-Residential Uses, including Schools and Churches, and Not-For-Profit/Non-Profit Entities.

    1. General Requirements.

        a. Each individual permanent non-residential use with a valid Certificate of Occupancy ~~commercial and office entity is eligible for a special event. Within the Regional Commercial District, Retail/Warehousing (C-2-R/W) and in the case of a multi-tenant facility, only, not each individual tenant/entity.~~ is eligible for a special event. In addition, off-site not-for-profit and non-profit entities are eligible for a special event but shall be sponsored by an on-site commercial, office, or service entity.

        b. There shall be a maximum of four special event permits per entity per year.

        c. The duration of each special event shall not exceed ten calendar days.

        d. No special events are permitted on vacant or vacated properties.

        e. Sales from food trucks are permitted if part of an approved special event and shall be subject to a fee, as provided for in the adopted Town of Farragut Fee Schedule.

        f. Activities of the special event shall not materially affect the pedestrian or vehicular circulation within the immediate vicinity of the event. The traffic generation of the special event shall not be allowed to create a hazardous condition for traffic in public rights-of-way.

    2. Sign Requirements.

        a. Sign provisions shall be in accordance with the applicable sections of the Farragut Sign Ordinance. Special events permit signs shall be considered temporary parcel signs. All signs shall have a white background and signs for commercial uses shall include, on at least 15% of the sign face, the Shop Farragut logo.

        b. All signs and any supporting posts shall be removed at the end of each approved special event time frame.

~~There shall be a maximum of one sign per event not to exceed 20 square feet. For a two-sided sign, only the area of a single face shall be considered.~~

~~b. For ground-mounted signs, the maximum sign height shall be six feet.~~

~~c. Ground-mounted signs shall be set back a minimum of 20 feet from the street edge of pavement as measured from the farthest most protrusion of the sign to the nearest point of the street edge of pavement. Signs shall be set back a minimum of ten feet from all entrance driveways.~~

d. ~~All signs shall be a minimum [of] ten millimeter corrugated plastic. Ground mounted signs shall be affixed to studded T-posts. All signs shall be affixed in such a manner that they do not move in the wind.~~

e. ~~All signs shall have a white background.~~

f. ~~A minimum of 15 percent of the gross sign area shall include the Shop Farragut logo and website address. The sign shall also include the business name.~~

g. ~~Sign letters shall meet the Visual Resources Review Board's adopted legibility requirements.~~

h. ~~No banners, streamers, balloons, flags-on-a-rope, other types of wind-activated displays, or any sign prohibited in the Farragut Sign Ordinance is permitted.~~

i. ~~All signs and any associated support posts shall be removed at the end of the special event.~~

3. *Permitting Process.* A special events permit application and filing fee shall be submitted to and approved by the Town ~~to the Town Hall~~ prior to the commencement of the event. The applicant must have an approved permit in hand prior to holding an event.

   All special event permit applications shall include the following information:

   a. Applicant's name, street address, telephone number, fax number, and e-mail address.

   b. Name, street address, telephone number, fax number, e-mail address, and signature of individual identified who assumes the responsibility of meeting the conditions of the permit.

   c. Applicant status (commercial, office, service, not-for-profit, non-profit, etc.).

   d. Location of event.

   e. Nature/name of event.

   f. Date range of event.

   g. Previous special events permits approved during the calendar year.

   h. Where a sign is proposed, the application submittal shall be in accordance with the Farragut Sign Ordinance and the applicable provisions of this chapter. Special events permit signs shall be considered temporary parcel signs. ~~If applicable, a drawing of the sign which includes dimensions that show the length and width of the sign, the height and width of all letters and figures, and the overall height of the sign.~~

   i. If having tent(s), sidewalk sales, food trucks, or any other outdoor activities, a site plan is required to show the ~~include a site plan showing~~ locations for such activities. A separate tent permit may be required per fire safety requirements.

   j. If having a food truck(s), a list and full contact information is required for each of the vendors along with a filing fee for each non-Town based food truck vendor.

   k. Events on or involving/affecting public property, such as road races, bicycle ride events, concerts, etc., will require additional reviews and information and shall be coordinated with the Town staff. Some events may be subject to approval from the Board of Mayor and Aldermen.

B. *Residential Uses.*

   1. *General Requirements.*

      a. Each homeowner association and individual residence is eligible for a special event.

b.   There shall be a maximum of ~~two~~ five special event permits per homeowner association and a maximum of two per residence per year.

c.   The duration of each special event shall not exceed three calendar days.

d.   Special event permits can only be applied for and issued to the property owner of record.

e.   No special events are permitted on vacant or vacated properties. Open space owned by a homeowner association may be used for a special event provided the land, without modifications, can accommodate the proposed activity.

f.   Sales from food trucks are permitted if part of an approved special event sponsored or hosted by a homeowner association and shall be subject to a fee, as provided for in the adopted Town of Farragut Fee Schedule, for each non-Town based food truck vendor.

