# TOWN OF FARRAGUT

## PROFESSIONAL SERVICES AGREEMENT

This Agreement is made by and between **Town of Farragut** ("Client") and **Kimley-Horn** ("Contractor") for professional services for the assignment described as follows:

Project: Fiber Optic Cable Implementation

Location: Farragut, TN

Description of Project: Implementation of Fiber optic cable connecting all Farragut Parks and Facilities

1. **Professional Services**. Contractor agrees to perform the following Basic Services under this Agreement:

See **Attachment A** to this Agreement for a description of Basic Services.

2. **Compensation**. Client shall compensate Contractor for the Basic Services as follows: A lump sum fee of $281,000, including reimbursable expenses.

3. **Schedule**. Contractor shall begin work upon notification of approval of this Agreement by the Board of Mayor and Aldermen and shall complete the work by submitting the final deliverables on or before August 15, 2024. The schedule for the various meetings and presentations as outlined in the Basic Services shall be agreed upon by the Client and Contractor before beginning work.

4. **Invoicing and Payments**. Invoices or payment requests shall be submitted to the Client no more than monthly and shall include such information, documentation or data as the Town Administrator may require including, but not limited to, the amount and breakdown of the payment requested, the period covered by the request, and the work performed during the period covered by the payment request. After review, the Town Administrator will indicate his approval of the payment request, or shall explain to the Contractor, in writing, his reasons for not approving any portion or all of the request and authorize payment of the amount approved. In the event the Town Administrator does not approve any portion of a payment request, and has communicated the reasons to Contractor, Contractor will then take the necessary action to satisfy the reasons for non-approval and resubmit the payment request. Client shall endeavor to remit payment of payment requests or portions thereof which are approved by the Town Administrator within twenty-five (25) days of receipt by Client. From time to time approval of a payment request may require action by the Board of Mayor and Aldermen which meets on the second and fourth Thursday of most months.

5. **Time**. Contractor will perform its services in a timely manner commensurate with the exercise of due professional care which it acknowledges can be done consistent with the schedule provided for in Paragraph 3. Time for performance shall be extended as necessary for delays or suspensions due to circumstances beyond Contractor's control. If such delay or

suspension extends more than six (6) months (cumulatively), Contractor's compensation shall be equitably adjusted; provided, however, such adjustment and amendment to this Agreement must be approved by the Board of Mayor and Aldermen before Client is bound.

6. **Suspension of Services**. If Client fails to pay any invoice when due or otherwise is in material breach of this Agreement, Contractor may, at its sole discretion, suspend performance of services upon five (5) days' written notice to Client. Contractor shall have no liability to Client and Client agrees to make no claim for any delay or damage as a result of such suspension, unless (i) the Town Administrator has refused to approve payment, (ii) his reasons are justified pursuant to this Agreement, and (iii) Contractor has failed to satisfy the reasons as required by Paragraph 4 hereof. Upon cure of the cause of a justified suspension, Contractor shall resume services within a reasonable time, and there shall be equitable adjustments of the project schedule and fees to reflect the effects of such suspension, if such adjustments are deemed reasonable and appropriate by the parties.

7. **Standard of Care**. Notwithstanding any other provision of this Agreement or any other document describing the services produced by Client, Contractor shall perform its services in accordance with the standard of professional care ordinarily exercised under similar circumstances by reputable members of its profession in the same locality at the time the services are provided. Beyond the foregoing and unless otherwise provided herein or in other documents produced, generated or provided by Contractor, no warranty, expressed or implied, is made or intended by Contractor. The parties further agree that Contractor is not a fiduciary of Client.

8. **Termination**. The obligation to provide further services under this Agreement may be terminated with or without cause by either party upon ten (10) days' written notice to the other party. On termination by either Client or Contractor, Client shall pay Contractor all amounts due for any services performed to the date of termination (plus all reimbursable expenses incurred) as Contractor's sole and exclusive remedy, subject to any setoffs to which the Client is entitled as a result of Contractor's failure to perform as required by this Agreement.