2.  *Sign Requirements.*

a.   Sign provisions shall be in accordance with the applicable sections of the Farragut Sign Ordinance.  Special events permit signs shall be considered temporary parcel signs.

~~There shall be a maximum of one sign per event not to exceed six square feet and four feet in height. For a two-sided sign, only the area of a single face shall be considered.~~

b.   ~~Ground-mounted signs shall be set back a minimum of 20 feet from the street edge of pavement as measured from the farthest most protrusion of the sign to the nearest point of the street edge of pavement.~~

c.   ~~No banners, streamers, balloons, flags-on-a-rope, other types of wind activated displays, or any sign prohibited in the Farragut Sign Ordinance is permitted.~~

d.   ~~All signs and any associated support posts shall be removed at the end of the special event.~~

3.  *Permitting Process.* A special events permit application and filing fee shall be submitted to and approved by the Town ~~to the Town Hall~~ prior to the commencement of the event. The applicant must have an approved permit in hand prior to holding an event.

All special event permit applications shall include the following information:

a.   Applicant's name, street address, telephone number, fax number, and e-mail address. Where an event is sponsored or hosted by a homeowner association, include the name, street address, telephone number, fax number, e-mail address, and signature of the individual identified who has legal authority and who assumes the responsibility of meeting the conditions of the permit.

b.   Location of event.

c.   Nature/name of event.

d.   Date range of event.

e.   Previous special events permit(s) approved during the calendar year.

f.   If part of an event sponsored or hosted by a homeowner association, and having a tent, food truck, or any other outdoor activities, a site plan is required to show the locations for such activities.  A separate tent permit may be required per fire safety requirements.

g.   If having a food truck(s), a list and full contact information is required for each of the vendors along with a filing fee, as provided for in the adopted Town of Farragut Fee Schedule, for each non-Town based food truck vendor.

h. Events on or involving/affecting public property, such as road races, street parties, etc., will require additional reviews and information and shall be coordinated with the Town staff. Some events may be subject to approval from the Board of Mayor and Aldermen.

C. Freestanding Schools, Churches, and Other Places of Worship.

1. General Requirements.

   a. Each freestanding school, church, and other place of worship is eligible for a special event.

   b. There shall be a maximum of four special event permits per entity per year.

   c. The duration of each special event shall not exceed ten calendar days.

   d. No special events are permitted on vacant or vacated properties.

   e. Activities of the special event shall not materially affect the pedestrian or vehicular circulation within the immediate vicinity of the event. The traffic generation of the special event shall not be allowed to create a hazardous condition for traffic in public rights-of-way.

2. Sign Requirements.

   a. Sign provisions shall be in accordance with the applicable sections of the Farragut Sign Ordinance. Special events permit signs shall be considered temporary parcel signs.

   a. There shall be a maximum of one sign per event not to exceed 16 square feet. For a two-sided sign, only the area of a single face shall be considered.

   b. For ground-mounted signs, the maximum sign height shall be six feet.

   c. Ground-mounted signs shall be set back a minimum of 20 feet from the street edge of pavement as measured from the farthest most protrusion of the sign to the nearest point of the street edge of pavement. Signs shall be set back a minimum of ten feet from all entrance driveways.

   d. All signs shall be a minimum [of] ten millimeter corrugated plastic. Ground-mounted signs shall be affixed to studded T-posts. All signs shall be affixed in such a manner that they do not move in the wind.

   e. Sign letters shall meet the Visual Resources Review Board's adopted legibility requirements.

   f. No banners, streamers, balloons, flags-on-a-rope, other types of wind activated displays, or any sign prohibited in the Farragut Sign Ordinance is permitted.

   g. All signs and any associated support posts shall be removed at the end of the special event.

3. Permitting Process. A special events permit application and filing fee shall be submitted to the Town Hall prior to the commencement of the event. The applicant must have an approved permit in hand prior to holding an event.

   All special event permit applications shall include the following information:

   a. Applicant's name, street address, telephone number, fax number, and e-mail address.

   b. Name, street address, telephone number, fax number, e-mail address, and signature of individual identified who assumes the responsibility of meeting the conditions of the permit.

   c. Location of event.

d. Nature/name of event.

e. Date range of event.

f. Previous special event permits approved during the calendar year.

g. Where a sign is proposed, the application submittal shall be in accordance with the Farragut Sign Ordinance. Special events permit signs shall be considered temporary parcel signs. If applicable, a drawing of the sign which includes dimensions that show the length and width of the sign, the height and width of all letters and figures, and the overall height of the sign.

h. If having tent(s) or any other outdoor activities, include a site plan showing locations for such activities. A separate tent permit may be required per fire safety requirements.