9. **Reuse of Documents**. All documents, including drawings, specifications, and reports, prepared by Contractor pursuant to this Agreement are instruments of professional service and shall become the property of the Client. They are not intended or represented to be suitable for reuse by Client or others for additions or modifications of the Project or on any other project. Any reuse without written consent, verification or adaption by Contractor for the specific purposes intended shall be at Client's sole risk and without liability or legal exposure to Contractor. Any such verification and adaption will entitle Contractor to further compensation at rates to be agreed upon by Client and Contractor.

10. **Access to the Site/Jobsite Safety**. Unless otherwise stated, Contractor will have access to the site for activities necessary for the performance of its services. Client agrees that Contractor shall have no responsibility for the means, methods, sequences, procedures, techniques, and scheduling of construction, as these decisions are solely the responsibility of the contractors. Contractor further shall have no authority or duty to supervise the construction workforce and shall not be responsible for jobsite safety or for any losses or injuries that occur at the Project site.

2

11. **Insurance**. Prior to any access to the Project site, Contractor shall deliver to Client a certificate of insurance evidencing general liability coverage with a limit of not less than $1,000,000 each occurrence for bodily injury, personal injury and property damage. If such insurance contains a general aggregate limit, it shall apply separately to the work/location of the Project in this Agreement or be no less than $2,000,000. In addition, Contractor shall endeavor to secure and maintain insurance in such amounts as it deems necessary to protect itself from claims of professional negligence arising from the performance of services under this Agreement. Such insurance shall:

    a. Contain or be endorsed to contain a provision that includes Client, its officials, officers, employees, and volunteers as additional insureds with respect to liability arising out of work performed by or on behalf of the Contractor. The coverage shall contain no special limitations on the scope of its protection afforded to the above-listed insureds.

    b. For any claims related to this Project, the Contractor's insurance coverage shall be primary insurance as respects the Client, its officers, officials, employees, and volunteers. Any insurance or self-insurance programs covering the Client, its officials, officers, employees, and volunteers shall be excess of the Contractor's insurance and shall not contribute with it.

12. **Risk Allocation**. In recognition of the relative risks, rewards, and benefits of the Project to both Client and Contractor, to the fullest extent permitted by law, the parties agree to allocate the risks such that Contractor's total liability to Client for any and all injuries, claims, losses, expenses, damages, and/or claim expenses arising out of Contractor's services under this Agreement from any cause or causes shall not exceed the amount of Contractor's fee, or One Hundred Thousand Dollars ($100,000), or the amount of insurance coverage Contractor has, or is required to have, covering the risk or claim that is the basis for the injury, claim, loss, expense or damages, recovery for which is sought, whichever is greater. This limitation shall apply regardless of the cause of action or legal theory pled or asserted.

13. **Dispute Resolution**. It is agreed that all claims, disputes, or other matters in question arising out of or related to this Agreement shall be submitted to nonbinding mediation before any legal proceedings is commenced. The parties shall equally bear the fees and expenses charged by the mediator.

14. **Opinions of Construction Cost**. Any opinion of probable construction cost prepared by Contractor represents the judgment of one or more Contractor design professionals and is supplied for general guidance of Client. Since Contractor has no control over the construction marketplace and does not use the same pricing methods used by contractors, Contractor does not guarantee the accuracy of such opinions.