(Ord. No. 86-16, 4-1986; Ord. of 2-2006; Ord. No. 11-22, § 1, 12-8-2011; Ord. No. 17-06, § 1, 4-27-2017)

# REPORT TO THE FARRAGUT MUNICIPAL PLANNING COMMISSION

**PREPARED BY:**    Mark Shipley, Community Development Director

**SUBJECT:**    Discussion and public hearing on amendments to the text of Comprehensive Land Use Plan Update as it relates to the Mixed-Use Town Center and use descriptions (Town of Farragut, Applicant)

---

**INTRODUCTION AND BACKGROUND:** In response to the Town Center at Biddle Farms concept plan, staff re-convened the Comprehensive Land Use Plan (CLUP) Steering Committee to review in more detail the Mixed-Use Town Center land use description and map provided for in the CLUP. The Committee met on July 28 and August 19 with a primary objective of evaluating the concept of a Mixed-Use Town Center and what key components it would need to contain.

The Committee generally felt that the key components emphasized in the text was still representative of what this land use designation is intended to represent. An exception was to have less prescriptions for high density residential and more emphasis on applying the flex density and transition concepts discussed in Chapters Two and Three of the CLUP. These concepts specifically relate to considering the context and protecting existing neighborhoods from incompatible new development by providing for gradual transitions within a development (with densities increasing or decreasing away from a common boundary). Specifically, it was recommended that, in the short term, the text portion of the MUTC should be clear with regards to the policy that residential densities of new development should be compatible with existing adjacent densities.

The applicable text related to both transitions and flex density are included in the packet.

**RECOMMENDATION:** Based on feedback provided by the Steering Committee, staff has taken the text portion of the Mixed-Use Town Center land use (those pages with existing text are included in the packet) and is proposing in Ordinance 20-20 to replace the existing text.

Some key provisions in the proposed text are as follows:

1. Ensure that the inherent components of the Mixed-Use Town Center are still provided for but in more succinctly stated provisions.
2. An emphasis on interconnectedness (the people movement component) and iconic architecture that creates a unique sense of community identity.
3. Reference to form and arrangement of buildings as they relate to the public realm and surrounding plan of development.
4. An emphasis on ensuring that residential types and densities are appropriate to the context and the intent of having different types of residential in different areas. For example, higher density residential is discussed only as an option to be part of and support a downtown and only in those areas that do not abut existing residential communities. This helps connect the text of this portion of the Plan with other objectives in the Plan, such as protecting existing neighborhoods from incompatible new development.

## Mixed Use Town Center (existing language)

### Intent

- Increase Farragut's long-term economic sustainability by diversifying the retail tax base through the creation of a traditional downtown with a variety of shops, restaurants, businesses and residences, in a pedestrian-oriented setting.
- Integrate high-density residential development to help support retail and other commercial uses.
- Consider the creation of an entertainment district that draws people to the area. This could include subsidies for galleries or a resident artist elected each year. This would require a planning process to establish a vision, governance structure, and secure seed money.
- Create public gathering spaces
- Provide extended (evening) hours of operation that will cater to shopping, dining, and entertainment to increase the vitality of the area.

### Uses

- A mix of uses including: employment, commercial, retail, services, civic, and residential.
- Substantial residential use—primarily multi- family residences, but some attached units (townhomes, duplexes) for transitions to adjacent single-family neighborhoods.
- Retail-oriented commercial uses, including "one off" establishments (local businesses) as well as chain establishments that utilize small footprints (such as coffee shops, small footprint versions of big box stores).
- Offices and personal services such as doctor, dentists, bookkeeping, or studios.

Also encourage:

- Public service providers (law enforcement, fire protection) and new schools.
- Entertainment options such as theater or performing arts.

### Residential Density

- 8-15 dwelling units per acre.

## Location

- Within a general one-mile radius of the intersection of Kingston Pike and Campbell Station Road

## Character

- Connected building facades, with minor setback variations close to the sidewalk, on both sides of a street, that form a continuous shopping experience, with individual buildings adequately differentiated (to avoid strip appearance).
- High degree of ground floor transparency (glass) for visual interest to pedestrians.
- Comfortable bike and pedestrian connections to surrounding neighborhoods, with adequate bike parking.
- Pedestrian-focused amenities, places for gathering (pocket parks and plazas), wide sidewalks, outdoor dining, street trees, benches, consolidated newspaper racks, planters, and paving.
- Pedestrian scale signage.
- On-street parking to separate pedestrians from traffic and provide convenient parking; Major parking behind buildings, out of sight of pedestrians.
- Gridded or semi-gridded street network - a block pattern that includes a 'figure 8' pedestrian circulation pattern that wraps around corners (as opposed to a single street).