15. **Indemnification**.

   a.   The Contractor shall defend, indemnify and hold harmless the Client, its officers, employees and agents from any and all liabilities which may arise or be claimed against the Client, its officers, employees and agents or any third party for any and all lawsuits, claims, demands, losses or damages to the extent caused by a negligent act or omission of the Contractors, its employers, agents or contractors in performance of this Agreement or from the Contractor's failure to perform this Agreement using ordinary care and skill, except where such injury, damage, or loss was caused by the sole negligence of the Client, its agents or employees.

   b.   The Contractor shall save, indemnify and hold the Client harmless from the cost of the defense of any claim, demand, suit or cause of action made or brought against the Client alleging liability referenced above, including, but not limited to, costs, fees, attorney fees, and other expenses of any kind whatsoever arising in connection with the defense of the Client; and the Contractor shall assume and take over the defense of the Client in any such claim, demand, suit, or cause of action upon written notice and demand for same by the Client.  The Contractor will have the right to defend the Client with notice and demand for same by the Client.  The Contractor will have the right to defend the Client with counsel of its choice that is satisfactory to the Client and the Client will provide reasonable cooperation in the defense as the Contractor may request.  The Contractor will not consent to the entry of any judgment or enter into any settlement with respect to an indemnified claim without the prior written consent of the Client, such consent not to be unreasonably withheld or delayed.  The Client shall have the right to participate in the defense against the indemnified claims with counsel of its choice at its own expense.

   c.   The Contractor shall save, indemnify and hold Client harmless and pay judgments that shall be rendered in any such actions, suits, claims or demands against Client alleging liability referenced above.

   d.   The indemnification and hold harmless provisions of this Agreement shall survive termination of the Agreement.

16. **Miscellaneous**.

   a.   The Contractor will not assign or transfer any interest in this Agreement without obtaining the prior written approval of the Client.

   b.   The Contractor will not enter into a subcontract for any of the services performed under this Agreement without obtaining the prior written approval of the Client.

   c.   The contract between the parties consists of this Agreement, its attachments, any written request for services issued by Client and any response thereto made by Contractor, including any addenda thereto.  To the extent there is a conflict between the terms of any of the documents that constitute the contract between the parties, the terms that are most specific to the matter in dispute shall govern over the more general.  In the event the conflicting terms cannot be characterized as specific vs. general, then the terms that provide the greater benefit to the Client and/or impose the greater obligation on the Contractor shall control.

4

d. This Agreement may be modified only by a written amendment or addendum that has been executed and approved by the appropriate officials shown on the signature page of this Agreement.

e. If any provision of this Agreement is determined to be unenforceable or invalid, such determination will not affect the validity of the other provisions contained in this Agreement. Failure to enforce any provision of this Agreement does not affect the rights of the parties to enforce such provision in another circumstance, nor does it affect the rights of the parties to enforce any other provision of this Agreement at any time.

f. In the event legal action is necessary to enforce the terms of the contract between the parties, the prevailing party shall be entitled to recovery of its attorney's fees, court costs, and other expenses of the legal action.

g. In the performance of this contract, Contractor will comply with all applicable laws, ordinances, rules, regulations and orders of local, state and federal governments, including, but not limited to, the President's Executive Order No. 11246 and 11375, which prohibit discrimination in employment regarding race, color, religion, sex or national origin, Title VI of the Civil Rights Act of 1964, Copeland Anti-Kick Back Act, the Contact Work Hours and Safety Standards Act, Section 402 of the Vietnam Veterans Adjustment Act of 1974, Section 503 of the Rehabilitation Act of 1973, and the Americans with Disabilities Act of 1990, all of which are herein incorporated by reference.

h. This Agreement will be governed and construed in accordance with the laws of the state of Tennessee.

| **CLIENT:** | **CONTRACTOR:** |
|---|---|
| Town of Farragut | KIMLEY-HORN AND ASSOCIATES, INC. |
| By:_____ | By: *[signature]* |
| Printed Name:_____ | Printed Name: CHRISTOPHER D. RHODES |
| Title:_____ | Title: VICE PRESIDENT |
| Date:_____ | Date: AUGUST 03, 2023 |

5



July 10, 2023

Allison Myers
Town Recorder
**Town of Farragut**
11408 Municipal Center Drive
Farragut, TN 37934

Re: Letter Agreement for Professional Services for
Fiber Optic Cable Implementation using ARPA (SLFRF) Funds
Farragut, Tennessee

Dear Allison Myers:

Kimley-Horn and Associates, Inc. ("Kimley-Horn" or "Consultant") is pleased to submit this Letter Agreement (the "Agreement") to **Town of Farragut, Tennessee** ("Client") for providing professional services associated with the above referenced project.