## **Mixed-Use Town Center** (proposed language)

### Intent

- Provide for the creation of a unique downtown for Farragut with a variety of shops, restaurants, businesses, offices, and residences, in a pedestrian-oriented setting
- Create a sense of community identity with a mixture of well-connected public gathering spaces and entertainment venues framed by an iconic architecture and streetscape
- Provide for a built environment that emphasizes the form and arrangement of buildings in relation to the public realm

### Uses

- Though ultimately driven by form, provide for a mix of uses that complement each other, including employment, commercial, retail, services, offices, civic, and residential
- Retail-oriented uses with smaller, more pedestrian scale, footprints with a high degree of ground floor transparency
- A mix of residential types appropriate to the context and surrounding plan of development
- Residential uses with densities that are consistent with the transition and flex density concepts described in the Comprehensive Land Use Plan Update. Residential density in the Mixed-Use Town Center should transition internally so that the density along a common boundary is compatible with the density of the existing abutting residential community
- Higher density residential to support a downtown should only be permitted in a vertical mixed-use building that is part of a downtown development plan or an area immediately adjacent to and part of a downtown development plan that does not abut existing residential communities

### Location

- Within a general one-mile radius of the intersection of Kingston Pike and Campbell Station Road

### Character

- Well-connected internally and externally for bicyclists and pedestrians
- Lively outdoor spaces and storefronts with a high degree of transparency

- Places to gather for a variety of different type of events
- Buildings that engage the street and that are inviting to pedestrians with wide sidewalks, outdoor dining, street trees, benches, planters, and other streetscaping enhancements
- On-street parking and a gridded or semi-gridded street layout system
- Appropriately scaled buildings that reflect an emphasis on form and arrangement that promotes uses consistent with the surrounding context

**RESOLUTION PC-20-14**

## FARRAGUT MUNICIPAL PLANNING COMMISSION

## A RESOLUTION TO APPROVE AMENDMENTS TO THE TEXT OF THE COMPREHENSIVE LAND USE PLAN UPDATE DECEMBER 2012 FOR THE LAND USE DESCRIPTIONS FOR THE MIXED-USE TOWN CENTER LAND USE

**WHEREAS**, the <u>Tennessee Code Annotated</u>, Section 13-4-201et seq, provides that the Municipal Planning Commission shall make and adopt a general plan for the physical development of the municipality; and

**WHEREAS**, the Farragut Municipal Planning Commission has adopted the Comprehensive Land Use Plan Update on December 12, 2012; and

**WHEREAS**, the Farragut Municipal Planning Commission may periodically amend various aspects of the Comprehensive Land Use Plan Update;

**NOW, THEREFORE, BE IT RESOLVED** that the Farragut Municipal Planning Commission hereby recommends through Resolution PC-20-14 approval of Ordinance 20-20 to amend the text of the Mixed-Use Town Center land use.

ADOPTED this 17th day of September 2020.


_____
Rita Holladay, Chairman


_____
Scott Russ, Secretary

| ORDINANCE: | 20-20 |
|---|---|
| PREPARED BY: | Shipley |
| REQUESTED BY: | Staff |
| CERTIFIED BY FMPC: | September 17, 2020 |
| PUBLIC HEARING: | _____ |
| PUBLISHED IN: | _____ |
| DATE: | _____ |
| 1ST READING: | _____ |
| 2ND READING: | _____ |
| PUBLISHED IN: | _____ |
| DATE: | _____ |

## AN ORDINANCE TO AMEND THE TEXT OF THE MIXED-USE TOWN CENTER LAND USE DESCRIPTIONS IN CHAPTER THREE OF THE COMPREHENSIVE LAND USE PLAN UPDATE

**WHEREAS,** the Board of Mayor and Aldermen of the Town of Farragut, Tennessee, through the Farragut Municipal Planning Commission, created and adopted the Farragut Comprehensive Land Use Plan Update and Future Land Use Map; and,

**WHEREAS**, the Tennessee Code Annotated, Section 13-4-201 et seq, provides that the Municipal Planning Commission shall make and adopt a general plan for the physical development of the municipality; and

**WHEREAS**, the Farragut Municipal Planning Commission adopted the Farragut Comprehensive Land Use Plan Update and Future Land Use Map by Resolution PC-12-18 on December 20, 2012; and

**WHEREAS**, the Tennessee Code Annotated, Section 13-4-202 et seq, provides that the Municipal Planning Commission and the chief legislative body may adopt parts of the Comprehensive Land Use Plan Update that correspond generally with one (1) or more of the functional subdivisions of the subject matter of the plan; and

**WHEREAS**, the Board of Mayor and Alderman of the Town of Farragut has adopted the Mixed-Use Town Center Land Use Descriptions Section of the Farragut Comprehensive Land Use Plan Update; and

**WHEREAS**, the Board of Mayor and Alderman of the Town of Farragut may periodically amend the text of the Mixed-Use Town Center Land Use Descriptions Section of the Farragut Comprehensive Land Use Plan Update;

**NOW, THEREFORE, BE IT ORDAINED** by the Board of Mayor and Aldermen of the Town of Farragut that the Farragut Comprehensive Land Use Plan Update, Chapter Three, Future Land Use Plan, Land Use Descriptions Section, Description 1, Mixed-Use Town Center, is hereby amended by replacing it in its entirety with the following:

**SECTION 1.**

I.   Chapter Three/ Future Land Use Plan, Land Use Descriptions Section, 1. Mixed-Use Town Center

### Intent

- Provide for the creation of a unique downtown for Farragut with a variety of shops, restaurants, businesses, offices, and residences, in a pedestrian-oriented setting
- Create a sense of community identity with a mixture of well-connected public gathering spaces and entertainment venues framed by an iconic architecture and streetscape
- Provide for a built environment that emphasizes the form and arrangement of buildings in relation to the public realm

### Uses

- Though ultimately driven by form, provide for a mix of uses that complement each other, including employment, commercial, retail, services, offices, civic, and residential
- Retail-oriented uses with smaller, more pedestrian scale, footprints with a high degree of ground floor transparency
- A mix of residential types appropriate to the context and surrounding plan of development
- Residential uses with densities that are consistent with the transition and flex density concepts described in the Comprehensive Land Use Plan Update. Residential density in the Mixed-Use Town Center should transition internally so that the density along a common boundary is compatible with the density of the existing abutting residential community
- Higher density residential to support a downtown should only be permitted in a vertical mixed-use building that is part of a downtown development plan or an area immediately adjacent to and part of a downtown development plan that does not abut existing residential communities

### Location

- Within a general one-mile radius of the intersection of Kingston Pike and Campbell Station Road

### Character

- Well-connected internally and externally for bicyclists and pedestrians
- Lively outdoor spaces and storefronts with a high degree of transparency
- Places to gather for a variety of different type of events

- Buildings that engage the street and that are inviting to pedestrians with wide sidewalks, outdoor dining, street trees, benches, planters, and other streetscaping enhancements
- On-street parking and a gridded or semi-gridded street layout system
- Appropriately scaled buildings that reflect an emphasis on form and arrangement that promotes uses consistent with the surrounding context

## SECTION 2.

This ordinance shall take effect from and after its final passage and publication, the public welfare requiring it.

_____

Ron Williams, Mayor

_____

Allison Myers, Town Recorder

Certified to the Farragut Board of Mayor and Aldermen this _____ day of _____, 2020, with approval recommended.

_____

Rita Holladay, Chairman

_____

Scott Russ, Secretary

## FARRAGUT MUNICIPAL PLANNING COMMISSION

## transitions

to protect existing neighborhoods from incompatible new development, and to encourage gradual transitions even within a new development (such as between blocks with different densities), the following guidelines should be applied:

- If a density different from an adjacent property is proposed, the transition should occur within the proposed development (gradually increase or decrease away from the common boundary).

For example, if a new development with a medium density designation were placed next to an existing low density neighborhood, single-family homes should be placed along the common boundary, with duplexes and townhomes placed further away from the existing neighborhood. This will create a gradual transition of density away from the common property line and make adjacent developments compatible. However, if the medium density was placed alongside a non-residential use (commercial, office), density could increase to match the intensity of that use. For example a medium density residential development would "fit" next to office or commercial.

- Gradual density increases are encouraged near mixed use, office and commercial developments, along arterials, and at major intersections, as long as they maintain quality standards to ensure compatibility with adjacent development.



Figure 10: Higher density transitioning gradually to lower density existing development.

**Policy: Densities of new development should be compatible with existing adjacent densities.**

*Primary implementation tools*

**1. Mixed use development**

Add housing variety and create mixed use zoning when implementing strategy 1 and 2.

**2. Flexible density & transitions**

The Town can take advantage of the relatively few remaining large vacant parcels in Farragut, by using the concept of "flexible density" to encourage, within new developments, a greater range of housing types. *(See Chapter 3 Future Land Use Plan for more information).*

**Actions**

**1. Update zoning to:**

- Create mixed use zoning districts that allow residential uses in commercial, office and some civic uses—with appropriate amenities (see *Chapter 3: Future Land Use Plan for more information*).

- Allow greater range of housing types within a development, including the concept of flexible, or averaging, density

## Strategy 4. Increase Connectivity

Many of Farragut's subdivisions have only a single entrance. Single-entry subdivisions have impacts on the rest of the community in the form of congestion and longer distances to travel. Increased roadway connectivity provides more options for travel and thereby reduces congestion. It also improves the efficiency of school buses and emergency services and provides access when one entry may be blocked. Increasing pathway

connectivity encourages walking and biking, which is attractive to both elderly and starter families.

*Primary implementation tools*

**1. Connect new development**

Require new development to connect to surrounding development when possible. The plan identifies a number of potential "desire lines" for connecting roads and trails. These should be implemented through the subdivision review process, and condition approval on their construction.

**2. Fix missing links**

Construct "missing links" (pedestrian ways and roadways) in existing developments, where routes are feasible.