**Project Understanding**

Kimley-Horn understands the following:
- Client has previously received funding through the Congestion Mitigation and Air Quality (CMAQ) Improvement Program. This project is currently under construction and will provide 144-strand single mode fiber optic cable along segments of Kingston Pk, Campbell Station Rd, Parkside Dr, Concord Rd, and Municipal Center Dr.
- Client has received funding through the American Rescue Plan Act of 2021 (ARPA), specifically the Coronavirus State and Local Fiscal Recovery Funds (SLFRF) program. Client intends to use this funding for fiber optic cable implementation throughout the Town of Farragut (the "Project"), expanding upon the CMAQ-funded fiber optic cable implementation that is currently under construction.
- Client desires new fiber optic cable connections between the CMAQ funded project and the following locations:
    o Farragut Town Hall (11408 Municipal Center Dr)
    o Farragut Community Center (239 Jamestowne Blvd)
    o Public Works (727 Fretz Rd)
    o Founder's Park at Campbell Station (405 N Campbell Station Rd)
    o Anchor Park (11730 Turkey Creek Rd)
    o McFee Park (917 McFee Rd)
    o Mayor Bob Leonard Park (301 Watt Rd)
    o Outdoor Classroom (220 N Campbell Station Rd)
    o Future Park (near ALDI at 170 Brooklawn St)
    o Future Park (near intersection of Boyd Station Rd and McFee Rd)
    o Kingston Pike at Lovell Road / Canton Hollow Rd (existing traffic signal)
    o Grigsby Chapel Rd / Smith Rd (from Kingston Pike to N Campbell Station Rd)
- Client has requested Consultant provide Scope of Services and Fee to perform Professional Services pertaining to the Project.

kimley-horn.com | 10 Lea Avenue, Suite 400, Nashville, TN 37210 | 615 564 2701



- The Project will <u>not</u> be required to adhere to the procedures established by the Local Programs Development Office (LPDO) of the Tennessee Department of Transportation (TDOT).
- The Project will <u>not</u> require coordination with TDOT and/or the Federal Highway Administration (FHWA) / United States Department of Transportation (USDOT)
- The Project will <u>not</u> require an environmental document for the National Environmental Policy Act (NEPA).

**Scope of Services**

Kimley-Horn will provide the services specifically set forth below.

Task 1 – Project Management

Consultant will perform the following:
- Project management
- Client coordination with status updates
- Billing/invoicing

Task 2 – Systems Engineering

Consultant will perform the following:
- Systems Engineering based on the TDOT ITS Project Development Guidelines (dated 07/20/2016). Because the CMAQ funded project that is currently under construction will provide 144-strand single mode fiber optic cable, Consultant anticipates the Project will be categorized as Low Risk. Therefore, Consultant anticipates preparing a Simplified Systems Engineering Analysis Form (SSEAF).
- Prepare the SSEAF that will incorporate responses to the following requirements:
  - Identification of portions of the Regional ITS Architecture (RA) being implemented
  - Identification of participating agencies roles and responsibilities
  - Requirements definitions
  - Analysis of alternative system configurations and technology options to meet requirements
  - Procurement options
  - Identification of applicable ITS standards and testing procedures
  - Procedures and resources necessary for operations and management of the system
- Submit the draft SSEAF to Client for one (1) round of review and comment. Once Client provides comments, Consultant will incorporate comments and submit the final SSEAF to Client.