**3. Continue to implement the Road Master Plan and the Pedestrian and Bicycle Plan (PBP)**



**Potential Roadway**

Figure 11: Potential roadways identify missing links and in some cases desired roadway connectors. (See *Chapter 3: Future Land Use Plan* for more information.)

Case 3:23-cv-00402-TRM-JEM   Document 6-26   Filed 11/11/23   Page 109 of 118   PageID #: 1304

## How to use the concepts, descriptions, and map

the Comprehensive plan map is a quick visual reference for the whole Comprehensive plan to better understand the logic, assumptions, and detailed expectations for elements of the map, please refer to the Concepts and descriptions.

as this is the town's first future land use plan, great care was taken to reflect existing conditions as well as citizen's desires, including:

1. building condition and potential for redevelopment
2. environmental constraints such as steep slopes, sinkholes, drainage and flooding (see figure 20)
3. Zoning (existing use by right)
4. adjacent land use
5. owner intent
6. public desire (creation of a more holistic community)
7. protecting existing uses

the comprehensive plan map is a physical expression of the plans eight key strategies

1. bringing about a downtown
2. repair aging shopping Centers
3. allow/encourage greater housing Choice
4. increase Connectivity
5. Capitalize on our heritage
6. expand our borders
7. enhance our identity
8. plan for remaining vacant

---

This chapter has three main parts:

A. *Future Land Use Concepts* (FLUC) are key ideas (such as pedestrian ways, activity hubs, and flex density) that influence how land is utilized. While they are not land uses, they influence how land is used.

B. *Land Use Descriptions* (LUD) translates the key concepts into land use categories that describe the intent, character, applicability, density, and location criteria for each of the 13 land uses.

C. The *Future Land Use Map* (FLUM) and the *Comprehensive Plan Map* (CPM) translate the FLUC and LUD into a physical form, specifying locations throughout the town. The CPM displays land uses plus the land use concepts—in a way that is consistent with the 8 plan strategies. (*See Chapter 2: Eight Key Strategies.*)

## Future Land Use Concepts

Future Land Use Concepts are key ideas that influence land utilization. They are identified on the Comprehensive Plan Map.

### Flex density

To encourage a greater variety of housing types in new neighborhoods, the residential and mixed use descriptions contain a range of density for residential uses. This range encourages diversity in development to avoid monotonous "cookie-cutter" similarity.

The 'base' density assumed for the zoning or Planned Unit Development (PUD) designation of a parcel is the lowest density of the designated range. The Town will consider granting zoning with higher density (within the range) relative to demonstrated significant public benefits achieved by the proposed project, such as the provision of pedestrian amenities and/or the preservation of open space. In most areas, the midpoint of the range should be considered an overall average that can be achieved by using a mix of unit types and/or lot sizes within the range. For example, in the

---

medium density residential land use (6-12 units/acre), the average of 9 units per acre could be achieved by mixing single-family homes, duplexes, and even some townhomes.

To ensure that the new development is compatible with existing neighborhoods, gradual transitions between different densities should occur (see *Transitions*).

**Policy 4: The base density assumed for the rezoning or Planned Unit Development (PUD) designation of a parcel is the lowest density of the designated range. The Town will consider granting higher density in the range relative to demonstrated significant public benefits to be achieved by the project. Parcels must be large enough to allow transitions or surrounding density should be matched.**

### Mixed use

Throughout the planning process, Farragut's citizens expressed a desire to allow (and even encourage) residential uses to be mixed with retail and employment uses in certain areas.

Mixed land use designations (mixed use town center and mixed use neighborhood) should encourage the co-location of residential with a variety of non-residential uses. Commercial land uses and office/light industrial are allowed to include residential uses when there are adequate amenities (extensive pedestrian amenities, the dedication of a large park) to support residents.

With enough people living in and nearby a mixed use center, it will attract a retail mix that reduces its reliance on automobile traffic.

### Activity hubs

The town's Strategic Plan identified a number of activity centers, defined as "Self-contained community where residents enjoy easy access to shopping and restaurants, entertainment, worship and schools within minutes of home."

Case 3:23-cv-00402-TRM-JEM Document 6-26 Filed 11/11/23 Page 110 of 118 PageID #: 1305

## Mixed use town center

### Intent

- Increase Farragut's long-term economic sustainability by diversifying the retail tax base through the creation of a traditional downtown with a variety of shops, restaurants, businesses and residences, in a pedestrian-oriented setting.

- Integrate high-density residential development to help support retail and other commercial uses.

- Consider the creation of an entertainment district that draws people to the area. This could include subsidies for galleries or a resident artist elected each year. This would require a planning process to establish a vision, governance structure, and secure seed money.

- Create public gathering spaces

- Provide extended (evening) hours of operation that will cater to shopping, dining, and entertainment to increase the vitality of the area.

### Uses

- A mix of uses including: employment, commercial, retail, services, civic, and residential.