Task 3 – Data Collection

Consultant will perform the following:
- Coordinate with the Client to obtain existing electronic files for use in the development of base mapping / desktop survey. Consultant anticipates that the Client will provide, at no cost to Consultant, GIS data provided by KGIS:
    - Aerial imagery
    - Parcel lines and right-of-way lines
    - Street centerlines
    - Other data deemed necessary by Consultant
- NOTE: Field topographic survey is <u>not</u> included.
- Utilize MicroStation files previously developed for the CMAQ funded project
- Prepare base mapping (i.e., existing conditions) within MicroStation
- Facilitate up to three (3) site visits for the Project to evaluate design feasibility for alternative solutions and determine the recommended design alternative solution. Consultant anticipates this will consist of:
    - Route for fiber optic cable
    - Location of splice enclosures
    - Location of edge devices (i.e., Ethernet switches)
- Coordinate with Client's internal stakeholders (e.g., Engineering Department, Geographic Information Systems, Information Technology, Parks & Recreation)

Task 4 – Engineering Design

Consultant will perform the following:
- Prepare the Preliminary Construction Plans using the MicroStation Computer-Aided Design (CAD) software. The Preliminary Construction Plans will consist of:
    - Title Sheet
    - Index of Sheets
    - Standard Drawings
    - Legend and Abbreviations
    - Estimated Quantities
    - General Notes
    - Special Notes
    - Scope of Work
    - Details
    - Communication Schematic
    - Field Equipment Block Diagram
    - Fiber Splice Details
    - Erosion Control Details
    - Key Sheet
    - ITS Layout Sheets
    - Traffic Control
- Consultant will prepare the Preliminary Construction Plans and submit to Client for one (1) round of review and comment.
- Consultant will provide up to three (3) representatives to attend one (1) review meeting with Client to discuss the Preliminary Construction Plans. Consultant will document comments provided during the meeting and provide a meeting summary to Client.



- After the one (1) review meeting and upon receipt of one (1) round of review comments from Client, Consultant will revise the design and prepare the Final Construction Plans. The Final Construction Plans will be signed and sealed by a professional engineer (P.E.) licensed in the State of Tennessee.
- Consultant will prepare the estimated quantities and engineer's opinion of probable construction cost based on the Final Construction Plans. The anticipated costs will be derived from:
    - Estimated Quantities
    - Anticipated Unit Prices
- Consultant will submit the engineer's opinion of probable construction cost in a format that provides item numbers, item descriptions, estimated quantities, and anticipated unit costs.
- Consultant will prepare Special Provision 725 (SP725). The special provision will consist of the following sections:
    - General Requirements
    - Requirements for ITS Components
        - Description
        - Materials
        - Installation
        - Testing
        - Measurement
        - Payment
    - Project Acceptance
    - System Maintenance

Task 5 – Utility Make Ready (UMR)

Consultant will perform the following:
- Determine the locations/routes that overhead implementation of fiber optic cable is recommended.
- Perform an inventory of existing attachments to LCUB owned utility poles along the recommended locations/routes.
- Develop a UMR design workbook that considers the existing inventory, proposed fiber optic cable, National Electrical Safety Code (NESC), and LCUB attachment guidelines and recommendations.
- Submit the UMR design workbook to LCUB for one (1) round of review and comment. Once LCUB provides comments, Consultant will incorporate comments and submit the final UMR design workbook to LCUB.

Task 6 – Permitting

Consultant will perform the following:
- Environmental permitting for the Project to be implemented.
- Railroad permitting for the Project to be implemented.
- Utility permitting for the Project to be implemented.



Task 7 – Bid and Procurement Support

Consultant will perform the following:
- Prepare the proposal contract (i.e., bid book) for Client to advertise with the final construction plans. Consultant will rely on Client providing the desired template/format for the proposal contract (i.e., bid book).
- Conduct one (1) pre-bid meeting.
- Respond to questions from potential bidders and prepare bid addenda.
- Conduct one (1) bid opening meeting.
- Review, tabulate, and summarize the bids following the bid opening.
- NOTE: Formal advertisement of the bid is not included.