- Substantial residential use—primarily multi-family residences, but some attached units (townhomes, duplexes) for transitions to adjacent single-family neighborhoods.

- Retail-oriented commercial uses, including "one off" establishments (local businesses) as well as chain establishments that utilize small footprints (such as coffee shops, small footprint versions of big box stores).

- Offices and personal services such as doctor, dentists, bookkeeping, or studios.

Also encourage:

- Public service providers (law enforcement, fire protection) and new schools.

- Entertainment options such as theater or performing arts.

### Residential Density

- 8-15 dwelling units per acre.



**Legend:**
- Mixed Use Neighborhood (6-10 DUs / Acre)
- Mixed Use Town Center (8-15 DUs / Acre)

Figure 26: Mixed use land uses (Mixed use town center and Mixed use neighborhood)

## Location

- Within a general 1 mile radius of Kingston Pike and Campbell Station Road.

## Character

- Connected building facades, with minor setback variations close to the sidewalk, on both sides of a street, that form a continuous shopping experience, with individual buildings adequately differentiated (to avoid strip appearance).

- High degree of ground floor transparency (glass) for visual interest to pedestrians.

- Comfortable bike and pedestrian connections to surrounding neighborhoods, with adequate bike parking.

- Pedestrian-focused amenities, places for gathering (pocket parks and plazas), wide sidewalks, outdoor dining, street trees, benches, consolidated newspaper racks, planters, and paving.

- Pedestrian scale signage.

- On-street parking to separate pedestrians from traffic and provide convenient parking. Major parking behind buildings, out of sight of pedestrians.

- Gridded or semi-gridded street network - a block pattern that includes a "figure 8" pedestrian circulation pattern that wraps around corners (as opposed to a single street).

## Other

- Require consistent hours of operation.

*(See Chapter 2: Eight Key Strategies Strategy 1 Bring About a Downtown and Chapter 5: Extended Implementation Tools for more information)*



Figure 27: Mixed use town center character

# REPORT TO THE FARRAGUT MUNICIPAL PLANNING COMMISSION

**PREPARED BY:**     Mark Shipley, Community Development Director

**SUBJECT:**     Discussion on an amendment to the <u>Farragut Municipal Code</u>, Appendix A., Zoning, Chapter 4., Section XXIX, - Grand Opening Special Events Permit, to provide for different sign related provisions (Town of Farragut, Applicant)

**INTRODUCTION AND BACKGROUND:** This item was discussed last month, and staff noted that amendments to the existing Grand Opening Special Events Permit section of the Farragut Zoning Ordinance were being considered to address the following objectives:

1) Clarifying the intent of the grand opening permit.

2) Improving the appearance of grand opening signs.

3) Applying updated provisions in the Farragut Sign Ordinance to grand opening special events signs.

4) Allowing grand opening special events signs to be an "extra" temporary parcel sign (not charged to their other permitted signs during a calendar year).

5) Continuing to allow these signs to be in place for up to 20 days.

6) Omitting a filing fee for these grand opening signs.

During the discussion in August, staff mentioned that the Farragut Business Alliance (FBA) had expressed an interest to be involved in administering the grand opening special events permits in some fashion as an avenue to assist new businesses and entities that have chosen to locate in the Town. Staff will be discussing this with the FBA Director and provide an update at the meeting with the objective of having an ordinance ready for the October Planning Commission meeting.

Sec. XXIX. - Grand opening special events permit.

It is the intent of this section to establish the permitting process and the requirements for grand opening special events held by commercial, office, and service entities within the Town of Farragut. The purpose of this grand opening special events permit is to help give new businesses, offices, and service providers additional publicity as they initiate their activities within the Town. ~~so that they have greater opportunity to showcase their business and customer service, which in turn will bring back repeat customers to their business.~~

A.    *General Requirements.*

     ~~1.   Each individual permanent commercial entity located within the General Commercial District (C-1), the Regional Commercial District (C-2), or the Planned Commercial Development District (PCD) is eligible for a grand opening special events permit.~~

     1.   A commercial entity Commercial, office, and service entities are ~~is~~ eligible for one grand opening special events permit when such entity is opening for business for the first time at a particular location.

     2.   The duration of each grand opening special event shall not exceed 20 calendar days.

B.    *Sign Requirements.*

     1.   Sign provisions shall be in accordance with the applicable sections of the Farragut Sign Ordinance. Grand opening special events permit signs shall be considered temporary parcel signs but shall not be counted toward the 40 calendar days per year within which a temporary parcel sign may be permitted. A temporary parcel sign where a commercial, office, or service entity is opening for the first time at a particular location shall be an extra sign allowed for such entity and may be in place for up to 20 calendar days. Such sign shall be exempt from the application filing fee.