Task 8 – Limited Construction Support

Consultant will perform the following:
- Coordinate with Client and Client's separate consultant for Construction Engineering and Inspection (CEI) services pertaining to the Project.
- NOTE: CEI services are not included.
- Provide feedback as requested regarding Requests for Information (RFI) and contractor submittals to determine product/procedure satisfaction of the contract documents.
- Prepare responses to questions regarding the contract documents.
- Attend up to six (6) construction progress meetings.

**Services Not Included**

Any other services, including but not limited to the following, are not included in this Agreement:
- Adherence to procedures established by the Local Programs Development Office (LPDO) of the Tennessee Department of Transportation (TDOT)
- Field topographic survey
- Formal advertisement of bid
- Construction Engineering and Inspection (CEI)

**Additional Services**

Any services not specifically provided for in the above scope will be billed as additional services and performed at our then current hourly rates.

**Information Provided By Client**

We shall be entitled to rely on the completeness and accuracy of all information provided by the Client or the Client's consultants or representatives.

kimley-horn.com | 10 Lea Avenue, Suite 400, Nashville, TN 37210 | 615 564 2701



**Schedule**

We will provide our services as expeditiously as practicable with the goal of meeting a mutually agreed upon schedule.

**Fee and Expenses**

Kimley-Horn will perform the services in Tasks 1-8 for the total lump sum fee below. Individual task amounts are informational only. All permitting, application, and similar project fees will be paid directly by the Client.

| | | |
|---|---|---|
| Task 1 | Project Management | $17,500 |
| Task 2 | Systems Engineering | $8,500 |
| Task 3 | Data Collection | $33,500 |
| Task 4 | Engineering Design | $125,500 |
| Task 5 | Utility Make Ready (UMR) | $26,500 |
| Task 6 | Permitting | $23,500 |
| Task 7 | Bid and Procurement Support | $11,500 |
| Task 8 | Limited Construction Support | $34,500 |
| | Total Lump Sum Fee | $281,000 |

Lump sum fees will be invoiced monthly based upon the overall percentage of services performed. Payment will be due within 25 days of your receipt of the invoice and should include the invoice number and Kimley-Horn project number.

**Closure**

In addition to the matters set forth herein, our Agreement shall include and be subject to, and only to, the attached Standard Provisions, which are incorporated by reference. As used in the Standard Provisions, "Kimley-Horn" shall refer to Kimley-Horn and Associates, Inc., and "Client" shall refer to as **Town of Farragut, Tennessee**.

Kimley-Horn, in an effort to expedite invoices and reduce paper waste, submits invoices via email in a PDF. We can also provide a paper copy via regular mail if requested. Please include the invoice number and Kimley-Horn project number with all payments. Please provide the following information:

_____ Please email all invoices to _____

_____ Please copy _____

To proceed with the services, please have an authorized person sign this Agreement below and return to us. We will commence services only after we have received a fully-executed agreement. Fees and times stated in this Agreement are valid for sixty (60) days after the date of this letter.



*Farragut Fiber, ARPA SLFRF, Page 7*

We appreciate the opportunity to provide these services. Please contact me if you have any questions.

Sincerely,

KIMLEY-HORN AND ASSOCIATES, INC.

Signed: *[signature]*  
Printed Name: Christopher D. Rhodes, P.E.  
Title: Vice President

Signed: *[signature]*  
Printed Name: R. Bradford Waldschmidt, P.E.  
Title: Project Manager

TOWN OF FARRAGUT, TENNESSEE

SIGNED: _____

PRINTED NAME: _____

TITLE: _____

DATE: _____

Attachment – Standard Provisions
kimley-horn.com | 10 Lea Avenue, Suite 400, Nashville, TN 37210 | 615 564 2701