     ~~In order to brand the grand opening events and to increase the recognizability of grand opening signs, all grand opening signs shall be town owned.~~

     ~~2.   Upon payment of a security/damage deposit, the Town of Farragut shall provide grand opening sign(s) to the applicant. The town's grand opening signs shall be dark blue with white letters, shall be 32 square feet, and shall be a minimum ten millimeter corrugated plastic. The corner of the sign will remain blank so that users can personalize the sign with additional information.~~

     ~~3.   There shall be a maximum of one grand opening sign per each street on which the lot, parcel, or tract fronts. When more than one grand opening sign is permitted, such signs shall be a minimum of 150 feet apart.~~

     ~~4.   In addition to the grand opening sign, the commercial entity may also have a 20 square foot special event sign. Such special event sign shall comply with the sign requirements established in Chapter 4, Section XXIV, Special Events Permit, of this ordinance.~~

     ~~5.   For ground-mounted signs, the maximum sign height shall be six feet.~~

     ~~6.   Signs shall be set back a minimum of 20 feet from the street edge of pavement as measured from the farthest most protrusion of the sign to the nearest point of the street edge of pavement. Signs shall be set back a minimum of ten feet from all entrance driveways.~~

     ~~7.   Ground-mounted signs shall be affixed to studded T-posts and affixed in such a manner that they do not move in the wind.~~

2. Signs shall not be posted until the commercial, office, or service entity ~~is open for business~~ has obtained a Farragut Business License and Certificate of Occupancy.

3. All signs and any associated support posts shall be removed at the end of the grand opening special event. ~~If the permitted time frame is exceeded, the commercial entity shall lose their deposit and lose a special event permit for the calendar year.~~

C. *Permitting Process.* A grand opening special events permit application ~~and filing fee and security/damage deposit~~ shall be submitted to and approved by the Town ~~to the Town Hall~~ prior to the commencement of the event. The applicant must have an approved permit in hand prior to holding the event.

   All grand opening special event permit applications shall include the following information:

   1. Applicant's name, street address, telephone number, fax number, and e-mail address.

   2. Name, street address, telephone number, fax number, e-mail address, and signature of the individual identified who assumes the responsibility of meeting the conditions of the permit.

   3. Copy of Farragut Business License and Certificate of Occupancy.

   4. Location of event.

   5. Date range of event.

   6. Where a sign is proposed, the application submittal shall be in accordance with the Farragut Sign Ordinance. Grand opening special events permit signs shall be considered temporary parcel signs but, as provided for in this section, shall not be limited to the ten-day period or an application filing fee. ~~If applicable, a drawing of the separate special event sign which includes dimensions that show the length and width of the sign, the height and width of all letters and figures, and the overall height of the sign.~~

(Ord. No. 12-19, § 1, 1-24-2013)

# REPORT TO THE FARRAGUT MUNICIPAL PLANNING COMMISSION

**PREPARED BY:**    Mark Shipley, Community Development Director

**SUBJECT:**    Discussion and public hearing on Public Comment Protocol for Planning Commission meetings

---

**INTRODUCTION AND BACKGROUND:**   Recently, the Board of Mayor and Aldermen have made changes to their public comment protocol.  In order to be consistent, staff is requesting that the Planning Commission adopt a similar protocol.  The proposed language is as follows:

The Planning Commission welcomes and invites Farragut residents to participate in public meetings.

At the end of each business meeting, there will be time reserved for public comment under the Citizen Forum agenda item.  If you are interested in speaking, please fill out a blue comment card and turn it in to the Planning Director or other designated staff member.  This time is set aside specifically for comments on items that are not on the Planning Commission regular agenda for the meeting.  Each speaker will be given five (5) minutes to speak on his/her topic.

During the regular agenda portion of the meeting there may be an allowance for public comment for each agenda item.  The Chairman may recognize individuals for public comment based on the following guidelines.

1.  The Chairman shall maintain and control the meeting to provide a professional and objective environment;
2.  Any Farragut resident interested in speaking should fill out a blue comment card stating which agenda item they would like to comment on and turn in to the Planning Director or other designated staff member;
3.  Speakers shall come to the podium and identify themselves by name and street address;
4.  Public comment shall be limited to five (5) minutes per individual. Time for public comment may be amended at the discretion of the Chairman.  Time is not transferable to other speakers;
5.  Speakers should strive to avoid redundancy; each speaker should have their own original viewpoint;
6.  Comments shall address issues, not individuals or personalities;
7.  Comments may support or oppose issues or measures, but the motives of those with differing views shall not be questioned or attacked;
8.  Personal attacks and malicious comments shall not be tolerated;
9.  An applicant, and/or their representative(s), for an item on the regular agenda shall be afforded the time necessary to present their request and respond to questions.  The five (5) minute limitation shall not apply.  However, the Chairman may ask an applicant to stay on point in order to facilitate the efficiency of the meeting.

Each speaker will be asked if they can agree to abide by the Comment Protocol. If so, please be prepared to speak when your name is called.